**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
ST. LOUIS DIVISION**

| | |
|---|---|
| **MARK BOSWELL, DAVID LUTTON AND VICKIE SNYDER**, individually, and on behalf of all others similarly situated, | ) ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| **PANERA BREAD COMPANY** and **PANERA, LLC**, | ) ) |
| | ) |
| Defendant. | ) |

**Case No. 4:14-CV-01833-AGF**

**DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Patrick F. Hulla        MO 41745
Justin M. Dean        MO 48647
Jennifer K. Oldvader  MO 60649
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
4520 Main Street, Suite 400
Kansas City, MO 64111
Telephone: 816.471.1301
Facsimile: 816.471.1303
patrick.hulla@ogletreedeakins.com
justin.dean@ogletreedeakins.com
jennifer.oldvader@ogletreedeakins.com

**ATTORNEYS FOR DEFENDANTS
PANERA BREAD COMPANY AND
PANERA, LLC**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................... **Error! Bookmark not defined.**

I.      INTRODUCTION ................................................................................. 1

II.     BACKGROUND ................................................................................... 2

III.    LEGAL STANDARDS .......................................................................... 4

        A.     Rule 23's Rigorous Analysis ................................................... 4

        B.     Plaintiffs' Breach of Contract and Fraud Claims Require
               Individualized Inquiries .......................................................... 5

               1.      Legal Standards Regarding Plaintiffs' Breach of Contract
                       Claim ........................................................................... 5

               2.      Legal Standards Regarding Plaintiffs' Fraud Claim ........................... 6

IV.     ARGUMENT ...................................................................................... 7

        A.     Plaintiffs Cannot Satisfy Rule 23's Commonality and
               Predominance Requirements ............................................................ 7

               1.      There Are No Common Answers Apt to Drive Resolution
                       of this Case ................................................................... 7

               2.      Plaintiffs' Mantra of a Standard Contract and a Uniform
                       Act Is Insufficient to Demonstrate Predominance on the
                       Contract Claim .............................................................. 12

               3.      Nor Can Plaintiffs Show Predominance Regarding their
                       Fraud Claim ................................................................ 19

               4.      Plaintiffs Cannot Establish Superiority ............................................ 21

        B.     Plaintiffs Cannot Meet Rule 23(a)'s Other Requirements ............................ 22

               1.      Plaintiff's Cannot Establish Rule 23(a)(3)'s Typicality
                       Requirement ................................................................. 22

               2.      Plaintiffs Cannot Meet Rule 23(a)(1)'s Numerosity
                       Requirement ................................................................. 24

               3.      Plaintiffs Cannot Establish Rule 23(a)(4)'s Adequacy
                       Requirement ................................................................. 25

V.      CONCLUSION ................................................................................... 26

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Avritt v. Reliastar Life Ins. Co.*,
    615 F.3d 1023 (8th Cir. 2010) ............................................................4, 5

*In re Bank of Am. Home Affordable Modification Program Contract Litig.*,
    2013 WL 4759649 (D.Mass. Sept. 4, 2013) ...............................................11, 14

*Bldg. Erection Servs. Co. v. Plastic Sales & Mfg. Co.*,
    163 S.W.3d 472 (Mo. Ct. App. 2005) .........................................................5

*Brown v. Kerkhoff*,
    279 F.R.D. 479 (S.D. Iowa 2012) ..............................................................21

*Chavis Van & Storage of Myrtle Beach, Inc. v. United Van Lines, LLC*,
    -- F.3d --, 2015 WL 1881199 (8th Cir. Apr. 27, 2015) ...................................5

*CitiMortgage, Inc. v. Just Mortgage, Inc.*,
    2013 WL 6538680 (E.D. Mo. Dec. 13, 2013) ............................................11

*Clayborne v. Omaha Public Power Dist.*,
    211 F.R.D. 573 (D. Neb. 2002).................................................................24

*Clean Unif. Co. St. Louis v. Magic Touch Cleaning, Inc.*,
    300 S.W.3d 602 (Mo. Ct. App. 2009).........................................................11

*Comcast Corp. v. Behrend*,
    133 S.Ct. 1426 (2013).................................................................4, 5, 16, 20

*Danvers Motor Co., Inc., v. Ford Motor Co.*,
    543 F.3d 141 (3rd Cir. 2008) ..................................................................12

*Davis v. Astrue*,
    250 F.R.D. 476 (N.D. Cal. 2008)..............................................................25

*Dierkes v. Blue Cross & Blue Shield of Mo.*,
    991 S.W.2d 662 (Mo. banc 1999) ..............................................................17

*Ditto, Inc. v. Davids*,
    2014 WL 5840728 (Mo. Ct. App. 2014) ......................................................15

*Doll v. Chi. Title Ins. Co.*,
    246 F.R.D. 683 (D. Kan. 2007)................................................................24

*Doss v. EPIC Healthcare Mgt. Co.*,
    901 S.W.2d 216 (Mo. Ct. App. 1995) ....................................................................6

*Doyel v. McDonald's Corp.*,
    2010 WL 3199685 (E.D. Mo. Aug. 12, 2010) .......................................................21

*Duchardt v. Midland Nat'l Life Ins. Co.*,
    265 F.R.D. 436 (S.D. Iowa 2009) ........................................................................22

*Elizabeth M. v. Montenez*,
    458 F.3d 779 (8th Cir. 2006) .............................................................................5, 22

*Express Scripts v. Walgreen Co.*,
    2009 WL 4574198 (E.D. Mo. Dec. 3, 2009) .......................................................19

*Fisher v. U.S.*,
    69 Fed. Cl. 193 (Fed. Cl. Ct. 2006) ....................................................................26

*In re Gen. Am. Life Ins. Co. Sales Practices Litig.*,
    357 F.3d 800 (8th Cir. 2004) ...............................................................................25

*Gen. Tel. Co. of the Nw., Inc. v. EEOC*,
    446 U.S. 318 (1980) .............................................................................................23

*In re Genetically Modified Rice Litig.*,
    251 F.R.D. 392 (E.D. Mo. 2008) ...................................................................17, 21

*Glen v. Fairway Indep. Mortgage Corp.*,
    265 F.R.D. 474 (E.D. Mo. 2010) .........................................................................20

*Guerra v. Public Safety Concepts*,
    2007 WL 628430 (E.D. Mo. Feb. 27, 2007) .......................................................22

*Guidry v. Charter Commc'ns, Inc.*,
    269 S.W.3d 520 (Mo. Ct. App. 2008) .................................................................17

*Halvorson v. Auto-Owners Ins. Co.*,
    718 F.3d 773 (8th Cir. 2013) ...............................................................................13

*Indep. Sch. Dist. #89, Okla. Cnty., Okla. v. Bolain Equip., Inc.*,
    90 F.R.D. 245 (W.D. Okla. 1980) .......................................................................23

*Jaynes v. United States*,
    69 Fed. Cl. 450 (Fed. Cl. 2006) ..........................................................................24

*Jennings v. SSM Health Care St. Louis*,
    355 S.W.3d 526 (Mo. Ct. App. 2011) ...................................................................6

*Ketcherside v. McLane*,
  118 S.W.3d 631 (Mo. Ct. App. 2003) ...................................................................5

*Keveney v. Mo. Military Acad.*,
  304 S.W.3d 98 (Mo. banc 2010) ..........................................................................5

*Long v. Huffman*,
  557 S.W.2d 911 (Mo. Ct. App. 1977) ...................................................................8

*Mansfield v. Air Line Pilots Ass'n Int'l*,
  2007 WL 2048664 (N.D. Ill. July 9, 2007) ..........................................................25

*Medicine Shoppe Intern., Inc. v. Anick, Inc.*,
  2010 WL 3055094 (E.D. Mo. Aug. 4, 2010) .......................................................19

*Miller v. Farmers Ins. Grp.*,
  2012 WL 8017244 (W.D. Okla. Mar. 22, 2012) ....................................................4

*Monaco v. The Bear Stearns Cos., Inc.*,
  2012 WL 10006987 (C.D. Cal. Dec. 10, 2012) ...................................................15

*Mooney v. Allianz Life Ins. Co. of North Am.*,
  2009 WL 511572 (D. Minn. Feb. 26, 2009) ........................................................20

*Moua v. Jani-King of Minnesota, Inc.*,
  2010 WL 935758 (D. Minn. Mar. 12, 2010) ............................................13, 19, 20

*N. Am. Sav. Bank v. Resolution Trust Corp.*,
  65 F.3d 111 (8th Cir. 1995) ................................................................................15

*Parke v. First Reliance Standard Life Ins. Co.*,
  368 F.3d 999 – 05 (8th Cir. 2004) ......................................................................22

*Renaissance Leasing, LLC v. Vermeer Mfg. Co.*,
  322 S.W.3d 112 (Mo. 2010) .........................................................................7, 20

*Rufkahr Const. Co. v. Weber*,
  658 S.W.2d 489 (Mo. Ct. App. 1983) ...................................................................6

*Schoenbaum v. E.I DuPont de Nemours and Co.*,
  2009 WL 4782082 (E.D. Mo. Dec. 8, 2009) ........................................................12

*In re St. Jude Med., Inc.*,
  522 F.3d 836 (8th Cir. 2008) ................................................................7, 13, 16

*Stone v. Advance Amer.*,
  278 F.R.D. 562 (S.D. Cal. 2011) ..........................................................................8

*Supermarket Merch. & Supply, Inc. v. Marschuetz*,
    196 S.W.3d 581 (Mo. Ct. App. 2006) ................................................................8

*Tommey v. Computer Sciences Corp.*,
    2013 WL 1304186 (D. Kan. Mar. 27, 2013) ...................................................24

*True v. Conagra Foods*,
    2011 WL 176037 (W.D. Mo. Jan. 4, 2011) ....................................................17

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S.Ct. 2541 (2011) ................................................................... *passim*

*State ex rel. William Ranni Associates, Inc. v. Hartenbach*,
    742 S.W.2d 134 (Mo. banc 1987) ..................................................................19

*Woolfolk v. Jack Kennedy Chevrolet Co.*,
    296 S.W.2d 511 (Mo. Ct. App. 1956) ............................................................11

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
    644 F.3d 604 (8th Cir. 2011) ...........................................................................1

## Statutes

Missouri Merchandising Practices Act .........................................................................20

Standard Contract and a Uniform Act .........................................................................12

## Other Authorities

Fed. R. Civ. P. ............................................................................................. *passim*

Rule 23 ........................................................................................................ *passim*

## I.     Introduction

Plaintiffs – three former joint venture general managers ("JVGMs") of Panera Bread®
bakery-cafes all located in Charlotte, North Carolina – are trying to convert their own personal
grievances about their pay into a nationwide class action. Their breach of contract and fraud
claims,[1] however, should not be certified as a Rule 23(b)(3) class action.[2] Plaintiffs cannot
establish the most basic requirements for class certification, much less meet their burden of
surviving the prescribed, rigorous analysis under Rules 23(a) and 23(b)(3).[3] Plaintiffs baldly
assert they can prove their claims using representative proof, while ignoring the particularized,
fact-dependent nature of their claims. Moreover, Plaintiffs ignore that Panera's highly-
individualized defenses are not susceptible to representative proof.

Plaintiffs base their breach of contract claim on an alleged breach of a "standard" written
agreement that, for putative class members, was properly and orally modified. Consequently, the
Court must evaluate *individualized evidence* concerning each JVGM's understanding of the
terms of their agreements, as well as each JVGM's satisfaction of various conditions precedent
to payment of a JVGM Buyout. Such individualized proof is antithetical to a proper class action.

As the named Plaintiffs concede, their bid for certification of their fraud claims similarly
fails because there is no representative proof of such claims or Panera's defenses. The supposed

---

[1] Plaintiffs' Amended Complaint alleges breach of contract, fraud, and unjust enrichment in four separate
counts, only two of which were pled as putative class claims. *See* Doc. 43. The Court previously
dismissed Plaintiffs' conversion class claim. *See* Doc. 27.

[2] Plaintiffs seek certification of a class including all JVGMs who received a "capped JVGM Buyout
payment" between October 29, 2009 and the date of trial. They define "capped JVGM Buyout payment"
as an amount less than required by Section 3(b) of the JVGM's Joint Venture General Manager
Compensation Plan ("Compensation Plan"). [Doc. 55 at 11]. According to Panera's records, there are 61
current potential class members – *i.e.*, the three named Plaintiffs and 58 other JVGMs. The class would
include current employees who have not yet been paid JVGM Buyouts and thus some putative class
members lack standing. *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 616 (8th Cir. 2011)
("[a] district court may not certify a class … if it contains members who lack standing).

[3] Plaintiffs have only moved for certification of their class action claim under Fed.R.Civ.P. 23 (b)(3). *See*
Doc. 55 at 12.

class representatives have all admitted they cannot show a common misrepresentation made to each Plaintiff and putative class member, nor can they show each JVGM relied on any particular representation or that Panera knew its representations were false when made.

Further complicating the certification analysis, and illustrating why this case cannot proceed as a class action, two of the named Plaintiffs are pursuing their own *individual* fraud and unjust enrichment claims that they admit are "intertwine[d]" and "interrelated" with their class-wide breach of contract claim. These non-class claims are premised on alleged *verbal promises* to them and only a few other JVGMs. *See* Doc. 43 at 21-24 and 29-33. These individual claims are not only atypical, they also confound the issues that must be determined in this case.

Plaintiffs' claims and Panera's defenses are rife with individualized issues that are both atypical and will predominate over any common questions. As addressed below, Plaintiffs' breach of contract and fraud claims should not proceed as a class action under Rule 23(b)(3).

## II.    Background

The named Plaintiffs each worked for Panera, LLC as JVGMs in the Charlotte, North Carolina area.[4] They managed company-owned and operated Panera Bread® bakery-cafes. In 2009, each of the named Plaintiffs signed Employment and Confidentiality Agreements ("Employment Agreements") and Compensation Plans. [*See* Docs. 55-7, 55-8, 55-9]. Under the terms of these agreements, Plaintiffs were employed at-will. [*Id.* at ¶ 3 of the Employment Agreements and ¶ 4 of the Compensation Plans]. The agreements provided that Plaintiffs could earn a base salary and additional compensation referred to as "JVGM Payouts" and "JVGM Buyouts," if certain conditions were met. [*Id.* at ¶ 5 of the Employment Agreements and ¶¶ 2 and 3 of the Compensation Plans]. Assuming the conditions were met, the JVGM Buyouts were

---

[4]  Panera operates bakery-cafes in approximately 100 markets, with each market consisting of approximately 8-12 bakery-cafes. JVGMs in each market are supervised by a Joint Venture Partner ("JVP") who has responsibility for that market. [Ex. 6, Decl. of Jaynanne Calaway-Habeck, ¶ 6].

payable following the end of a five-year period of employment. [*Id.* at ¶ 3 of the Compensation Plans].

Panera began using the Compensation Plans at issue in 2007 and used them with JVGMs until 2010. [Ex. 6, Calaway-Habeck Decl. at ¶ 9]. In the latter part of 2010, Panera decided to make changes to the JVGM compensation program, including implementing a cap on JVGM Buyout payments. [*Id.* at ¶ 7]. In the first quarter of 2011, presentations were given to JVGMs in Panera's various markets about the changes. These were communicated verbally by the respective JVP and/or Regional Vice President for that market and/or other Panera executives.[5] [*Id.*] Documentation regarding the program changes and subsequent updates was also made available to JVGMs on Panera's intranet site, Harvest. [*Id.*] Because the prior Compensation Plans used from 2007 to 2010 had five-year terms (unless earlier terminated as allowed in the agreements), the putative class members began receiving JVGM Buyouts as early as 2012. [*Id.* at ¶ 9] Yet, Panera received no complaints from any JVGM about any capped JVGM Buyout payment until Plaintiff Boswell raised a concern in 2014. [*Id.*]

Plaintiffs allege Panera breached their written agreements and committed fraud by inducing Plaintiffs to enter into the Compensation Plans. [Doc. 43 at ¶¶ 60-76]. All three named Plaintiffs plead their breach of contract claims on behalf of a proposed class, although Plaintiffs Boswell and Lutton also plead non-class fraud and unjust enrichment claims. [*See generally* Doc. 43]. Plaintiffs Boswell and Lutton base their individual claims for fraud and unjust enrichment on the contention that Panera failed to provide them with certain credits that would have increased the amount of their JVGM Buyouts, which they contend were *verbally promised* to them. The alleged credits stem from Plaintiffs' implementation of "Panera 2.0," a new operating

---

[5] Panera has determined that no such presentation was ever given in the Charlotte, North Carolina market where the three named Plaintiffs worked. [Ex. 6, Calaway-Habeck Decl., ¶ 8].

system rolled out in 2013 to selected cafes in Panera's Charlotte, North Carolina Market. [*See* Doc. 43 at ¶¶ 77-88].

### III.   Legal Standards

#### A.   Rule 23's Rigorous Analysis

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2550 (2011). As one court has explained, "*Dukes* eliminated several decades of fuzzy judicial thinking about class actions … and reminded us that the key question presented by a class certification motion is whether it can fairly and lawfully be said that plaintiff's win, if he wins *his* case, can fairly and lawfully be replicated for every member of the class, and plaintiff's loss, if he loses *his* case, can be fairly and lawfully be replicated for every member of the class whose rights he proposes to champion." *Miller v. Farmers Ins. Grp.*, 2012 WL 8017244, at *16 (W.D. Okla. Mar. 22, 2012) (emphasis in original).

Consequently, class certification is only warranted when the district court is satisfied plaintiffs have met *their burden* of establishing each element of Rule 23(a) *and* the elements of one type of class action listed in Rule 23(b). *Id.*; *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1029 (8th Cir. 2010). Importantly, "Rule 23 does not set forth a mere pleading standard." *Dukes*, 131 S.Ct. at 2551. Instead, the Court must "probe behind the pleadings before coming to rest on the certification question." *Id.* (citations omitted). "[A] party must not only be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a). The party must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432 (2013) (internal citations and punctuation omitted) (emphasis in original). "Such an analysis will frequently overlap with the merits of the plaintiff's

underlying claim." *Id*. Thus, "the 'rigorous analysis' under Rule 23 must involve consideration of what the parties must prove." *Elizabeth M. v. Montenez*, 458 F.3d 779, 786 (8th Cir. 2006). *See also Avritt*, 615 F.3d at 1029.

**B.     Plaintiffs' Breach of Contract and Fraud Claims Require Individualized Inquiries**

Because the Court must look behind the pleadings and consider both what Plaintiffs ultimately must prove and Panera's evidentiary and affirmative defenses, the evidence, as well as the elements of Plaintiffs' claims and Panera's defenses, is critical to the certification analysis. The evidence relevant to Plaintiffs' claims and Panera's defenses is particularized to each putative class member, making class certification improper.

*1.     Legal Standards Regarding Plaintiffs' Breach of Contract Claim*

"Under Missouri law, '[a] breach of contract action includes the following essential elements: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff.'" *Chavis Van & Storage of Myrtle Beach, Inc. v. United Van Lines, LLC*, -- F.3d --, 2015 WL 1881199, at *4 (8th Cir. Apr. 27, 2015). *See also Keveney v. Mo. Military Acad.*, 304 S.W.3d 98, 104 (Mo. banc 2010). To show the existence of a contract, Missouri courts have further stated the plaintiff must prove: (1) competency of the parties to contract; (2) subject matter; (3) legal consideration; (4) mutuality of agreement; and (5) mutuality of obligation. *Ketcherside v. McLane,* 118 S.W.3d 631, 635 (Mo. Ct. App. 2003). The fourth element has been described as requiring "a mutuality of assent or a meeting of the minds on the essential terms of a contract." *Bldg. Erection Servs. Co. v. Plastic Sales & Mfg. Co.*, 163 S.W.3d 472, 477 (Mo. Ct. App. 2005).

In this case, Plaintiffs' breach of contract claim relies entirely on an integration clause contained in paragraph 5(d) of the Compensation Plans. [*See* Doc. 55 at 7]. Yet, "Missouri law is well-established that 'no oral modification' clauses [like the one in the Compensation Plans] have no preclusive effect when the parties engage in modification by valid contractual formalities." *Jennings v. SSM Health Care St. Louis*, 355 S.W.3d 526, 535 (Mo. Ct. App. 2011) (citing *Fritts v. Cloud Oak Flooring,* 478 S.W.2d 8, 14 (Mo. Ct. App. 1972)). "An express provision in a written contract that no rescission or variation shall be valid unless it too is in writing is ineffective to invalidate a subsequent oral agreement to the contrary." *Id.* (quoting 3A Corbin on Contracts § 763). S*ee also Doss v. EPIC Healthcare Mgt. Co.,* 901 S.W.2d 216, 221 (Mo. Ct. App. 1995); *Rufkahr Const. Co. v. Weber,* 658 S.W.2d 489, 498 (Mo. Ct. App. 1983).

Plaintiffs repeatedly contend the only necessary inquiry is whether (1) Plaintiffs and the proposed class members worked under the same Compensation Plans and (2) Panera paid them each a "capped" JVGM Buyout. But those contentions are overly simplistic and fail to consider (1) the evidence, (2) all of the elements required to prove their claim, and (3) Panera's defenses. For example, Plaintiffs must show, among other things, each class member's performance,[6] as well as their competency and understanding of the agreement. Moreover, Plaintiffs turn a blind eye to the reality that the putative class members' agreements were modified by subsequent oral agreements. These issues require numerous mini-trials making class certification improper.

### 2.    *Legal Standards Regarding Plaintiffs' Fraud Claim*

In Missouri, the elements of fraudulent misrepresentation are: "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its

---

[6] Notably, the Compensation Plan for each Plaintiff required that, in order to be eligible to receive a JVGM Buyout payment, the JVGM must, as of the date on which the payment was made (1) be an employee of Panera, (2) be performing the duties of the JVGM position, and (3) not be in breach of any provision of the Employment Agreement or any other obligation owed to Panera. [*See* Docs. 55-7, 55-8, 55-9 at ¶ 3].

truth; (5) the speaker's intent that it should be acted on by the person in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury." *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 131-32 (Mo. 2010). "A plaintiff's failure to establish any one of the essential elements of fraud is fatal to recovery." *Id.* (citing *Verni v. Cleveland Chiropractic College,* 212 S.W.3d 150, 154 (Mo. banc 2007)).

Importantly, the Eighth Circuit has recognized that "[b]ecause proof often varies among individuals concerning what representations were received, and the degree to which individual persons relied on the representations, fraud cases often are unsuitable for class treatment." *In re St. Jude Med., Inc.,* 522 F.3d 836, 838 (8th Cir. 2008). Simply put, Plaintiffs' fraud claim requires highly individualized proof. Plaintiffs have made no attempt to show their fraud claim is premised on representations made to all potential class members. Indeed, Plaintiffs admit they do not know what representations were made to other class potential members. Moreover, Plaintiffs do not know, much less are able to show, that other potential class members relied on any particular representation, or that Panera knew its representations were allegedly false when made. Accordingly, Plaintiffs' fraud claim is simply unworkable on a class-wide basis.

## IV.  Argument

### A.  Plaintiffs Cannot Satisfy Rule 23's Commonality and Predominance Requirements

#### 1.  *There Are No Common Answers Apt to Drive Resolution of this Case*

Plaintiffs point to two allegedly common "questions" (Doc. 55 at 13). But the U.S. Supreme Court has stressed that "[w]hat matters to class certification . . . is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 131 S.Ct. at 2551

(emphasis added) (internal punctuation and citation omitted). Rule 23(a)'s "commonality" element requires more than simply identifying purportedly common facts or the contention that putative class members suffered the same legal violation. *Dukes*, 131 S.Ct. at 2551. "Their claims must depend upon a common contention. . . . That common contention, moreover, must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*[7] "Courts have been unwilling to find commonality where the resolution of 'common issues' depends on factual determinations that will be different for each class plaintiff." *Stone v. Advance Amer.*, 278 F.R.D. 562, 569 (S.D. Cal. 2011).

Additional evidence also confirms that class treatment is inappropriate. For example, some putative class members who received capped JVGM Buyouts do not believe they are owed anything more from Panera under their Compensation Plans (*i.e.,* they do not believe Panera breached their agreements). [*See* Ex. 4, Decl. of John Creamer; Ex. 5, Decl. of Teresa Kaczmarek]. Furthermore, while Plaintiffs contend they were never made aware of or agreed to changes to their Compensation Plan before they received their JVGM Buyouts, other putative class members acknowledge they (1) knew of the changes before they received their JVGM Buyouts and (2) expressed no objections to those changes and thus, assented to modification of their Compensation Plans and waived the ability to challenge the changes.[8] [*See* Ex. 4, Creamer Decl.; Ex. 5, Kaczmarek Decl.]. *See also Supermarket Merch. & Supply, Inc. v. Marschuetz*, 196 S.W.3d 581, 587 (Mo. Ct. App. 2006) (noting general rule that an employee cannot repudiate the unfavorable terms of a modified contract when he has claimed the benefit of continued

---

[7] Plaintiffs seemingly acknowledge this standard, yet they plainly fail to follow it. Instead, they raise only a single, allegedly common, question of law and question of fact, and they offer no answers that will drive resolution of this case. [*See* Doc. 55 at 12-13].

[8] Plaintiffs have also indicated that they were aware of the changes but did not make any objections prior to receiving their Buyouts. *See, infra,* fn. 10.

employment under it); *Long v. Huffman*, 557 S.W.2d 911 (Mo. Ct. App. 1977) (party who was aware of alleged breach but made no objection and continued to work and be paid was estopped to contradict his consent). Consequently, Plaintiff's own, personalized experiences and beliefs of a breach or fraud by Panera cannot be extrapolated to others for purposes of justifying class action certification.

Once this Court moves beyond the pleadings and Plaintiffs' conclusory, unsupported arguments, Plaintiffs' motion for class certification collapses. Indeed, Plaintiffs' own deposition testimony, in which they make the following admissions, undermines class certification of both their breach of contract and fraud claims:

Regarding Alleged Breach of Contract

- Plaintiffs' claims are not only based on the written Compensation Plan; Plaintiffs Boswell and Lutton also seek personal relief based on a purported *verbal* representation about the implementation of Panera 2.0 that was only made to *some, but not all, of the putative class members*. [Ex. 1, Boswell Dep. at 43:9-44:24 and 82:6-11; Ex. 2, Lutton Dep. at 30:11-31:25].

- Plaintiffs' *personal* fraud and unjust enrichment claims premised on oral representations are "interrelated" and "intertwined" with their claims under the Compensation Plan. [Ex. 1, Boswell Dep. at 82:12-20 and 83:3-19].

- Under the terms of the Compensation Plan, if a particular JVGM did not meet its required conditions, he or she would not be eligible for a JVGM Buyout. [Ex. 1, Boswell Dep. at 52:19-53:14; Ex. 2, Lutton Dep. at 121:15-123:3, 182:23-183:13; Ex. 3, Snyder Dep. at 96:16-97:10].

- Plaintiffs do not know whether any of the purported class members satisfied the required conditions in the Compensation Plans. [Ex. 1, Boswell Dep. at 175:2-24; Ex. 2, Lutton Dep. at 185:18-186:23.]

- Under the Compensation Plan, Panera had the unilateral right to change the "store profit hurdle," which directly impacted the calculation of the JVGM Buyout payment, and with regard to Plaintiff Lutton, Panera later changed his profit hurdle to his benefit. [Ex. 1, Boswell Dep. at 71:19-23, 100:14-101:15; Ex. 2, Lutton Dep. at 129:10-15, 134:22-136:20; Ex. 3, Snyder Dep. at 35:14-36:11].

- Plaintiffs Boswell and Lutton do not know how much they claim is owed to them by Panera. [Ex. 1, Boswell Dep. at 157:19-158:7, 160:9-161:19, 170:1-7; and Ex. 2, Lutton Dep. at 53:3-22].

- Determining if a particular JVGM Buyout was properly calculated under the Compensation Plan would first require a determination that verbal commitments were made to each putative class member individual profit and loss statements for that JVGM for the past two years. [Ex. 1, Boswell Dep. at 73:6-17; Ex. 2, Lutton Dep. at 162:13–163:13; Ex. 3, Snyder Dep. at 183:3-22].

- Plaintiffs Lutton and Boswell disagree with the numbers reflected on their JVGM Buyout spreadsheet and think additional credits should have been added due to Panera 2.0, whereas Plaintiff Snyder has no quibble regarding such inputs. [Ex. 2, Lutton Dep. at 163:25–164:18, Doc. 55-1a, Lutton Buyout Spreadsheet; Ex. 1, Boswell Dep. at 158:12-159:9; Ex. 3, Snyder Dep. at 43:3-6; 82:11-15].

Regarding Alleged Fraud in the Inducement

- Plaintiffs do not recall Panera recommending or advising them to sign their Compensation Plans, nor do they recall anyone at Panera making any representations beyond the written terms of the Compensation Plans. [Ex. 1, Boswell Dep. at 34:25-35:6 and 37:7-38:7; Ex. 2, Lutton Dep. at 39:4-40:8 and 111:15-112:18].

- Panera did not make any representations about what was intended by the Compensation Plan. [Ex. 1, Boswell Dep. at 41:25-46:4; Ex. 2, Lutton Dep. at 34:22-36:18; 39:22-40:8; Ex. 3, Snyder Dep. at 34:13-19].

- Plaintiffs do not know if other JVGMs personally relied on anything reflected in the agreements and cannot speak to how others made their decisions. [Ex. 1, Boswell Dep. at 113:4-114:13; Ex. 2, Lutton Dep. at 42:7-22; Ex. 3, Snyder Dep. at 29:21-30:21].

- Plaintiffs have no evidence that Panera knew any of its alleged representations at issue were false when those representations were made. [Ex. 1, Boswell Dep. at 117:5-20; Ex. 2, Lutton Dep. at 45:12-46:4, 48:11-23, 60:4-10; Ex. 3, Snyder Dep. at 34:20-35:13].

These admissions are fatal to Plaintiffs' motion because they illustrate there is no common evidence that will predominate and drive answers to critical liability and damages questions.

Plaintiffs not only ignore their own testimony and burdens, but also Panera's affirmative and evidentiary defenses – all of which show there are no common *answers* to the relevant questions. For example, Plaintiffs' breach of contract claim requires not only that there was a contract, but also that (1) there was a meeting of the minds on the terms of the contract, (2)

Plaintiffs performed their obligations under the contract, and (3) the contract was breached. Here, the Compensation Plan includes conditions precedent that JVGMs must satisfy to be eligible for a JVGM Buyout,[9] one of which is that the person must perform the duties of the JVGM position on the date the JVGM Buyout is paid. *See* fn. 6, *supra*. Although Plaintiff Boswell claims he met this condition, there is direct evidence to the contrary.[10] [Ex. 1, Boswell Dep. at 49:11-20; Ex. 6, Calaway-Habeck Decl. at ¶¶ 3, 4]. Other JVGMs face the same problem,[11] and Plaintiffs admit they do not know, and cannot speak to, whether other JVGMs actually performed their own contractual obligations. Only individualized proof can potentially prove this critical element. *See In re Bank of Am. Home Affordable Modification Program Contract Litig.*, 2013 WL 4759649, at *10 (D.Mass. Sept. 4, 2013) (denying class certification, on predominance grounds, of breach of contract claims involving uniform contracts because each class member would have to have

---

[9] "A condition precedent is a condition which must be fulfilled before the duty to perform an existing contract arises." *CitiMortgage, Inc. v. Just Mortgage, Inc.*, 2013 WL 6538680, at *9 (E.D. Mo. Dec. 13, 2013) (quoting *Gillis v. New Horizon Dev. Co., Inc.*, 664 S.W.2d 578, 580 (Mo. Ct. App. 1983)). In Missouri, failing to satisfy a condition precedent, or what is also referred to sometimes as the "first to breach" rule, means "a party to a contract cannot claim its benefits if he or she is the first to violate it." *Clean Unif. Co. St. Louis v. Magic Touch Cleaning, Inc.*, 300 S.W.3d 602, 612 (Mo. Ct. App. 2009) (citing *R.J.S. Sec., Inc. v. Command Sec. Servs.*, 101 S.W.3d 1, 18 (Mo. Ct. App. 2003); *Forms Mfg. Inc. v. Edwards*, 705 S.W.2d 67, 69 (Mo. Ct. App.1985)). "Whether a plaintiff has unilaterally breached the contract before a defendant breaches it is a question of fact." *Id*. (citing *Forms Mfg.*, 705 S.W.2d at 69).

[10] Plaintiffs attempt to avoid this issue by arguing that Panera paid Boswell a JVGM Buyout, citing *Woolfolk v. Jack Kennedy Chevrolet Co.*, 296 S.W.2d 511 (Mo. Ct. App. 1956). *Woolfolk* is inapposite. There, the defendant failed to procure insurance for the plaintiff as contemplated in connection with the purchase of a vehicle. The court determined the plaintiff waived his breach of contract claim because he failed to do anything for fifteen months after he received notice that insurance coverage was purchased. *Id*. at 514-15. Here, the written agreements between the Plaintiffs and Panera include a non-waiver clause that only favors Panera. *See* Section IV.A.2.a, *infra*. Accordingly, *Woolfolk* stands for the proposition that JVGMs, such as Plaintiffs Boswell and Snyder, who were aware Panera was capping JVGM Buyouts, (*see* Ex. 1, Boswell Dep. at 138:22-139:15 and Ex. 3, Snyder Dep. at 119:11-19), cannot be heard to complain of a breach, thus interjecting yet another individualized inquiry.

[11] As Plaintiffs admit, contrary to the Compensation Plan, one JVGM was apparently paid a JVGM Buyout seven days after his employment ended (Doc. 55 at 20 n.8), making him ineligible for a JVGM Buyout. Accordingly, particularized evidence must be considered to determine if Panera affirmatively waived a condition and paid the JVGM.

shown his or her own performance of the contract at issue, which created a "nearly endless series of individual questions").

Likewise, because (1) Missouri law allows for oral modifications to agreements – even in the face of integration clauses, and (2) at least some JVGMs assented to Panera's implementation of a cap, representative proof will not definitively answer questions about whether each proposed class member agreed to a modification of his or her Compensation Plan or waived his or her rights. Nor will Plaintiffs' proposed common questions provide answers justifying certification.

Similarly, Plaintiffs' admissions about their fraud claim belie commonality. Although Plaintiffs suggest Panera's intent to comply with the Compensation Plans is an "overriding common issue," *see* Doc. 55 at 13, Panera's intent when entering into the Compensation Plan is only one of *nine* elements to their fraud claim. And, importantly, they admit they have no evidence that Panera knew any representation it made was false at the time it was made, when the decision to implement a cap on JVGM Buyouts was made, or what other JVGMs may have been told or relied upon. [*See* Ex. 1, Boswell Dep. at 113:4-114:13, 117:5-20, 118:15-18; Ex. 2, Lutton Dep. at 42:7-22, 45:12-46:4, 48:11-23, 59:17-60:10; Ex. 3, Snyder Dep. at 29:21-30:21, 34:20-35:13]. In short, Plaintiffs offer only a single question that is, in a broad sense, common, yet they fail to produce a common answer that will drive resolution of this litigation using representative proof.

### 2.      Plaintiffs' Mantra of a Standard Contract and a Uniform Act Is Insufficient to Demonstrate Predominance on the Contract Claim

When, as here, the action is to proceed under Rule 23(b)(3), the stringent commonality requirement of Rule 23(a) is subsumed by the even more stringent predominance requirement set forth in Rule 23(b)(3). *Danvers Motor Co., Inc., v. Ford Motor Co*., 543 F.3d 141, 148 (3rd Cir. 2008); *Schoenbaum v. E.I DuPont de Nemours and Co.*, 2009 WL 4782082, at *6 (E.D. Mo.

Dec. 8, 2009). The predominance requirement means that, even if there are common issues that satisfy Rule 23(a)(2), certification is improper unless those common issues predominate the individual ones, with regard to *both* liability *and* damages. Plaintiffs cannot demonstrate predominance with regard to liability *or* damages.

### a) *There is No Predominance Regarding Purported Breaches of Contract*

Regarding liability, "[t]he predominance inquiry requires an analysis of whether a *prima facie* showing of liability can be proved by common evidence or whether the showing varies from member to member." *Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773, 778 (8th Cir. 2013). "The need for . . . plaintiff-by-plaintiff determinations means that common issues will not predominate the inquiry into (defendant's) liability.*" In re St. Jude Medical, Inc*., 522 F.3d 836, 840 (8th Cir. 2008).

Here, Plaintiffs claim commonality and predominance, arguing that (1) each putative class member signed a "standard" agreement (the Compensation Plan) and (2) Panera acted uniformly when capping the JVGM Buyout. [Doc.55 at 13, 17-18]. These allegations only address *part* of the equation. As another court aptly stated when denying class certification of a similar breach of contract claim, "[when] analyzing whether to certify for class treatment claims that [the defendant] breached its contractual obligation to provide a minimum amount of monthly business, . . . demonstrating the terms of the franchise agreement were the same for all of the putative class members is 'only half of the battle.'" *Moua v. Jani-King of Minnesota, Inc.*, 2010 WL 935758, at *3-4 (D. Minn. Mar. 12, 2010) (denying certification of breach of alleged uniform contract claim due to lack of predominance) (quoting *De Giovanni v. Jani-King Int'l, Inc.*, 262 F.R.D. 71, 77 (D. Mass. 2009)).

Here, whether Plaintiffs and each JVGM signed similar agreements and whether Panera imposed a cap on the JVGM Buyouts provided for in those agreements do not predominate

because other key and personalized issues – *e.g.,* whether the contracts were orally modified and whether each class member met all conditions precedent to receive a Buyout payment – are more likely to drive resolution of their claims. *See In re Bank of Am. Home Affordable Modification Program Contract Litig.*, 2013 WL 4759649, at *10.

Plaintiffs' oversimplification of the predominance factor ignores the pertinent inquiries into whether each putative class member had a meeting of the minds about their Compensation Plans and modifications to their Compensation Plans, and whether each putative class member performed their own obligations under the agreement. Plaintiff Boswell's claim presents a prime example of Plaintiffs' inability to prove the breach of contract claim on a representative basis. The evidence demonstrates there is a question of fact as to whether Boswell satisfied a condition precedent to valid receipt of his JVGM Buyout. Panera's records show that Boswell was not performing the duties of a JVGM when he received his JVGM Buyout, as required by the agreement, whereas Boswell contends he was performing JVGM duties when he was paid his JVGM Buyout [*Compare* Ex. 6, Calaway-Habeck Decl. and Doc. 55-7 at ¶ 3(a) *with* Ex. 1, Boswell Dep. at 12:14-14:10]. This fact issue must be resolved regarding Boswell's claim, and other JVGMs' claims would require similar, personalized examination.[12] Additionally, Plaintiff's alleged common issues do not address, much less predominate Panera's individualized affirmative and evidentiary defenses applicable to individual class members – *e.g.*, whether some JVGMs (1) agreed to an oral modification of their Compensation Plan, (2) waived their rights to

---

[12] Plaintiff Snyder suffers from a similar problem. She admits she hired a relative to work in her store, in violation of Panera policy, thereby failing to satisfy another condition precedent to valid receipt of her JVGM Buyout. [Ex. 3, Snyder Dep. at 15:20-16:23]

an uncapped JVGM Buyout, and (3) acquiesced to Panera's implementation of capped JVGM Buyouts.[13] Ultimately,

> [e]xamination of the merits of these defenses in detail is not required at this time. For the time being it is sufficient to note that the existence of these defenses, and the fact that their application will likely involve individualized determinations, weighs against the certification of the proposed [class]. This is especially true in light of *Wal–Mart,* in which the Supreme Court held that "[b]ecause the Rules Enabling Act forbids interpreting Rule 23 to "abridge, enlarge or modify any substantive right" . . . a class cannot be certified on the premise that [the defendant] will not be entitled to litigate its . . . defenses to individual claims."

*Monaco v. The Bear Stearns Cos., Inc.*, 2012 WL 10006987, at *9 (C.D. Cal. Dec. 10, 2012)

(denying class certification on breach of contract claim) (quoting *Dukes*, 131 S.Ct. at 2561).

Plaintiffs' suggestion that Panera's payment of the JVGM Buyouts to Boswell and other JVGMs means it accepted their performance and waived its argument regarding breach of the agreement lacks merit. It conveniently ignores provisions of the agreements at issue. Plaintiffs and other JVGMs signed the Employment Agreements at the same time as the Compensation Plans (*see* Docs. 55-7, 55-8, 55-9). The Employment Agreement includes a non-waiver clause expressly stating that Panera's failure to enforce any term, provision, or condition of the agreement at any time does <u>not</u> constitute a waiver of that term, provision or condition. [*See, e.g.,* Doc. 55-7 at p. 4, ¶15].[14] Thus, merely because Panera paid a JVGM Buyout does not mean it

---

[13] While no such communication was made in the named Plaintiffs' market, JVGMs in other markets were given presentations about changes to their compensation program, and other JVGMs who received capped buyouts as long ago as 2012 have not complained. [Ex. 6, Calaway-Habeck Decl. at ¶¶ 7,8].

[14] Although the Compensation Plans do not expressly include a non-waiver provision, the two agreements were executed at the same time and the Compensation Plan expressly incorporates the Employment Agreement. [*See, e.g.,* Doc. 55-7 at p. 1, ¶ 1, p. 2, ¶ 5.2 and p. 5, ¶ 5(d)]. Missouri dictates that when multiple documents relating to the same subject matter are executed at the same time, "the documents … be construed together 'even in the absence of explicit incorporation.'" *See Ditto, Inc. v. Davids*, 2014 WL 5840728, at *8 (Mo. Ct. App. 2014) (quoting *Johnson ex rel. Johnson v. JF Enter.*, LLC, 400 S.W.3d, 763, 767 (Mo. banc 2013). *See also N. Am. Sav. Bank v. Resolution Trust Corp.*, 65 F.3d 111, 114-15 (8th Cir. 1995) (citing *Mo. Sav. Ass'n v. Home Sav. Of Am.*, 862 F.2d 1323, 1326 (8th Cir. 1988) (finding integration clause did not preclude separate document from being construed as part of the contract)).

waived its right to later assert a prior breach, much less relieve the Plaintiffs of their obligation to prove, in their *prima facie* case, *their* performance.[15]

In sum, liability for alleged breaches of contract cannot be determined in one fell swoop for the entire putative class. There is no common evidence. Plaintiffs' admissions concerning their own claims illustrate this point. So do Panera's counter-evidence and affirmative defenses. In other words, determining liability would involve particularized evidence for each class member and each contract, which is contrary to the very nature of a class action.

### b) *Plaintiffs Boswell and Lutton Illustrate There is No Predominance Regarding Damages*

Even if there were predominating evidence regarding liability (which there is not), certification should be denied because Plaintiffs do not – and cannot – meet their burden of showing predominance with regard to damages. In *Comcast Corp. v. Behrend*, the Supreme Court made clear the predominance requirement applies equally to damages. Certification, the Court said, is only proper when damages "are capable of measurement on a classwide basis." 133 S.Ct. 1426, 1433 (2013). Otherwise, "[q]uestions of individual damage calculations will

---

[15] Plaintiffs mistakenly contend the Court can confirm Panera did not mistakenly pay a JVGM Buyout by simply checking Panera's files for unresolved "policy violations." For example, according to Plaintiff Boswell, whether he was working as a JVGM at the time of his JVGM Buyout cannot be determined from Panera's records – *i.e.*, his testimony allegedly contradicts Panera's records. And, as Plaintiffs point out, there is at least one other JVGM who received a JVGM Buyout after termination. [Doc. 55 at fn. 8]. These are not "policy" issues. But even if they were, Plaintiffs' position undermines their contention that class treatment is suitable because the Court would still need to consider each class member's testimony and employment records.

Similarly, Plaintiffs' statement that former JVGMs who were not performing JVGM duties on the relevant date due to a promotion or lateral transfer received "prorated Buyouts," misunderstands Panera's discovery responses. [*See* Doc. 55 at 20-21, citing Panera's interrogatory responses]. Panera's interrogatory response, which addressed, in part, the number of JVGMs who had similar agreements, merely clarified the number of individuals who received a capped JVGM Buyout that was not prorated due to a promotion or lateral transfer. Some JVGMs may have received a JVGM Buyout in an amount that was prorated to cover only a period of their Employment Agreement because the JVGMs transferred, or were promoted to a different position with a superseding compensation plan, before their Employment Agreement expired. Such individuals would not fall within Plaintiffs' proposed class, and thus would not address whether other JVGMs, like Plaintiff Boswell, were performing the duties of a JVGM on the date of their JVGM Buyout.

inevitably overwhelm the questions common to the class." *Id.* at 1433. That holding reinforces

what has always been the rule in this Circuit. *See In re St. Jude*, 522 F.3d at 840–41 (explaining

that "the need for detailed and individual factual inquiries concerning the appropriate remedy for

any violation . . . weighs strongly against class certification").

Although variation in the *amount* of damages among class members might not defeat

certification, when "[a]n accurate, true assessment of any plaintiff's damages requires an

extensive inquiry involving the circumstances of that particular plaintiff," class certification

should be denied "because individual damages issues predominate[] over common elements." *In

re Genetically Modified Rice Litig.*, 251 F.R.D. 392, 399 (E.D. Mo. 2008); *see also True v.

Conagra Foods*, 2011 WL 176037, at *4 (W.D. Mo. Jan. 4, 2011) ("if individual damages cannot

be determined by reference to a mathematical or formulaic calculation, the dissimilar damages

issue may predominate over any common issues shared by the class.").

Plaintiffs argue the damages for each proposed class member can be determined from a

mechanical calculation discernable from Panera's records. But Plaintiffs' admissions prove

otherwise. Missouri law provides that the measure of damages for a breach of contract is the

"benefit of the bargain" – *i.e.*, the party must be put in the same position as if the contract had

been performed. *See Dierkes v. Blue Cross & Blue Shield of Mo.*, 991 S.W.2d 662, 669 (Mo.

banc 1999); *Guidry v. Charter Commc'ns, Inc.*, 269 S.W.3d 520, 532 (Mo. Ct. App. 2008). Thus,

the question for each JVGM in the putative class is: What was their bargain with Panera? Or,

stated differently: What is the difference between what the JVGM received and what they

allegedly should have received? Although Plaintiffs contend the answer to these questions only

requires a simple calculation based on Panera's records, Plaintiffs Boswell and Lutton both

testified that they do not know how much their own JVGM Buyout should have been. [Ex. 1,

Boswell Dep. at 157:19-158:7, 160:9-161:19, 170:1-7; and Ex. 2, Lutton Dep. at 53:3-22]. Nor

do they know what document, if any, would show how much they are allegedly owed by Panera. [*Id.*]. Contrary to Plaintiffs' own assertion, no calculation of damages for class members is possible based on a mechanical review of Panera's records.

As Plaintiffs acknowledge, there is no pre-set minimum JVGM Buyout. [Ex. 1, Boswell Dep. at 99:12-15; Ex. 2, Lutton Dep. at 114:24-115:1; Ex. 3, Snyder Dep. at 203:13-15] The formula in their Compensation Plans is comprised of several variables, including a store "profit hurdle" that (1) varied from one store to another, (2) was listed in the Compensation Plan, (3) would directly impact the amount of the JVGM Buyout, and (4) Panera had "sole discretion" to modify. [Ex. 1, Boswell Dep. at 71:19-23, 100:1-101:15; Ex. 2, Lutton Dep. at 129:10-15, 134:22-136:20, 142:5-8; Ex. 3, Snyder Dep. at 35:14-36:11]. For each JVGM, the Compensation Plan thus allowed Panera discretion to modify the applicable profit hurdle and thereby directly increase or decrease the amount of the JVGM's Buyout. Each JVGM's understanding of that provision, as well as how it impacted the "bargain" they believe they made with Panera, can only be answered by testimony from each JVGM. The fact-specific nature of this issue is illustrated by Boswell's and Lutton's own inability to identify the exact amount they believe they are owed in excess of the cap Panera imposed on their JVGM Buyouts.

Plaintiff Lutton's situation presents an example of individualized damages issues that predominate here. Plaintiff Lutton's profit hurdle, as allowed for by his Compensation Plan, was modified by Panera – *i.e.*, it was reduced downward[16] – which, in turn, increased his JVGM

---

[16] Similarly, Plaintiff Snyder received a "2.0 credit" that effectively reduced her profit hurdle or increased her profit. [Ex. 3, Snyder Dep. at 11:21-12:3, 27:7-16]. And, as Snyder acknowledges, that modification was neither required nor made under a signed, written modification, of her Compensation Plan. [*Id.* at 36:20-37:4]. Accordingly, there are individuated reasons why other Plaintiffs may have earned *more than required* under the Compensation Plan.

Buyout. [Ex. 2, Lutton Dep. at 142:5-8].[17] Consequently, Plaintiff Lutton received *more than the benefit of his bargain*, potentially leaving him with no damages, but certainly requiring particularized inquiry.[18]

Because Plaintiffs' proposed methodology for calculating their personal damages does not provide a means for calculating class-wide damages, the Court must consider evidence about *each JVGM's* understanding of the bargain he or she struck, as well as any counter-evidence from Panera. Therefore, questions of individual damages calculations will inevitably overwhelm the questions common to the class and certification must be denied.

### 3.  *Nor Can Plaintiffs Show Predominance Regarding their Fraud Claim*

Not surprisingly, Plaintiffs contend their fraud claim is susceptible to class-wide treatment because Panera made its purported representations in their Compensation Plans.[19] This contention, even if true, does not mean there is a common proof that *each JVGM* solely relied on the express language in the Compensation Plan when deciding to sign the Compensation Plan, become employed by Panera, or continue working as a JVGM. Instead, Plaintiffs incorrectly

---

[17] At least two other JVGMs also had their profit hurdles modified, impacting their buyout amounts. [*See* Ex. 6, Calaway-Habeck Decl., ¶ 5].

[18] Plaintiffs Lutton and Boswell both introduce further individualized issues about their supposed damages because they *personally* claim they should have received "2.0 credits" that would have increased the amounts of their JVGM Buyouts, although they do not know by how much. [*See* Ex. 1, Boswell Dep. at 157:19-158:7, 158:12-159:9, 160:9-161:19, 170:1-7; and Ex. 2, Lutton Dep. at 53:3-22, 111:15-112:48]. And, as Plaintiff Snyder admits, it is unknown if other putative class members may claim they too were entitled to "2.0 credits." [Ex. 3, Snyder Dep. at 43:11-44:6].

[19] Plaintiffs presumably take this position to argue the Compensation Plan's Missouri choice of law provision governs their fraud claim under *Express Scripts v. Walgreen Co.*, 2009 WL 4574198 (E.D. Mo. Dec. 3, 2009). But *Express Scripts* does not apply in this case because the underlying claim there was the tort of conversion. Without Missouri law controlling their fraud claim, it would be necessary to analyze the legal elements and defenses for fraud claims in each state in which a class member is located – in this case at least 20 states. [*See* Doc. 55-1]. Even if the Court agrees with Plaintiffs on this point, Plaintiffs' fraud claim becomes irrelevant and should be dismissed because Missouri law is clear that a breach of contract does not confer a right to sue in tort. *See, e.g., State ex rel. William Ranni Associates, Inc. v. Hartenbach,* 742 S.W.2d 134, 140 (Mo. banc 1987) and *Medicine Shoppe Intern., Inc. v. Anick, Inc.,* 2010 WL 3055094 (E.D. Mo. Aug. 4, 2010) (granting summary judgment to defendant on plaintiff's fraud claims because they were merely a restatement of plaintiff's breach of contract claims).

conclude the Compensation Plan's integration clause can be used to show reliance. Importantly, under Missouri law, the integration clause does not preclude a potential oral modification of any JVGM's Compensation Plan, thereby eviscerating the integration clause as purportedly common proof. [*See* Section III.B.1, *supra*].

"[T]he Eighth Circuit has cautioned that '[b]ecause proof often varies among individuals concerning what representations were received, and the degree to which individual persons relied on the representations, fraud cases often are unsuitable for class treatment.'" *Moua*, 2010 WL 935758 at *5 (denying certification of fraud claim due to lack of commonality and predominance) (quoting *In re St. Jude Med.,* 522 F.3d at 838). Even if Plaintiffs could "show through common proof . . . that all the class members were exposed to some of the same alleged misrepresentations and omissions, the task of proving reliance still requires 'delving into the decisionmaking of each individual.'" *Id.* (quoting *De Giovanni,* 262 F.R.D. at 79–80). Plaintiffs admit they do not know what other JVGMs were told or what they may or may not have relied upon. [*See* Ex. 1, Boswell Dep. at 113:4-114:13; Ex. 2, Lutton Dep. at 42:7-22; Ex. 3, Snyder Dep. at 29:21-30:21]. Thus, class certification of their fraud claim is improper.

In further support of their argument, Plaintiffs curiously rely on authority pre-dating the Supreme Court's game-changing decisions in *Dukes* and *Comcast*, which both clarified and heightened the standard for evaluating class certification. The principal cases relied upon by Plaintiffs – *Glen* and *Mooney* (*see* Doc. 55 at 23) – are not instructive because they involved state consumer protection act claims that did not require proof of reliance. *See Glen v. Fairway Indep. Mortgage Corp.*, 265 F.R.D. 474, 480-81 (E.D. Mo. 2010) (involving a Missouri Merchandising Practices Act claim, which does not require proof of reliance and in which the issue was the legality of the defendant's failure to disclose certain information) and *Mooney v. Allianz Life Ins. Co. of North Am.*, 2009 WL 511572, at *4-6 (D. Minn. Feb. 26, 2009)

20

(involving Minnesota Prevention of Fraud Act claim in which the court applied a standard of causation that only required plaintiffs to show "some reliance").

Here, a critical element of Plaintiffs' fraud claim is proof that they, and every other putative class member, relied on Panera's representations. *Renaissance Leasing,* 322 S.W.3d at 131-32. Plaintiffs' admissions doom their own claims. Plaintiffs admit that: (1) they cannot establish that element through representative proof; (2) analysis of that claim will devolve into an examination of each JVGM's decision-making process regarding execution of the Compensation Plan; and (3) they have no class-wide evidence that Panera knew its representations, when made, were false. There simply is no common proof that will predominate over individual inquiries regarding the potential class members' fraud claims, or whether they can even establish a *prima facie* fraud claim at all.

### 4.      *Plaintiffs Cannot Establish Superiority*

Plaintiffs cannot establish the second requirement for Rule 23(b)(3) certification – *i.e.*, a class action would be the superior means of adjudicating this controversy. The individualized issues associated with "the failure to show predominance spills over into superiority." *Brown v. Kerkhoff*, 279 F.R.D. 479, 499 (S.D. Iowa 2012). "The individualized determinations necessary to decide whether an individual . . . could establish liability or the amount of damages demonstrate that individuals have a strong interest in controlling the prosecution of separate actions." *Id.* (internal punctuation and citation omitted). Here, because the applicable law and evidence – including Plaintiffs' own admissions – both show the need for each class member to testify in order to establish *prima facie* liability, "[t]he litigation would devolve into a series of mini–trials for each class member." *Doyel v. McDonald's Corp.*, 2010 WL 3199685, at *9 (E.D. Mo. Aug. 12, 2010). When the need for individualized damages determinations is also considered (not to mention counter–evidence regarding liability and damages), it becomes clear

each class member would essentially need his or her own personal trial. Such mini–trials within a trial "fail to meet the goals of class certification." *In re Genetically Modified Rice Litig*., 251 F.R.D. at 400.

Moreover, managing this case as a class action would be difficult given significant individual liability and damages issues. Manageability of a class action is a key factor in a Rule 23(b)(3) determination, and here, because each class member would have to establish his or her own right to recover (and the extent of any such recovery), a class action would not be "superior." Since Plaintiffs have altogether ignored the prevalence of individualized issues, they have not bothered explaining how the court could possibly try this case as a class action given the number of individual issues involved.

**B.      Plaintiffs Cannot Meet Rule 23(a)'s Other Requirements**

Plaintiffs' certification motion should be denied because they cannot meet the stringent requirements of Rule 23(b)(3) and because they cannot show commonality. Nevertheless, the motion should also be denied because Plaintiffs cannot satisfy Rule 23(a)'s requirements.

*1.      Plaintiff's Cannot Establish Rule 23(a)(3)'s Typicality Requirement*

"The presence of a common legal theory does not establish typicality when proof of a violation requires individualized inquiry." *Elizabeth M. v. Montenez*, 458 F.3d 779, 787 (8th Cir. 2006) (citing *Parke v. First Reliance Standard Life Ins. Co*., 368 F.3d 999, 1004 – 05 (8th Cir. 2004) (typicality requirement is not met when determination of a breach requires "a case–by– case determination."). Stated differently, a representative plaintiff cannot show typicality when the question of liability can only be ascertained on an individualized basis for each class member. *See Parke*, 368 F.3d at 1004-05. "'The proper inquiry is whether other members of the class have the same or similar injury, whether the action is based on conduct not special or unique to the named plaintiffs, and whether other class members have been injured by the same

course of conduct.'" *Duchardt v. Midland Nat'l Life Ins. Co.*, 265 F.R.D. 436, 445 (S.D. Iowa 2009) (citation omitted) (denying class certification of claims based on alleged uniform breaches of annuity contracts due to variations in the alleged contracts and the need for "individualized factual inquiries and legal analyses which would obstruct the typicality of [the plaintiff's] breach of contract claim.").[20]

Here, the putative class representatives' claims are inarguably atypical of the proposed class members because, by their own testimony, their claims can only be resolved on an individualized basis that is distinct from the proposed class members. Significantly, Plaintiffs Boswell and Lutton do not just base their breach of contract and fraud claims on their written Compensation Plan – *i.e.*, the supposed glue that holds together their claims. Instead, their claims are also premised on an alleged verbal promise to "make them whole" regarding implementation of Panera 2.0. [*See* Ex. 2, Lutton Dep. at 30:24-33:20; Ex. 1, Boswell Dep. 43:9-18]. The other JVGMs they seek to represent, in contrast, do not have this claim. [*See* Ex. 2, Lutton Dep. at 27:5-15; Ex. 1, Boswell Dep. at 87:4-20]. In particular, Plaintiff Snyder, another purported class representative, received $50,000 in monthly bonus credits associated with implementing Panera 2.0 (despite the lack of any signed written agreement or contract modification entitling her to this money), and thus admits, as she must, that her claims differ from Plaintiffs Boswell and Lutton, as well as other JVGMs. [Ex. 3, Snyder Dep. at Snyder Dep. at 11:21-12:3, 27:7-16].

Under these circumstances, the injury claimed by the named Plaintiffs is plainly distinct from the injury supposedly suffered by the proposed class. Plaintiffs' claims therefore are not typical of those they seek to represent and certification should thus be denied.

---

[20] Although typicality and commonality generally merge, they are slightly different. Typicality focuses on the relationship of the class members' claims and defenses to that of the representative plaintiff. *Guerra v. Public Safety Concepts,* 2007 WL 628430, at *3 (E.D. Mo. Feb. 27, 2007).

### 2.   *Plaintiffs Cannot Meet Rule 23(a)(1)'s Numerosity Requirement*

Numerosity under Rule 23(a) is *not* synonymous with numerousness. Instead, the inquiry is focused on whether "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *Indep. Sch. Dist. #89, Okla. Cnty., Okla. v. Bolain Equip., Inc.*, 90 F.R.D. 245, 247 (W.D. Okla. 1980) ("[T]he language of the rule as construed emphasizes that this criterion is not a numerousness test, but rather a determination of the *impracticability* of joinder."). Whether joinder would be impracticable is decided on a case-by-case basis. *See Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 331 (1980).

"A number of factors are relevant in determining whether joinder is impracticable, including the class size, the geographic diversity of class members, the relative ease or difficulty in identifying members of the class for joinder, the financial resources of class members, and the ability of class members to institute individual lawsuits." *Tommey v. Computer Sciences Corp.*, 2013 WL 1304186, at *3 (D. Kan. Mar. 27, 2013) (denying class certification because Plaintiffs did not show any of the factors required for a finding of numerosity). When potential class members are current or former employees, whose addresses can be identified from Panera's records, joinder of plaintiffs is not necessarily impracticable; this is true *even if the putative plaintiffs number in the hundreds* (which they do not). *See, e.g., Jaynes v. United States*, 69 Fed. Cl. 450, 454-55 (Fed. Cl. 2006) (finding lack of numerosity where the class was as large as 258 members).

Plaintiff ultimately fails to point to any *reason* that joinder of 58 other individuals – whose last known addresses can be readily identified – is impracticable. Consequently, Plaintiff has failed to make the requisite showing of numerosity.[21]

---

[21] If the Court were inclined to find that a class consisting of the JVGMs in the Charlotte market (where the three named Plaintiffs worked) might be appropriate, there were only five JVGMs in that market who

### 3.     *Plaintiffs Cannot Establish Rule 23(a)(4)'s Adequacy Requirement*

Last, because the predominance, superiority, commonality, and typicality requirements merge and overlap with the adequacy requirement, Panera does not repeat here Plaintiffs' inability to satisfy Rule 23's rigorous analysis. *See Dukes*, 131 S.Ct. at 2551 n.5; *Clayborne v. Omaha Public Power Dist.*, 211 F.R.D. 573, 590 (D. Neb. 2002); *Doll v. Chi. Title Ins. Co.*, 246 F.R.D. 683, 686 (D. Kan. 2007). However, the most significant difference regarding the adequacy requirement is that it also considers the qualifications of counsel. *Clayborne*, 211 F.R.D. at 590. Further, as Plaintiffs acknowledge, adequacy includes that the representative parties must adequately advance and protect the legal rights of absent class members. *See In re Gen. Am. Life Ins. Co. Sales Practices Litig.*, 357 F.3d 800, 805 (8th Cir. 2004).

Here, the purported class representatives' ability to adequately advance and protect the putative class members' interests is highly suspect, as all of them admit they have done nothing to investigate their claims or those of others. Plaintiff Boswell, for example, admits: (1) he only knows the number of potential class members and what their Compensation Plans show because his attorney told him; (2) he has only ever seen one other Compensation Plan beside his own – that of Plaintiff Lutton; (3) he has never looked at the various relevant state laws on breach of contract or fraud; and (4) he has done no independent investigation. [Ex. 1, Boswell Dep. at 119:17-22]. Lutton and Snyder similarly admit many of these points, including that they have done no investigation. [Ex. 2, Lutton Dep. at 29:23; Ex. 3, Snyder Dep. at 38:21-39:14]. Instead, they have relied on their counsel's purported investigation, although they do not know what their counsel did, if anything, to investigate their class claims. [Ex. 3, Snyder Dep. at 171:21-174:5].

---

received a capped JVGM Buyout. [Ex. 6, Calaway-Habeck Decl. at ¶ 10]. Numerosity, therefore, plainly would not exist.

Adequacy also involves consideration of whether the proposed class counsel will fairly and adequately represent the interests of the class and is dependent on a variety of factors, including counsel's experience. *See* Fed. R. Civ. P. 23(g). The proposed class counsel, Timothy Coffield, is a 2011 law school graduate whose father is friends with Plaintiff Lutton. [Ex. 2, Lutton Dep. at 50:21-25]. Plaintiff Boswell admits he does not know if Mr. Coffield has ever handled class action litigation. Mr. Coffield confirms he has not previously served as counsel in a class action. [*See* Ex. 1, Boswell Dep. at 120:24-125:2 and Doc. 55-18, Coffield Decl. at ¶ 4]. Some courts have expressed concern and denied finding adequacy where class counsel lacked sufficient class action experience., *see, e.g., Davis v. Astrue*, 250 F.R.D. 476, 490-91 (N.D. Cal. 2008); *Mansfield v. Air Line Pilots Ass'n Int'l*, 2007 WL 2048664, at *6 (N.D. Ill. July 9, 2007); *Fisher v. U.S.*, 69 Fed. Cl. 193, 200-01 (Fed. Cl. Ct. 2006), so Panera leaves to the Court's consideration whether Plaintiffs have met their burden of showing adequacy.

## V.    Conclusion

Class actions are limited to those exceptional cases in which liability and damages can be determined on a class-wide basis without the need for individualized inquiry or proof on the claims and defenses relevant to each putative class member. This is not such a case. The law and evidence demonstrate that the inherently personalized nature of the Plaintiffs' breach of contract and fraud claims make it highly unsuitable as a class action. Resolution would involve numerous mini-trials on a wide array of fact issues that would predominate over any common questions raised by Plaintiffs, whose own claims are atypical of the proposed class. For these and all of the reasons set forth above, this Court should deny Plaintiffs' motion for class certification.

Respectfully submitted,

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.

/s/ Justin M. Dean
Patrick F. Hulla, MO 41745
Justin M. Dean          48647MO
Jennifer K. Oldvader  60649MO
4520 Main Street, Suite 400
Kansas City, MO 64111
Telephone: 816.471.1301
Facsimile: 816.471.1303
patrick.hulla@ogletreedeakins.com
justin.dean@ogletreedeakins.com
jennifer.oldvader@ogletreedeakins.com

**ATTORNEYS FOR DEFENDANTS PANERA BREAD COMPANY AND PANERA, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2015, a copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which sent notification of such to the following:

Timothy Coffield
5374 Gordonsville Road
Keswick, VA 22947
Phone: (434) 218-3133
tc@coffieldlaw.com

**ATTORNEYS FOR PLAINTIFF**

/s/ Justin M. Dean
**ATTORNEY FOR DEFENDANTS**

21245939.1