# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| MARK BOSWELL, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:14-CV-01833-AGF |
| | ) | |
| PANERA BREAD COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on several related motions: Plaintiffs' motion

(Doc. No. 54) for class certification; Plaintiffs' motion (Doc. No. 85) to strike

Defendants' pre-certification offers of judgment; and Defendants' motion (Doc. No. 88)

to dismiss this action as moot in light of the offers of judgment, or, alternatively, to stay

this action pending a decision of the United States Supreme Court in *Campbell-Ewald*

*Co. v. Gomez*, No. 14-857. The Court heard oral argument on these motions on

September 18, 2015.[1] For the reasons set forth below, the Court will grant Plaintiffs'

---

[1] After the motions were briefed but before oral argument, the Court authorized
Plaintiffs to conduct an additional deposition of Panera's corporate representative,
pursuant to Federal Rule of Civil Procedure 30(b)(6), regarding two specific topics.
(Doc. No. 95.) Because the parties relied on portions of this testimony during oral
argument, the Court requested that Plaintiffs submit relevant excerpts of the deposition
transcript within seven days, and that Defendants submit any response seven days
thereafter. Instead of submitting relevant excerpts, Plaintiffs filed a supplemental
memorandum and attached the full transcript of the deposition. (Doc. No. 97.)
Defendants responded by asking the Court to disregard Plaintiffs' supplemental brief and
to disregard any portions of the deposition transcript outside the scope of the two
designated topics. (Doc. No. 99.) Accordingly, the Court has not considered Plaintiffs'
supplemental brief in resolving the pending motions and has limited its consideration of

motion for class certification and deny the remaining motions.

**BACKGROUND**

Plaintiffs Mark Boswell and David Lutton, both former Joint Venture General Managers ("JV GMs") for Defendants Panera, LLC and Panera Bread Company (collectively, "Panera"), filed this action on behalf of themselves and a putative class of other Panera JV GMs. Plaintiffs' complaint arises out of Panera's alleged failure to pay Plaintiffs the full sum owed to them under their employment agreements. As alleged in the complaint, Panera entered into a standard Employment Agreement with each JV GM, which expressly incorporated by reference a JV GM Compensation Plan (Employment Agreement and Compensation Plan, collectively, the "Agreement"), whereby JV GMs would manage the daily operations of company-owned cafes and receive a small annual salary. Each Agreement provided that the JV GM's employment by Panera was at-will, and that either the JV GM or Panera could terminate the Agreement at any time, with or without cause. However, each Agreement also provided that, at the end of the five years, the JV GM would receive a one-time buyout payment from Panera, the amount of which was to be determined in accordance with specific provisions set forth in the Agreement, and which turned on the profitability of the JV GM's cafe.

Each Agreement provided that "[i]n order to receive the JV GM Buyout payment," the JV GM must "(i) be an employee of Panera as of the date on which the JV GM Buyout is made, (ii) be performing the duties of the position currently entitled JV GM as of this date, and (iii) not be in breach of any provision of [his or her] Employment

the deposition transcript to the two topics authorized.

Agreement or any other obligation owed to Panera or its affiliates." (Doc. No. 56-60 at 10.)

Each Agreement also included the following clause:

This Plan is the final, complete and exclusive agreement between [the JV GM] and Panera with respect to any bonus, incentive plan or other compensation, except as specifically set forth in [the JV GM's] Employment Agreement with Panera, and supersedes and merges all prior discussions and other agreements between us. No modification or waiver shall be valid unless in writing signed by the party against whom the same is sought to be enforced.

*Id.* at 11-12.

Plaintiffs allege that without obtaining any written modifications or waivers signed by any JV GM, Panera modified the Agreements to include a cap on the buyout, withholding money to which Plaintiffs were entitled under the Agreements.

Plaintiffs assert putative class claims for breach of contract and fraud under Missouri law. Two of the three named Plaintiffs, Mark Boswell and David Lutton, also assert individual claims for fraud and unjust enrichment, based on the implementation of a new operating system (the "Panera 2.0" system) at these two Plaintiffs' cafes. Boswell and Lutton argue that Panera fraudulently induced them to adopt the Panera 2.0 system by falsely promising them a profit "credit" to offset the increased costs of the new system.

Plaintiffs filed their motion for class certification on April 13, 2015. Plaintiffs define the putative class as:

All natural persons who were employed as "Joint Venture General Managers" ("JV GM") with Panera, or any affiliate or subsidiary of Panera, and who received a capped JV GM Buyout payment from Panera at any

time during the period from October 29, 2009 through the date of trial (the "Class Period"). A "capped" JV GM Buyout payment is a JV GM Buyout payment made to an employee in an amount less than the total JV GM Buyout amount determined in accordance with Section 3(b) of the employee's Joint Venture General Manager Compensation Plan with Panera.

(Doc. No. 54 at 1-2.) Plaintiffs have already ascertained 61 individuals who fall within this class definition, and have attached their signed Agreements as exhibits to the class certification motion. (Doc. Nos. 56-1–56-61.) At oral argument, the parties noted that there were approximately 10 more JV GMs who may have received a buyout but for whom a written, executed Agreement had not yet been found. Plaintiffs conceded that to the extent an Agreement signed by these individuals could not be found through discovery, these individuals should be excluded from the class.

**Motion for Class Certification**

Plaintiffs argue that their classwide breach of contract and fraud claims satisfy all elements of Federal Rule of Civil Procedure 23(b)(3). Specifically, Plaintiffs argue that the class is readily ascertainable and consists of at least 61 current and former JV GMs, which is sufficiently numerous to make joinder impracticable.

Plaintiffs argue that commonality, typicality, and predominance exist because the primary class claim of breach of contract turns on the interpretation of a uniform contract, governed by Missouri law.[2] Plaintiffs contend that, although the Agreements contain the condition that the JV GMs must have complied with their own obligations under the

---

[2] Panera does not dispute that, although the class members reside in different states, each class member's Agreement contains an enforceable choice-of-law provision stating that Missouri law will govern any disputes arising thereunder.

Agreements in order to be eligible to receive a buyout, there is no dispute that all class members satisfied this condition because all class members received a buyout (albeit in an incorrect amount).

Plaintiffs also argue that common questions will predominate the resolution of their classwide fraud claim, which they assert is also governed by Missouri law.[3] Plaintiffs assert that the common issues predominating in this claim are the Agreements' uniform representations regarding the cap; whether Panera intended to comply with these representations at the time they were made; and whether the class members relied on these representations, which Plaintiffs argue is demonstrated by the fact that each class member signed the Agreements and began work.

Next, Plaintiffs assert that the class representatives and class counsel will adequately represent the class because no conflicts of interest exist and class counsel is experienced.

Finally, Plaintiffs argue that a class action is the superior mechanism by which to try these claims and that actual damages may be easily calculated from review of Panera's buyout reports already obtained by Plaintiffs. The buyout reports set forth, for each class member, the difference between the uncapped buyout, as it would have been calculated under the formula in the Agreements, and the capped buyout. Plaintiffs assert that these numbers represent the actual damages sought on the classwide contract and

---

[3]     Panera also does not dispute that Missouri law governs all putative class members' fraud claims.

fraud claims.[4]  However, Plaintiffs also request punitive damages on the fraud claim.

Panera responds that class certification is improper for several reasons.  First, Panera argues that the existence of an integration—or a no-oral-modification—clause in the Agreements does not ensure classwide resolution of Plaintiffs' breach of contract claims because Missouri law provides that such clauses do not invalidate subsequent oral agreements to the contrary.   Panera contends that several putative class members' Agreements were modified or novated by subsequent oral agreements with Panera, creating individual issues inappropriate for class resolution.[5]  Specifically, Panera asserts that putative class members in most or all markets other than Charlotte, North Carolina, where named Plaintiffs and two other putative class members worked, were orally informed of the cap via corporate presentations.  Panera also asserts that documentation regarding changes to the buyout program was also made available on Panera's intranet site.  (Doc. No. 68-6 at 3.)  Panera asserts that the fact that these putative class members did not object to the cap after learning about it and instead continued working for Panera demonstrates that the class members agreed to a capped buyout and intended to novate the Agreements.  Panera also asserts that because the named Plaintiffs did not attend such presentations, they are not typical of the rest of the class.

Second, Panera argues that Plaintiffs' breach of contract claims will require individual consideration of whether each class member satisfied all conditions precedent to the receipt of a buyout—namely, that as of the date of the buyout, each was:  (1) an

---

[4]     At oral argument, Plaintiffs acknowledged that, to the extent they prevail on both the contract and fraud claims, double recovery would not be permitted.

[5]     Panera concedes that none of these modifications was in writing.

employee of Panera, (2) performing the duties of the JV GM position, and (3) not in breach of any provision of his or her Agreement. Panera argues that named Plaintiff Boswell failed to satisfy these conditions because he was not performing the duties of a JV GM at the time he received a buyout. Specifically, Panera contends that, at the time of the buyout, Boswell agreed to take on the position of Market Training Manager, helping to implement the Panera 2.0 system, which involved different duties than the duties of a JV GM. Panera contends that, although it paid a buyout to Boswell, it did not and could not have waived the contractual conditions to that buyout, because Boswell's Agreement and all other Agreements include a non-waiver clause. Panera conceded at oral argument that it had no evidence of any putative class member, other than Boswell, who failed to satisfy the conditions listed above at the time of receiving a buyout.

Third, Panera argues that individualized evidence regarding representations to particular class members, and each class member's alleged reliance on such representations, will predominate Plaintiffs' classwide fraud claims.

Finally, Panera argues that the individual claims pleaded by named Plaintiffs Boswell and Lutton, based on oral representations about the implementation of the Panera 2.0 system, are intertwined with the class claims and render these Plaintiffs atypical of the proposed class.

With respect to Panera's assertion that some class members orally agreed to the buyout cap, Plaintiffs contend that such oral modifications are ineffective as a matter of law because they lacked consideration. Plaintiffs note that Panera's corporate representative testified that the only consideration for such oral modification or novation

was the JV GMs' continued at-will employment after learning of the cap, and that she was not aware of any additional benefit received by the JV GMs in consideration for the cap. Plaintiffs argue that continued at-will employment does not constitute consideration to support a modification or novation of an employment agreement under Missouri law.

Plaintiffs further argue that the purported oral agreements are unenforceable because they are not in writing, as required by the Agreements' integration clauses and the statute of frauds. Plaintiffs argue that, although their employment was at will and could have been terminated at any time, the buyouts were expressly payable only at the end of a five-year term. Therefore, Plaintiffs argue that the Agreements were not capable of being performed within one year, and as such, the Agreements and any modifications thereto are subject to the statute of frauds and must be in writing.

In any event, Plaintiffs argue that whether or not such oral agreements are enforceable is an issue common to the class and appropriate for classwide resolution. The named Plaintiffs also assert that they are not atypical of the class, regardless of whether they attended any corporate presentation regarding the buyout cap, because, as Panera itself argues, the named Plaintiffs also learned of the cap at shortly before receiving the buyout, did not object to the cap, and continued working as at-will employees. Therefore, Plaintiffs argue that they are in the same position as the rest of the class, and Panera's defense of oral modification or novation will fail or succeed on a classwide basis.

Regarding the alleged conditions precedent to a buyout payment, Plaintiffs reply that such conditions do not preclude class certification because they may be proved by

common evidence. Plaintiffs contend that the primary condition to receipt of a buyout was that the JV GMs delivered positive annual profits over the final two years of their contracts. Plaintiffs assert that this condition can be easily proved by reference to Panera's internal buyout reports, which show annual profits delivered by each class member. As for the conditions that the class members must have been employees of Panera, performing the duties of a JV GM, and not in breach of the Agreements on the date of the buyout, Plaintiffs assert that the fact that each class member received a buyout proves that each satisfied these conditions. Plaintiffs assert that Panera admitted that it considered these conditions when determining whether to make the buyouts, and that under established principles of contract law, by making the payments, Panera accepted the performance of the class members and discharged any further duties by them.

Plaintiffs also note that Panera has failed to offer proof of any class member's non-performance of these conditions except to assert that Boswell was not performing the duties of a JV GM at the time of the buyout. At oral argument, Plaintiffs argued that even if Boswell had agreed to take on new duties at the time of the buyout, those new duties were taken on at the request of Panera, and Panera cannot insist on a condition when it has hindered the performance of that condition.

Further, Plaintiffs argue that issues of individual reliance do not preclude class certification of their fraud claims because those claims are based on promises contained with the Agreements, and reliance is proved by each class member's signature on the Agreement and acceptance of employment as a JV GM. Plaintiffs assert that the predominant issue for the fraud claims will be proving that Panera had no intention to

comply with the representations in the Agreements when it entered into the Agreements. Plaintiffs contend that the answer to this question will be common to the class.

Finally, Plaintiffs assert that Boswell and Lutton's individual claims do not render them atypical because their interests align with the class: they seek to maximize recovery for Panera's alleged breach of contract and fraud.

**Offers of Relief**

On July 22, 2015, more than three months after Plaintiffs moved for class certification, Panera served upon each of the three named Plaintiffs an offer of judgment pursuant to Federal Rule of Civil Procedure 68, as well as settlement offers. In the offers, Panera proposed that judgment be granted to each named Plaintiff in an amount greater than the Plaintiffs' individual damages on the breach of contract claim,[6] plus prejudgment interest and costs. The offers to Boswell and Lutton included additional amounts accounting for all of the Panera 2.0 credits alleged to be due in their individual fraud and unjust enrichment claims. The offers did not propose relief for members of the putative class.

On July 27, 2015, the named Plaintiffs rejected the offers of judgment and also moved to strike them. Plaintiffs argue that the offers do not provide complete relief because Plaintiffs' fraud claims request an indeterminate amount of punitive damages. Plaintiffs also assert that the pre-certification offers constitute an improper attempt to undermine the class action and to manufacture a conflict of interest between the named

---

[6] Panera offered to pay each named Plaintiff $1,000 more than difference between their respective capped and uncapped buyouts.

Plaintiffs and the absent class members they seek to represent. Plaintiffs cite cases within this District and others holding that a motion to strike is the appropriate procedural mechanism for courts to exercise their authority to manage class actions in a manner consistent with the purposes of Federal Rule of Civil Procedure 23.

Panera responds that the offers would have provided Plaintiffs complete relief on their individual claims. Panera argues that the offers need not have included punitive damages or class relief, because punitive damages are not recoverable for fraud claims based entirely on the parties' contracts and because a class action has not yet been certified.

Further, Panera argues that, because the offers would have provided Plaintiffs complete relief, Plaintiffs no longer have a personal stake in this litigation, and this case is now moot. Therefore, Panera has moved to dismiss this putative class action for lack of subject matter jurisdiction.

Alternatively, Panera has moved to stay this action pending a decision of the United States Supreme Court in *Campbell-Ewald Co. v. Gomez*, No. 14-857, in which the Supreme Court is likely to resolve a circuit split regarding whether a case becomes moot when a plaintiff receives an offer of complete relief on his claim, and whether the answer to that question differs in a putative class action. *See* Petition for Writ of Certiorari, *Campbell–Ewald*, No. 14–859, 2015 WL 241891, at *i (filed Jan. 16, 2015); *Campbell– Ewald Co. v. Gomez*, 135 S. Ct. 2311, 2311 (2015) (granting petition).

Plaintiffs respond that their claims are not moot, both because an unaccepted offer of complete relief does not moot a claim and because, in any event, the offers did not

propose complete individual and class relief.  Therefore, Plaintiffs argue that Panera's motion to dismiss or stay should be denied.

At oral argument, Plaintiffs stated that if the Court were to deny Defendants' motion to dismiss or stay based on the offers of relief, Plaintiffs' motion to strike would be moot.  Plaintiffs asserted that the relief sought in their motion to strike is to avoid dismissal based on the offers of relief.  Plaintiffs do not seek to avoid the cost-shifting mechanism of Federal Rule of Civil Procedure 68, which provides that if a plaintiff rejects a defendant's offer of judgment and ultimately receives a judgment less favorable than the unaccepted offer, the plaintiff must pay the defendant's costs incurred after the offer was made.  In other words, Plaintiffs conceded that if they were ultimately to receive a judgment less favorable than the relief offered by Panera on their individual claims, the cost-shifting mechanism of the Rule 68 would still apply, and Plaintiffs may still be liable for Panera's costs.

## DISCUSSION

## Motion to Dismiss Based on Offers of Relief

The Court begins its analysis with Panera's argument that Plaintiffs' claims are moot in light of Panera's Rule 68 offers of judgment and settlement proposals, which Panera argues offered Plaintiffs complete relief on their individual claims.  *See, e.g.*, *Ark. AFL–CIO v. FCC*, 11 F.3d 1430, 1435 (8th Cir. 1993) (en banc ) ("Mootness . . . acts as a jurisdictional bar, and must be considered before reaching the merits of the case.").

Rule 68 allows a defendant in a civil action to "offer to allow judgment on specified terms, with the costs then accrued."  Fed. R. Civ. P. 68(a).  "If the plaintiff

accepts this offer, the clerk enters judgment in the amount stipulated and the lawsuit ends; if the plaintiff rejects the offer, the case proceeds to trial, but if the defendant ultimately prevails, the plaintiff is liable for the defendant's costs from the time of the offer until the end of the lawsuit." *White v. Nat'l Football League*, 756 F.3d 585, 595 (8th Cir. 2014); *see also* Fed. R. Civ. P. 68(a), (d).

The question posed here is whether Panera's offer of relief to the named Plaintiffs has the effect of rendering their claims moot. Article III of the Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2; *Flast v. Cohen*, 392 U.S. 83, 94 (1968). When a case becomes moot under Article III— that is, "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome"—a court must dismiss the case for lack of jurisdiction. *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)); *see also Ali v. Cangemi*, 419 F.3d 722, 723-24 (8th Cir. 2005) (en banc). The "heavy burden of proving mootness" falls on Panera. *Kennedy Bldg. Assocs. v. Viacom, Inc*., 375 F.3d 731, 745 (8th Cir. 2004) (citation and internal quotation marks omitted). A case is moot when the plaintiff receives all relief requested in the complaint and no longer has a "personal stake in the outcome of the lawsuit." *Spencer v. Kema*, 523 U.S. 1, 7 (1998) (citation and internal quotation marks omitted).

Although Panera asserts that the unaccepted offers moot Plaintiffs' claims, the threshold question is whether the offers proposed complete relief on Plaintiffs' individual claims, and the Court is not convinced that they did. In particular, the Court believes that

Plaintiffs have made a sufficient showing, at this stage, that they may be entitled to additional damages on their fraud claims.

"It is well settled in Missouri that a contractual promise made without the present intention to perform is a misrepresentation sufficient to demonstrate fraud." *Commonwealth Land Title Ins. Co. v. Miceli*, No. ED 101473, 2015 WL 1915242, at *11 (Mo. Ct. App. Apr. 28, 2015) (citation omitted); *see also Scott Salvage Yard, LLC v. Gifford*, 382 S.W.3d 134, 137 (Mo. Ct. App. 2012) (finding that while "the non-performance of a contractual promise during the pendency of a contract does not constitute fraud," allegations that the defendants knew at the time of conveying the promise that they were false, and that the defendants made such representations for the purpose of inducing the plaintiffs to enter the contract, stated a claim for fraudulent inducement). Such fraud claims are "submissible for punitive damages if the evidence and inferences are sufficient to allow a reasonable juror to conclude that it was highly probable that the defendant's conduct was outrageous because of evil motive or reckless indifference." *Scott Salvage Yard*, 382 S.W.3d at 139.

In their class claims for fraud, Plaintiffs allege that Panera made contractual promises knowing they were false and with no intention of performing them, for the purpose of inducing Plaintiffs to enter into the Agreements. The Court finds that these allegations are sufficient to state claims for fraud, and the Court cannot say, at this stage, that punitive damages on such claims are foreclosed. Therefore, the Court does not believe that Panera has offered Plaintiffs complete relief on their individual claims.

But even if Panera had offered Plaintiffs complete relief on their individual claims

for relief, the Court is not persuaded, under the current caselaw, that the claims should be found moot. Panera argues that the United States Supreme Court's decision *Genesis Healthcare Corp. v. Symczyk* compels dismissal of this action for mootness. The Court disagrees. In *Genesis*, the Supreme Court declined to resolve a circuit split over "whether an unaccepted offer that fully satisfies a plaintiff's claim is sufficient to render the claim moot" when a Fair Labor Standards Act class had not yet been certified. *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1528-29 (2013). The Court concluded that this issue had been waived by the parties. *Id.* at 1529. Accordingly, a majority of the Court merely assumed, without deciding, that the individual claim became moot after the Rule 68 offer of judgment. *Id.* at 1532. Based on this assumption, the Court held that the plaintiff had "no personal interest in representing putative, unnamed claimants, nor any other continuing interest that would preserve her suit from mootness." *Id.*

However, four dissenting justices in *Genesis*, led by Justice Kagan, declined to assume the mootness of the individual claim and, in addressing the offer's effect on the named plaintiff's claim, stated that "an unaccepted offer of judgment cannot moot a case[,] . . . however good the terms." *Id.* at 1533 (Kagan, J., dissenting). Justice Kagan noted that, generally, an unaccepted offer is a legal nullity and "[n]othing in Rule 68 alters that basic principle; to the contrary, that rule specifies that 'an unaccepted offer is considered withdrawn.'" *Id.* at 1534 (Kagan, J., dissenting) (citing Federal Rule of Civil Procedure 68). Justice Kagan cautioned the circuit court below to "rethink" its "mootness-by-unaccepted-offer theory" and noted to all other courts of appeal: "Don't try this at home." *Id.* (Kagan, J., dissenting).

Since *Genesis*, every circuit court to have considered the issue has held that an unaccepted offer of relief does *not* moot a named plaintiff's individual or putative class claims. *See Bais Yaakov of Spring Valley v. ACT, Inc.*, 798 F.3d 46, 46 (1st Cir. 2015); *Tanasi v. New Alliance Bank*, 786 F.3d 195, 199-200 (2d Cir. 2015); *Hooks v. Landmark Indus., Inc.*, 797 F.3d 309, 313-15 (5th Cir. 2015); *Chapman v. First Index, Inc.*, 796 F.3d 783, 786-87 (7th Cir. 2015); *Stein v. Buccaneers Ltd. P'ship*, 772 F.3d 698, 704-05 (11th Cir. 2014); *Diaz v. First Am. Home Buyers Prot. Corp.*, 732 F.3d 948, 954–55 (9th Cir. 2013).

Prior to *Genesis*, some circuits had held that an offer of complete relief generally moots an individual claim. *See, e.g.*, *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 574 (6th Cir. 2009); *Samsung v. Elecs. Co. v. Rambus, Inc.*, 523 F.3d 1374, 1381 (Fed. Cir. 2008); *Weiss v. Regal Collections*, 385 F.3d 337, 340 (3d Cir. 2004). But many of these circuits added the caveat that an offer of relief does <u>not</u> moot a claim brought by an individual on behalf of a class, as long as a class certification motion is timely filed. *See, e.g.*, *Carroll v. United Compucred Collections, Inc.*, 399 F.3d 620, 625 (6th Cir. 2005); *Weiss*, 385 F.3d at 348.[7]

---

[7]    The Seventh Circuit previously held, in a case cited by Panera, that an offer of relief moots a plaintiff's individual claim, and if made before the filing of a motion to certify a class action, also moots a putative class action. *Damasco v. Clearwire Corp.*, 662 F.3d 891, 896 (7th Cir. 2011). However, after *Genesis*, the Seventh Circuit overruled *Damasco* and similar decisions "to the extent they [held] that a defendant's offer of full compensation moots the litigation," and held instead that an unaccepted offer of relief does *not* moot any of the plaintiff's claims, whether asserted individually or on behalf of a class. *Chapman*, 796 F.3d at 787.

The Eighth Circuit has never held that an unaccepted offer of relief to the named plaintiff moots a putative class action. While the Eighth Circuit has not had the chance to consider this issue post-*Genesis*, it has previously held that "[j]udgment should be entered against a putative class representative on a defendant's offer of payment only where class certification has been properly denied and the offer satisfies the representative's entire demand for injuries and costs of the suit." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1539 (8th Cir. 1996). The majority of the district courts in the Eighth Circuit has followed this reasoning and found that an offer of relief does not moot a putative class action prior to certification. *See, e.g.*, *Liable v. Rockport Fin., LLC*, No. 4:15-CV-00306 ERW, 2015 WL 5227120, at *2 (E.D. Mo. Sept. 8, 2015) (collecting cases).

In *Anderson v. CNH U.S. Pension Plan*, 515 F.3d 823, 826 (8th Cir. 2008), a case emphasized by Panera, the Eighth Circuit noted that where the named plaintiffs had not merely been offered but had *received and accepted* full payment on their individual claims, it was "likely that all claims against [the defendants] were moot before the district court even ruled on class certification." But the *Anderson* court did not need to decide the issue, because class certification in that case was eventually denied, and thereafter, the named plaintiffs reached a voluntary settlement with the defendants, resulting in a stipulated judgment in the plaintiffs' favor. *Id.* at 827. In light of that judgment, entered after the denial of class certification, the Eighth Circuit held that the named plaintiffs no longer retained a "continuing interest in the litigation" and lacked standing to appeal the denial of class certification. *Id.*

17

In short, at this stage, the Court finds no binding or persuasive authority compelling dismissal of Plaintiffs' claims based on Panera's offers of relief. For this reason, and because the Court finds that Panera has not offered Plaintiffs complete relief on their individual claims, the Court will deny Panera's motion to dismiss.

**Motion to Stay**

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co*., 299 U.S. 248, 254 (1936). "How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* at 254-55. Thus, in considering a motion to stay, the Court weighs the potential prejudice or hardship to the parties, as well as the interest of judicial economy. *See SSDD, LLC v. Underwriters at Lloyd's, London*, No. 4:13-CV-258 CAS, 2013 WL 2420676, at *4 (E.D. Mo. June 3, 2013); *Asarco LLC v. NL Indus., Inc*., No. 4:11-CV-00864-JAR, 2013 WL 943614, at *3 (E.D. Mo. Mar. 11, 2013).

After carefully weighing the competing interests in this case, the Court declines to stay this case pending a decision by the Supreme Court in *Campbell–Ewald.* The Court finds that *Campbell–Ewald* is unlikely to affect this Court's jurisdiction over this case. Even if the Supreme Court were to hold that an unaccepted offer of complete relief on a named plaintiff's individual claim moots a putative class action, the decision would not alter this Court's jurisdiction because, as discussed above, Panera has not offered Plaintiffs complete relief on their individual claims. And the Court believes that

Plaintiffs would be unduly prejudiced by the delay, particularly because the motion for class certification has been fully briefed and argued, and is ripe for ruling.

## Motion to Strike

In light of Plaintiffs' statements at oral argument and the Court's denial of Panera's motion to dismiss or stay, the Court will deny as moot Plaintiffs' motion to strike the offers of judgment.

## Class Certification

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only. To come within the exception, a party seeking to maintain a class action must affirmatively demonstrate his compliance with Rule 23." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (citations omitted). Rule 23(a) sets out four threshold requirements for class certification – (1) sufficiently numerous parties, (2) common questions of law or fact, (3) typicality of claims or defenses, and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a). A class action plaintiff "must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast Corp.*, 133 S. Ct. at 1432. The provision at issue here is Rule 23(b)(3), which requires a court to find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In order to obtain class certification, Plaintiffs have "the burden of showing that the class should be

certified and that the requirements of Rule 23 are met." *Luiken v. Domino's Pizza*, *LLC*, 705 F.3d 370, 372 (8th Cir. 2013) (citation omitted).

A district court must conduct a "rigorous analysis to ensure that all requirements of Rule 23 have been met." *Smith v. ConocoPhillips Pipe Line Co.*, No. 14-2191, 2015 WL 5332450, at *4 (8th Cir. Sept. 15, 2015) (citation omitted). This analysis "will frequently entail overlap with the merits" of the parties' claims and defenses because "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Comcast,* 133 S. Ct. at 1432; *see also Elizabeth M. v. Montenez,* 458 F.3d 779, 786 (8th Cir. 2006). However, "[m]erits questions may be considered . . . only to the extent . . . that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1195 (2013).

a. *Class Definition*

As an initial matter, given Plaintiffs' concession at oral argument that the class should not include any JV GM for whom no written, signed Agreement can be found, the Court will revise the class definition as follows:

> All natural persons who were employed as "Joint Venture General Managers" ("JV GM") with Panera, or any affiliate or subsidiary of Panera; who signed a Joint Venture General Manager Compensation Plan, which can be located and produced in this litigation, and who received a capped JV GM Buyout payment from Panera at any time during the period from October 29, 2009 through the date of trial (the "Class Period"). A "capped" JV GM Buyout payment is a JV GM Buyout payment made to an employee in an amount less than the total JV GM Buyout amount determined in accordance with Section 3(b) of the employee's Joint Venture General Manager Compensation Plan with Panera.

b. *Numerosity*

A class action may only be maintained if the "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "To be impracticable does not mean that joinder must be impossible, but it does require a showing that it would be extremely difficult or inconvenient to join all members of the class." *Downing v. Riceland Foods, Inc.*, No. 4:13CV321 CDP, 2015 WL 1299229, at *3 (E.D. Mo. Mar. 19, 2015) (citation omitted). Factors relevant in determining whether joinder is feasible include the number of persons in the class, the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all class members. *Id.* "In general, a putative class with over forty members meets [the numerosity] requirement." *Ebert v. Gen. Mills, Inc.*, No. CIV. 13-3341 DWF/JJK, 2015 WL 867994, at *9 (D. Minn. Feb. 27, 2015)). Upon consideration of these factors, the Court concludes that the proposed class of at least 61 individuals, who are geographically disbursed throughout numerous states, satisfies the numerosity requirement.

c. *Commonality*

Rule 23(a)(2) requires a plaintiff to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). As the Supreme Court has explained, "any competently crafted class complaint literally raises common questions," but "[w]hat matters to class certification is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541,

2551 (2011) (emphasis in original) (citations omitted).  In other words, Plaintiffs' claim

must "depend upon a common contention . . . of such a nature that . . . determination of

its truth or falsity will resolve an issue that is central to the validity of each one of the

[individual plaintiff's] claims in one stroke."  *Id.*

However, "the mere presence of factual differences will not defeat the

maintenance of a class action if there are common questions of law uniting the class

members' claims." *Downing*, 2015 WL 1299229, at *3.  Rule 23(a)(2) "does not require

that every question of law or fact be common to every member of the class, and may be

satisfied, for example, where the question of law linking the class members is

substantially related to the resolution of the litigation even though the individuals are not

identically situated."  *Paxton v. Union Nat. Bank*, 688 F.2d 552, 561 (8th Cir. 1982)

(internal citations omitted).

As Plaintiffs correctly note, their prima facie class claims of breach of contract and

fraud involve the type of common questions—based on uniform representations in a form

contract—that numerous courts have held are particularly well suited for class treatment.

*See, e.g.*, *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 37 (E.D.N.Y. 2008)

(collecting cases from around country for proposition that "[a]n overwhelming number of

courts have held that claims arising out of form contracts are particularly appropriate for

class action treatment."); *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 39 (1st Cir.

2003) (affirming certification of breach of contract and unfair trade practices claims

where the claims were "based entirely on a standard form contract which the defendant

used with every member of the class"); *Bird Hotel Corp. v. Super 8 Motels, Inc.*, 246

F.R.D. 603, 605 (D.S.D. 2007) (granting class certification when the "liability question" of whether the defendant "breach[ed] the [form] franchise agreement by imposing an additional mandatory five percent fee" was identical for all class members).

The central liability questions in this case are whether Panera breached the Agreements by imposing a cap on the buyout, and whether Panera intended to comply with the Agreements' buyout provisions at the time of entering into the Agreements. These questions are capable of common resolution because every class member received a nearly identical Agreement containing an identical buyout provision, which Panera either did or did not intend to comply with at the time of signing; and every class member signed the Agreement, began working, and thereafter received a uniformly capped buyout.[8]

d. *Typicality*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality means that "other members of the class . . . have the same or similar grievances as the Plaintiffs," in that "they have been subjected to the same allegedly unlawful treatment." *Downing*, 2015 WL 1299229, at *4 (citations omitted). "The typicality and adequacy criteria serve as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected

---

[8] Indeed, even Panera's modification and novation defenses appear to raise common questions.

in their absence." *Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 821 (8th Cir. 2015) (citation omitted).

"[T]he fact that a named class representative elects to pursue additional claims in an individual capacity does not automatically give rise to a conflict." *Saucedo v. NW Mgmt. & Realty Servs., Inc*., 290 F.R.D. 671, 683 (E.D. Wash. 2013). Rather, the question is whether the "named representative's interest in pursuing individual claims undermines his or her incentive to vigorously prosecute the class-wide claims[.]" *Id.*

The Court has no reason to believe that named Plaintiffs Boswell and Lutton's interests in pursuing their individual fraud and unjust enrichment claims, based on alleged oral representations about the implementation of the Panera 2.0 system, will undermine their incentive to vigorously prosecute the class-wide claims. At most, Boswell and Lutton's success on their individual claims may merely affect the calculation of their damages. And Panera does not dispute that such damages may be easily calculated. Indeed, Panera suggests that it has already calculated the amounts claimed to be due on Boswell and Lutton's individual claims, because Panera purported to include these amounts in the offers of judgment.

Nor does the Court believe that the named Plaintiffs are atypical merely because they did not hear the same corporate presentation about the buyout cap that was presented in other markets. As discussed further below with respect to predominance, Panera's defenses based on oral modification or novation will no doubt be asserted against every class member, including the named Plaintiffs. And in all cases, these defenses will rest

on the fact that the class members continued working for Panera, without objection, after learning of the cap.

The named Plaintiffs, too, learned about the cap prior to receiving a buyout and continued working thereafter, without objection. Although the named Plaintiffs may have learned about the cap at a different time and in a different format than other class members, nothing in the caselaw cited by Panera or found by the Court suggests that, if the defense of modification or novation has merit in this case, it depends on the timing or format of the new agreement. *See Golan*, 788 F.3d at 821 (holding that although the named plaintiffs did not hear the full script of a prerecorded call, whereas other class members did, this did not render the named plaintiffs atypical or or inadequate class representatives because such factual differences were irrelevant to liability on the Telephone Consumer Protection Act claims).

Finally, Panera's defense regarding Boswell's alleged failure to perform the conditions precedent to a buyout does not render Boswell atypical. At oral argument, Panera asserted that its only evidence that Boswell had failed to perform the conditions was that Boswell had taken on new duties at the time of the buyout, apparently due to a transfer in position by Panera. At this stage, the record suggests that Panera caused or at least contributed to Boswell's transfer of duties. There is, therefore, a substantial question whether Panera can rely on the condition to defeat liability. *See Hills v. Blanchard*, 433 S.W.2d 276, 279 (Mo. 1968) ("[W]here [a party] prevents, hinders, or renders impossible, the fulfillment of a condition precedent or its performance by the adverse party, or is himself the cause of failure to perform the condition, he cannot rely

on such condition to defeat his liability.").   The Court does not find that such a questionable defense against Boswell renders him atypical.  Nor would proof of such defense unduly detract from the class claims.  *See Cross v. 21st Century Holding Co.,* No. 00–CV–4333, 2004 WL 307306, at *3 (S.D.N.Y. Feb. 18, 2004) (rejecting a challenge to typicality based on a possible unique defense where that defense was "speculative" and defendants failed to demonstrate that the "potential defense, if available, will divert attention from the prevailing, common issues").  Thus, the Court finds that typicality is satisfied.

e. *Adequacy*

The adequacy requirement of Rule 23(a)(4) focuses on "whether: (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel."  *Paxton*, 688 F.2d at 562-63.

As discussed above, the Court finds that the named Plaintiffs share the class' interest in procuring relief in the breach of contract and fraud claims, and there is no indication that their interests in procuring additional relief on their individual claims will be at the expense of other class members or will be otherwise antagonistic to the class' interest.  Moreover, the named Plaintiffs have shown a willingness to vigorously prosecute the interests of the class through qualified class counsel.[9]  Therefore, the Court finds that Plaintiffs have satisfied the adequacy requirement.

---

[9]     Although in its opposition brief, Panera questioned the experience of Plaintiffs' former counsel, Plaintiffs have now retained lead counsel with extensive class action

f.  *Predominance*

Rule 23(b)(3) "permits certification only if the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members." *Comcast*, 133 S. Ct. at 1430. "The predominance inquiry requires an analysis of whether a prima facie showing of liability can be proved by common evidence or whether this showing varies from member to member." *Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773, 778 (8th Cir. 2013).

But Rule 23(b)(3) "does *not* require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof." *Amgen*, 133 S. Ct. at 1196. "What the rule does require is that common questions *predominate* over any questions affecting only individual class members." *Id.* (quoting Fed. Rule Civ. Proc. 23(b)(3)).

As discussed above, Plaintiffs' class claims for breach of contract and fraud may be proved by common evidence regarding the parties' form contract and Panera's intent and actions with respect thereto. Although Panera has asserted that its various defenses or arguments against liability raise individual issues, the Court concludes that such individual issues, if any, will not predominate over the common issues discussed above and therefore will not defeat class certification.

First, the Court does not believe that Panera's defense of contract modification or novation will raise individual issues that predominate in this case. The Court notes that

---

experience. There is no evidence that Plaintiffs' new counsel is unqualified to represent the class.

there is support for Plaintiffs' assertion that continued-at will employment is not valid consideration to create an enforceable modified or novated contract under Missouri law.[10]

*Baker v. Bristol Care, Inc*., 450 S.W.3d 770, 775 (Mo. 2014) ("While the federal courts have reached a different result, this Court rejects that approach and, instead . . . hold[s] that continued at-will employment is not valid consideration to create an enforceable contract."); *Morrow v. Hallmark cards, Inc.*, 273 S.W.3d 15, 25-28 (Mo. Ct. App. 2008) (holding that continued at-will employment does not constitute consideration under Missouri's general contract principles, but distinguishing covenants not to compete, which are not subject to ordinary rules of contractual construction and for which continued employment—or more precisely, continued access to protectable employer assets—may be valid consideration).

However, the Court need not resolve this issue—or the issue of whether the statute of frauds applies—at this stage, because even if Panera's modification and novation defenses have merit, they may be resolved by common evidence. Panera contends that

---

[10]     Panera appears to be correct that, under Missouri law, "'no oral modification' clauses have no preclusive effect when the parties engage in modification by valid contractual formalities." *Jennings v. SSM Health Care St. Louis*, 355 S.W.3d 526, 535 (Mo. Ct. App. 2011).  But as Panera admits, a modification or novation is still subject to the same requirements as any other valid contract, including mutual assent and consideration. *Best Buy Builders, Inc. v. Siegel*, 409 S.W.3d 562, 565 (Mo. Ct. App. 2013) ("When the parties modify an existing contract they are making a new contract; it is only enforceable if there is mutual assent and consideration."); *Wilson v. Midstate Indus., Inc*., 777 S.W.2d 310, 312 (Mo. Ct. App. 1989) ("[A] novation is subject to the same requirements as any other valid contract, including those of assent, consideration and intention to contract."); *see also Spencer v. Millstone Marina, Inc.*, 890 S.W.2d 673, 676 (Mo. Ct. App. 1994) (noting that a party asserting novation must also prove the agreement of all parties to a new contract and the extinguishment of the old contract).

these defenses are based primarily on corporate presentations and other oral representations Panera made to most or all putative class members, informing them of the cap. Neither party has provided evidence that any putative class members were uninformed of the cap or objected to the cap before receiving a buyout. And in all cases, the only consideration for—and evidence of intent of—the class members' agreement to the cap, was the fact that the class members continued to work for Panera, without objection, after learning of the cap. Whether this evidence is sufficient to demonstrate modification or novation of the Agreements will be an issue common to the class.

The only differences among putative class members with respect to the modification or novation defense, according to Panera, is when each class member learned of the cap and what exactly each was told. But Panera has not offered authority suggesting that these differences affect the merits of its defenses. Rather, if Panera succeeds in proving that an Agreement could be modified or novated by Panera's oral representation that a cap would be imposed, and by the JV GM's continued at-will employment thereafter, Panera will prevail on the contract claims with respect to the class as a whole.

Second, the Court does not believe that individual issues relating to the class members' performance of conditions precedent will predominate. At oral argument, Panera asserted that it had no evidence of any putative class member other than Boswell who failed to satisfy the conditions precedent to receiving a buyout. As discussed above, this defense appears to be unsound, and in any event, will not predominate the litigation. *See Smilow*, 323 F.3d at 39 ("Even in the unlikely event that individual waiver

determinations prove necessary, the proposed class may still satisfy the predominance requirement. Courts traditionally have been reluctant to deny class action status under Rule 23(b)(3) simply because affirmative defenses may be available against individual members."). Moreover, the other named class representatives are not subject to this defense.

Finally, there is no indication that individual issues of reliance regarding Plaintiffs' classwide fraud claims will predominate. Although Panera correctly notes that individual issues render many fraud claims unsuitable for class treatment, the same is not true for fraud claims based on uniform misrepresentations, like this one. For fraud claims based on uniform promises in a form contract, reliance may be shown by common circumstantial evidence, such as the fact that the class members signed the Agreements and accepted employment. *Carpenter v. Chrysler Corp.*, 853 S.W.2d 346, 355 (Mo. Ct. App. 1993) ("[W]hile the plaintiff who complains of the defendant's fraud must show that the false representations made to him by the defendant induced him to act to his prejudice, the fact of his reliance upon such false representations . . . may be inferred from all the facts and circumstances in the case.").

For this reason, several courts have held that common questions predominate in claims based on uniform misrepresentations in a form contract. *See In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118-20 (2d Cir. 2013) (noting that "fraud claims based on uniform misrepresentations to all members of a class are appropriate subjects for class certification" and "while each plaintiff must prove reliance, he or she may do so through common evidence (that is, through legitimate inferences based on the

nature of the alleged misrepresentations at issue)"); *City of Farmington Hills Employees Ret. Sys. v. Wells Fargo Bank, N.A.*, 281 F.R.D. 347, 356 (D. Minn. 2012) ("Because each member of the putative class signed an SLA containing the alleged misrepresentation and because Plaintiff can rely upon direct and circumstantial evidence to prove reliance on a class-wide basis, common questions predominate over questions affecting individual class members."); *Glen v. Fairway Indep.Mortg. Corp.*, 265 F.R.D. 474, 480 (E.D. Mo. 2010) (certifying a statutory consumer protection claim based on an alleged false promise in form contract because the "uniform promise that forms the basis of plaintiffs' class-wide claim does not depend on a transaction-specific inquiry, but instead may be proven by evidence common to the class"); *but cf. In re St. Jude Medical, Inc.*, 522 F.3d 836, 838-40 (8th Cir. 2008) (concluding that, in light of the lack of consistency in what alleged misrepresentations were communicated and how they were communicated, individual issues as to causation and reliance would predominate). For similar reasons, the Court believes that common questions predominate in Plaintiffs' classwide fraud claims.

That Plaintiffs seek punitive damages on the fraud claims does not defeat predominance because the punitive damages claim hinges on Panera's motive in entering the Agreements, which is determinable on a classwide basis. *See Barfield v. Sho-Me Power Elec. Co-op.*, No. 11-CV-04321-NKL, 2013 WL 3872181, at *9 (W.D. Mo. July 25, 2013) ("[A]lthough Plaintiffs are requesting punitive damages, this claim hinges on Defendants' knowing violation of the easements, rather than any specific incidents arising out of the installation of the cable. Defendants' knowledge is determinable on a

class-wide basis and does not require evidence of Defendants' interaction with individual class members.").  Thus, Plaintiffs have shown that common issues will predominate.

g. *Superiority*

The second inquiry under Rule 23(b)(3) requires courts to determine whether a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy," considering:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

After considering these factors, the Court believes that the class action mechanism is a superior method of resolving Plaintiffs' claims.  There is no evidence of other litigation having been commenced against Panera regarding these issues, or that class members have an interest in bringing individual actions in the future.  The parties do not dispute that Plaintiffs' claims require application of Missouri law, making this Court an appropriate forum.  And the Court does not have concerns about the manageability of the class action.

In short, Plaintiffs have met their burden of proving that the prerequisites for class certification have been satisfied.

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss or, alternatively, to stay this action is **DENIED**.  (Doc. No. 88.)

**IT IS FURTHER ORDERED** that Plaintiffs' motion to strike Defendants' pre-certification offers of judgment is **DENIED as moot**.  (Doc. No. 85.)

**IT IS FURTHER ORDERED** that Plaintiffs' motion for class certification is **GRANTED**.  (Doc. No. 54.)

**IT IS FURTHER ORDERED** that Plaintiffs Mark Boswell, David Lutton, and Vickie Snyder are designated as representatives of the class.

**IT IS FURTHER ORDERED** that Dennis Egan and Bert Braud, of The Popham Law Firm, P.C., are designated as class counsel.

**IT IS FURTHER ORDERED** that the parties shall confer and attempt to reach agreement with respect to a proposed form of class notice.  Within **14 days** from the date of this Order, the parties shall file a proposed notice, reflecting issues—if any—on which they are unable to reach agreement.


_Audrey G. Fleissig_
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE


Dated this 23rd day of October, 2015.