THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
ST. LOUIS DIVISION

| | | |
|---|---|---|
| **MARK BOSWELL, DAVID LUTTON,** **and VICKIE SNYDER,** individually, and on behalf of all others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **Case No. 4:14-CV-01833-AGF** |
| | ) | |
| **PANERA BREAD COMPANY** and **PANERA, LLC,** | ) ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR**
<u>**MOTION FOR SUMMARY JUDGMENT**</u>

Patrick F. Hulla        MO 41745
Justin M. Dean         MO 48647
Jennifer K. Oldvader  MO 60649
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
4520 Main Street, Suite 400
Kansas City, MO 64111
Telephone: 816.471.1301
Facsimile: 816.471.1303
patrick.hulla@ogletreedeakins.com
justin.dean@ogletreedeakins.com
jennifer.oldvader@ogletreedeakins.com

**ATTORNEYS FOR DEFENDANTS**
**PANERA BREAD COMPANY AND**
**PANERA, LLC**

# TABLE OF CONTENTS

Table Of Authorities ................................................................................................ II

I.      BACKGROUND. ...................................................................................... 2

        A.      The JVGM Program............................................................... 2

        B.      Changes in the JVGM Program. ........................................... 3

        C.      Plaintiff Boswell's and Plaintiff Lutton's Individual Claims. ........................ 4

II.     SUMMARY JUDGMENT STANDARD. ................................................ 5

III.    ARGUMENT. .......................................................................................... 6

        A.      There is No Independent Tort By Panera, and Thus, Plaintiffs'
                Class-Based Fraud Claim Fails as a Matter of Law ........................ 6

                1.      There Was No Actionable Representation of Fact. ............................ 6

                2.      There Was No Fraud in the Inducement. ........................ 8

                3.      There Was No Right to Rely on Any Promise In the
                        Agreements. ........................................................... 9

        B.      As a Matter of Law, Plaintiffs Cannot Recover Punitive
                Damages....................................................................... 11

                1.      There is No Independent Tort Justifying a Punitive
                        Damages Award................................................. 11

                2.      Plaintiffs and the Class Members Contractually Waived
                        Their Right to Punitive Damages.......................... 12

        C.      Plaintiffs' Breach of Contract Claim (Count I) Fails as a Matter of
                Law Because the Agreements Were Properly Novated. ................ 13

        D.      Plaintiffs' Breach of Contract Claim (Count I) Fails as a Matter of
                Law Against Defendant Panera Bread Company Due to Lack of
                Privity...................................................................... 18

        E.      Plaintiff Boswell and Lutton's *Individual* Fraud Claims Similarly
                Fail Because No False Representations of Fact Were Made to
                Them, Nor Was There Any Reliance or Right to Rely................. 19

        F.      Plaintiffs Boswell and Lutton's Unjust Enrichment Claim Also
                Fails Because They Cannot Show Panera Was Unjustly Enriched
                and Their Buyout Amount Is Controlled By Contract................. 21

IV.     CONCLUSION................................................................... 22

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alack v. Vic Tanny Intern. Of Mo., Inc.*,
   923 S.W.3d 330 (Mo. banc 1996) ........................................................................13

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ..............................................................................................5

*Arnold v. Erkmann*,
   934 S.W.2d 621 (Mo. App. 1996) .........................................................................9

*Carter v. Firestone*,
   2006 WL 1153808 (E.D.Mo. Apr. 28, 2006) .......................................................16

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ..............................................................................................5

*Chariton Vet Supply, Inc. v. Moberly Motor Co.*,
   2009 WL 1011500 (E.D.Mo. Apr. 15, 2009) .......................................................11

*Collegiate Enterprises v. Otis Elevator Co.*,
   650 F.Supp. 116 (E.D. Mo. 1986) ........................................................................18

*Computer Sales Int'l, Inc. v. Collins*,
   723 S.W.2d 450 (Mo. App. 1986) ...................................................................16, 17

*Crain v. Bd. of Police Comm'rs.*,
   920 F.2d 1402 (8th Cir. 1990) ..............................................................................5

*Ditto, Inc. v. Davids*,
   2014 WL 5840728 (Mo. Ct. App. 2014) ..............................................................12

*Doss v. EPIC Healthcare Mgt. Co.*,
   901 S.W.2d 216 (Mo. Ct. App. 1995)..............................................................13, 17

*Dunkin' Donuts Franchising LLC v. Sai Food & Hospitality, LLC*,
   2013 WL 1092866 (E.D. Mo. March 15, 2013) ...................................................12

*Easy Returns Midwest, Inc. v. Schulz*,
   964 S.W.2d 450 (Mo. App. 1998) .........................................................................16

*Fenton v. Exec. Int'l Inn, Inc.*,
   740 S.W.2d 338 (Mo. Ct. App. 1987) ....................................................................7

*Franklin v. Pinnacle Entertainment, Inc.*,
   1 F.Supp.3d 979 (E.D.Mo. 2014)...........................................................................9

*Fritts v. Cloud Oak Flooring*,
    478 S.W.2d 8 (Mo. Ct. App. 1972)........................................................13

*Graves v. Berkowitz*,
    15 S.W.3d 59 (Mo.App. W.D.2000)......................................................21

*Grosser v. Kandel-Iken Builders, Inc.*,
    647 S.W.2d 911 (Mo. App. 1983) ...................................................19, 20

*Hertz Corp. v. RAKS Hospitality, Inc.*,
    196 S.W.3d 536 (Mo.App. E.D.2006) ..................................................21

*Howard v. Turnbull*,
    316 S.W.3d 431 (Mo. Ct. App. W.D. 2010) ........................................22

*Jennings v. SSM Health Care St. Louis*,
    355 S.W.3d 526 (Mo. Ct. App. 2011) ..................................................13

*Johnson ex rel. Johnson v. JF Enter.*,
    LLC, 400 S.W.3d (Mo. banc 2013) .......................................................12

*JumboSack Corp. v. Buyck*,
    407 S.W.3d 51 (Mo. App. E.D. 2013) ..................................................16

*Ketcherside v. McLane*,
    118 S.W.3d 631 (Mo. Ct. App. 2003) ..................................................15

*Krenik v. Cnty. of Le Sueur*,
    47 F.3d 953 (8th Cir. 1995) ....................................................................5

*Long v. Huffman*,
    557 S.W.2d 911 (Mo. Ct. App. 1977)...................................................18

*Malan Realty Investors, Inc. v. Harris*,
    953 S.W.2d 624 (Mo. 1997) ..................................................................12

*McHenry v. Claspill*,
    545 S.W.2d 690 (Mo. App. 1976) .........................................................15

*Medicine Shoppe Intern., Inc. v. Anick, Inc.*,
    No. 4:09-cv-277, 2010 WL 3055094 (E.D. Mo. Aug. 4, 2010) ...........10

*Mo. Sav. Ass'n v. Home Sav. Of Am.*,
    862 F.2d 1323 (8th Cir. 1988) ..............................................................12

*Moley v. Plaza Properties, Inc.*,
    549 S.W.2d 633 (Mo. App. 1977) .........................................................14

*N. Am. Sav. Bank v. Resolution Trust Corp.*,
    65 F.3d 111 (8th Cir. 1995) ..................................................................12

*Peterson v. Cont'l Boiler Works, Inc.*,
 783 S.W.2d 896 (Mo. banc 1990) ........................................................................11

*Ponze v. Guirl*,
 794 S.W.2d 699 (Mo. App. 1990) ........................................................................14

*Purcell Tire & Rubber Co. v. Exec. Beechcraft, Inc.*,
 59 S.W.3d 505 (Mo. 2001) ..................................................................................12

*Putman v. Unity Health System*
 348 F.3d 732 (8th Cir.2003) ...................................................................................8

*Renaissance Leasing, LLC v. Vermeer Mfg. Co.*,
 322 S.W.3d 112 (Mo. 2010) ...........................................................................6, 19

*Rolla Lumber Co. v. Evans*,
 482 S.W.2d 519 (Mo.App.1972) .........................................................................21

*Rufkahr Const. Co. v. Weber*,
 658 S.W.2d 489 (Mo. Ct. App. 1983) ..................................................................13

*Sanger v. Yellow Cab Co.*,
 486 S.W.2d 477 (Mo. banc. 1972) ......................................................................17

*Stark v. Sandberg, Phoenix & von Gontard, P.C.*,
 381 F.3d 793 (8th Cir. 2004) .........................................................................12, 13

*State ex rel. William Ranni Assocs.*,
 742 S.W.2d 134, 140 (Mo. banc 1987) .................................................................7

*Supermarket Merch. & Supply, Inc. v. Marschuetz*,
 196 S.W.3d 581 (Mo. Ct. App. 2006) ..................................................................18

*Thomas v. Corwin*,
 483 F.3d 516 (8th Cir. 2007) .................................................................................5

*Titan Constr. Co. v. Mark Twain Kansas City Bank*,
 887 S.W.2d 454 (Mo. Ct. App. 1994) ...............................................................7, 9

*U.S. v. Conservation Chemical Co.*,
 619 F. Supp. 162 (W.D. Mo. 1985) .......................................................................5

*Union Pacific R.R. Co. v. Reilly Indus.*,
 215 F.3d 830 (8th Cir. 2000) .................................................................................5

*Verni v. Cleveland Chiropractic College*,
 212 S.W.3d 150 (Mo. banc 2007) ..........................................................................6

*W. Crawford Smith, Inc. v. Watkins*,
 425 S.W.2d 276 (Mo. App. 1968) ..................................................................14, 15

iv

*Wages v. Young*,
   261 S.W.3d 711 (Mo. Ct. App. 2008) ..................................................................7, 8

*Weinstein v. KLT Telecom, Inc.*,
   225 S.W.3d 413 (Mo. banc 2007) ........................................................................17

*White v. Pruiett*,
   39 S.W.3d 857 (Mo.App. W.D.2001) ...................................................................21

*Williams v. Kansas City Pub. Serv. Co.*,
   294 S.W.2d 36 (Mo. 1956) ..................................................................................11

## Other Authorities

3A Corbin on Contracts § 763 ....................................................................................13

Fed. R. Civ. P. 56 ........................................................................................................11

Federal Rule of Civil Procedure 56(a) .........................................................................5

Although Plaintiffs have pled, and the Court has certified, class-based causes of actions for breach of contract and fraud, these causes of action are ultimately premised on identical allegations – *i.e.,* Panera, LLC ("Panera") entered into employment and compensation agreements with each named Plaintiff and class member, which Panera later breached. The undisputed evidence shows there is no independent conduct by Defendants sufficient to establish fraud under Missouri law. Indeed, the Named Plaintiffs admit they have no basis for their fraud claim other than the alleged breach of contract by Panera. And as Missouri courts have repeatedly held, the mere breach of a contract does not create an action for fraud. Thus, Plaintiffs' class-based fraud claim is just a reiteration of their breach of contract claim. Under Missouri law, the two claims merge and summary judgment is proper on the fraud claim. Relatedly, because there is no independent tort, and because Plaintiffs and the class members contractually waived them, punitive damages are unrecoverable as a matter of law. Consequently, the Court should enter summary judgment on Plaintiffs' class-based fraud claim (Count II of the Amended Complaint) *and* on any claim for punitive damages.

Summary judgment is also warranted on Plaintiffs' class-based breach of contract claim because, as a matter of law, the undisputed facts show the compensation plans were properly novated such that they were replaced by a new compensation plan that took effect in 2012. Plaintiffs do not allege, and cannot show, any breach of the novated agreements.  Accordingly, summary judgment should therefore be granted for Defendants on Count I of Plaintiffs' Amended Complaint. Additionally, the agreements are solely between the Plaintiffs and Defendant Panera, LLC.  Defendant Panera Bread Company ("PBC") is not a party to the agreements.  Count I therefore also fails a matter of law with respect to PBC, requiring summary judgment in its favor.

Finally, Plaintiffs Boswell and Lutton's individual fraud and unjust enrichment claims (Counts III and IV of the Amended Complaint) also fail as a matter of law, thus warranting summary judgment regarding those claims.

I.     **Background.**

A.     **The JVGM Program.**

Among other reasons, Panera created the Joint Venture General Manager ("JVGM") Program to recruit and retain the best bakery-cafe general managers and share its profit with those managers.[1] The program, including elements of JVGM compensation, periodically was modified due to changes in business conditions; often, the modifications benefitted the JVGMs.

The Named Plaintiffs and class members each worked for Panera, LLC as JVGMs, managed company-owned and operated Panera Bread® bakery-cafes, and participated in the JVGM Program.   The Named Plaintiffs all worked in the same geographic market in the Charlotte, North Carolina area, whereas the class members worked in a variety of markets across the country.

Between 2007 and the first half of 2010, each of the Named Plaintiffs and class members signed an Employment and Confidentiality Agreement ("Employment Agreement") and accompanying Compensation Plan ("Compensation Plan") (together, the "Agreements"). The Agreements provided that Plaintiffs were "at will" employees and, if certain conditions were met, they could earn a base salary and additional compensation referred to as "JVGM Payouts" and "JVGM Buyouts."   JVGMs were never guaranteed any minimum or specific JVGM Payout or Buyout because those bonuses were based on various assumptions and inputs that were subject to change.

---

[1] Defendant PBC did not employ or enter contracts with the Named Plaintiffs or class members.

Assuming specified conditions were met, including, among other things, the JVGMs were still employed as JVGMs, the JVGM Buyouts were payable following the end of a five-year period of employment. JVGM Payouts, in contrast, were made each month. Both JVGM Buyouts and JVGM Payouts were determined by specific formulae based largely on a "JVGM Store Profit" and a "JVGM Store Profit Hurdle."  In particular, to receive a Payout or Buyout, profits at a particular bakery-café had to exceed a "JVGM Store Profit Hurdle."  Notably, the Compensation Plans provided Panera with *sole discretion* to change the "JVGM Store Profit" calculation *and* the "JVGM Store Profit Hurdle" at any time (*e.g.*, an increase in the Profit Hurdle would decrease the JVGM Buyout amount).  Thus, there were no guaranteed JVGM Payouts or Buyouts, because both could be unilaterally changed by Panera with, or without, the Plaintiffs' consent or express agreement.

### B.    Changes in the JVGM Program.

In the latter part of 2010, Panera decided to make changes to the JVGM compensation program, including implementation of a $100,000 cap on JVGM Buyouts.  For a variety of reasons, including business conditions that changed over time, the JVGM compensation program was changed – *e.g.*, Panera implemented new national advertising programs and made changes to its products that were led to additional profits due to factors that were beyond the JVGMs' control.  Additionally, total JVGM compensation, in the aggregate, exceeded Panera's expectations, and Panera was paying out 75-100% of every additional, or "incremental," dollar earned as bonuses.

In the first quarter of 2011, a year before implementing any changes, presentations were made to JVGMs in various markets across the country regarding the impending changes. The changes were verbally communicated by each JVGM's Joint Venture Partner ("JVP") (*i.e.* supervisor) and/or Regional Vice President (*i.e.* the JVP's supervisor) and/or other Panera

executives.[2]  Documentation about the program changes, as well as subsequent updates, were made available to JVGMs on Panera's intranet site, and JVGMs were provided with monthly bonus calculations that showed how their Buyout was tracking against the cap. Because the prior Agreements – i.e., Agreements between 2007 and 2010 – had five-year terms (unless earlier terminated as allowed under the Agreements), JVGMs began receiving JVGM Buyouts as early as 2012. Before 2012, Panera continued to pay Buyouts in excess of $100,000, including Buyouts in excess of $100,000 to Plaintiffs Boswell and Lutton in 2009.  Aside from the three Named Plaintiffs from the Charlotte, North Carolina market, Panera has not received any complaints from any other JVGM about a capped JVGM Buyout.

### C.   Plaintiff Boswell's and Plaintiff Lutton's Individual Claims.

In 2013, Panera selected Plaintiffs Boswell's and Lutton's bakery-cafes, as well as other bakery-cafes in the Charlotte, North Carolina market, as locations that would first implement "Panera 2.0," a new operating system.  Boswell and Lutton contend Ron Shaich, Panera's CEO, told them in a meeting they "would be made whole" for the costs associated with implementing Panera 2.0. Although both Plaintiffs Boswell and Lutton admit (1) Panera had not yet determined what profit credits might be provided to JVGMs to offset Panera 2.0 costs at the time Mr. Shaich made the vague comment they attribute to him, (2) neither Panera, nor Plaintiffs Boswell and Lutton, knew the financial impact Panera 2.0 would have on their respective bakery-cafes, and (3) they do not know how much Panera allegedly owes them, they now complain they were not provided with 2.0 credits that purportedly would have increased their Payouts and, in turn, their Buyouts.

---

[2] There is no evidence the presentations were made in the Charlotte, North Carolina market where the three Named Plaintiffs worked.

## II.    Summary Judgment Standard.

The Supreme Court has concluded the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When deciding a summary judgment motion, courts must view the facts in the light most favorable to the non-moving party and resolve all doubts against the moving party. *See Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995); *U.S. v. Conservation Chemical Co.*, 619 F. Supp. 162, 179 (W.D. Mo. 1985).

If the moving party establishes there is no genuine dispute as to the material facts, "[m]ere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, [will be] insufficient to withstand a motion for summary judgment." *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007). Likewise, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the [fact finder] could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Purely legal issues are especially appropriate for resolution by summary judgment.  *See, e.g., Union Pacific R.R. Co. v. Reilly Indus*., 215 F.3d 830, 835 (8th Cir. 2000) (citing *Crain v. Bd. of Police Comm'rs.*, 920 F.2d 1402, 1405-06 (8th Cir. 1990)) ("where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate").

## III.   Argument.

### A.   There is No Independent Tort By Panera, and Thus, Plaintiffs' Class-Based Fraud Claim Fails as a Matter of Law.

Plaintiffs cannot show multiple elements critical to establishing their fraud claim. To state a fraud claim, Plaintiffs must show: (1) *a representation of fact*; (2) the falsity of the representation; (3) the materiality of the representation; (4) *knowledge by the speaker of the representation's falsity or ignorance by the speaker of its truth or falsity*; (5) an intention by the speaker that the representation be acted on by the hearer; (6) the hearer's ignorance of the truth or falsity of the representation; (7) reliance by the hearer on the representation; (8) *the right of the hearer to rely on the speaker's truthfulness*; and (9) injury to the hearer as a result of the hearer's reliance on the representation. *See Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112 (Mo. 2010). "A plaintiff's failure to establish *any one* of the essential elements of fraud is fatal to recovery." *Id.* (citing *Verni v. Cleveland Chiropractic College,* 212 S.W.3d 150, 154 (Mo. banc 2007)). Here, Plaintiffs cannot establish the first of these elements – that Panera made any representation *of fact* in their respective Agreements. But even if they could, they also cannot show the fourth and eighth elements, thus justifying summary judgment in Panera's favor.

### 1.   *There Was No Actionable Representation of Fact.*

Plaintiffs' class-based fraud claim (Count II of the Amended Complaint) is premised on nothing more than contractual *promises* made to them within their respective Agreements, *i.e.,* in five years, assuming all conditions precedent were met, Panera would make a JVGM Buyout payment to them in accordance with their Agreements. According to their own Amended Complaint and deposition testimony, none of the Named Plaintiffs can point to a single

*representation of fact* made to them about JVGM Buyouts by Panera. [SOFs 14-15][3] Instead, Plaintiffs admit (1) Panera made no representations to them about the terms of the Agreements; (2) Panera made no representations to them about what was intended by the Agreements; and (3) Panera did not provide advice or recommendations about the Agreements.  [*Id.*]

Unable to point to a misrepresentation of *fact* (because none was made), Plaintiffs' class-based fraud-in-the-inducement claim simply parrots their breach of contract allegations, *i.e.* Panera entered into an agreement with each of the Plaintiffs and, thereafter, breached the agreement. [Doc. 43 at ¶¶ 105-108 and SOFs 11-15, 36-40]  But it has long been the law that "the mere failure to perform a contract cannot serve as the basis of tort liability" under Missouri law. *State ex rel. William Ranni Assocs.*, 742 S.W.2d 134, 140 (Mo. banc 1987).

In *Wages v. Young,* 261 S.W.3d 711, 715-16 (Mo. Ct. App. 2008), the Missouri Court of Appeals dismissed the plaintiff's fraud claim as untimely when it was "essentially a restatement of [his] breach of contract claim." In that case, just as in this case, the fraudulent "representations" alleged by plaintiff were nothing more than the terms of the underlying contract.[4] As noted by the Court of Appeals, "'[t]he mere breach of a promise or failure to perform does not constitute a misrepresentation of fact, or create an action for fraud.'" *Id.* at 715. (*quoting Titan Constr. Co. v. Mark Twain Kansas City Bank,* 887 S.W.2d 454, 459 (Mo. Ct. App. 1994). *See also Fenton v. Exec. Int'l Inn, Inc.*, 740 S.W.2d 338 (Mo. Ct. App. 1987) ("At best, as pleaded, defendants' alleged statement was a promise, and the breach of a promise does not create an action for fraud."); *Titan Constr. Comp. v. Mark Twain Kansas City Bank*, 887

---

[3] SOFs are references to numbered statements contained in Defendants' Statement of Uncontroverted Material Facts in Support of Defendants' Motion for Summary Judgment, which is filed contemporaneously with this Memorandum.

[4] Plaintiffs admit in their own briefing that their fraud claim is based purely on Panera's alleged promises in the Compensation Plans.  [*See* Doc.55 at 23-24 (arguing Plaintiffs' fraud claim is "based on alleged misrepresentations . . . *in* Panera's . . . Compensation Plan . . .)]

S.W.2d 454 (W.D. Mo. 1994) ("The mere contention that Mark Twain 'broke promises' pursuant to an agreement did not support a separate claim for fraud.").

As in *Wages*, the Named Plaintiffs have not alleged, because they cannot allege, any "representations" made to them outside of the promises within the Agreements themselves. Instead, they simply allege Panera's breach constitutes an actionable misrepresentation of fact. But Missouri law is clear that a breach of a contractual promise is not a representation of fact necessary to state a fraud claim. *See Wages,* 261 S.W.3d at 715-16. Plaintiffs' fraud claim therefore fails as a matter of law.

> ## 2.  *There Was No Fraud in the Inducement.*

Even if contractual promises could serve as requisite representations of fact, Plaintiffs cannot show Panera knew its promises in the Agreements were false, or that it was ignorant of the truth or falsity, when they were drafted and signed – *i.e.* they cannot show fraud in the inducement.[5] Plaintiffs Boswell and Lutton both admit they merely speculate Panera knew, when the Parties mutually contracted, that its "representations" about future Buyouts were false. [SOFs 37-38] In other words, they have no *evidence* to support their claim that Panera did not intend to uphold its promises. Instead, it is undisputed, at the time the Agreements were executed, Panera intended to pay JVGMs their Buyouts as outlined in the Agreements, regardless of the amount.  [SOF 39]  Furthermore, the only evidence about Panera's decision to modify the Agreements and implement a cap on the Buyout payments comes from Panera; and that undisputed evidence shows the decision to implement a Buyout cap was not made until the latter

---

[5] Although far from clear in the Plaintiffs' own testimony about the basis for their claims, the Court has observed the Plaintiffs' class-based fraud claim centers on whether Panera knew its contractual promises were false and had no intention of performing them.  [*See* Doc. 104 at 14 and 23].  There is no such evidence in this case beyond Plaintiffs' speculation, which is insufficient to withstand summary judgment.  *See Putman v. Unity Health System* 348 F.3d 732, 733–34 (8th Cir.2003) (to survive a motion for summary judgment, the nonmoving party must "substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation. . .") (citation omitted).

part of 2010 – *i.e., years after* the Agreements were signed and after business conditions changed. [SOFs 11, 25-26] Additionally, it is undisputed Panera continued to make uncapped JVGM Buyouts, including to Boswell and Lutton, in 2009, *after* it began entering the Agreements at issue in this case. [SOFs 25, 36]  Thus, Panera had no knowledge any of its promises (or any other term) in the Agreements were was false, nor was it ignorant of the truth or falsity of any promise (or other terms) in the Agreements.  Instead, the evidence is clear – Panera intended to honor the Agreements as written when they were entered.

3.   <u>There Was No Right to Rely on Any Promise In the Agreements.</u>

Lastly, even if Plaintiffs could show *every* other required element of a fraud claim, which they cannot, Plaintiffs also cannot show a right to rely on any alleged promise of an uncapped Buyout.  Missouri courts consistently find that "to constitute fraud, the alleged misrepresentation must relate to a past or existing *fact*."  *Arnold v. Erkmann*, 934 S.W.2d 621, 626-27 (Mo. App. 1996) (citing *Titan Const. Co. v. Mark Twain Kansas City Bank*, 887 S.W.2d 454, 459 (Mo. App. 1994)) (emphasis supplied). A statement or representation about expectations or predictions is insufficient to establish fraud.  *Id*. at 627 (citations omitted).

Here, it is undisputed the Named Plaintiffs were at-will employees with no right or promise of employment for a definite period of time.  [SOFs 12-13]  It is further undisputed (1) Plaintiffs understood termination of their employment would eliminate any obligation to pay them a JVGM Buyout; (2) certain conditions had to be met for Plaintiffs to receive a JVGM Buyout; (3) the amount of a JVGM Buyout, if any, was determined by a formula, and the formula did not provide a specific, guaranteed JVGM Buyout amount; and (4) Panera had the unilateral right to modify the JVGM Store Profit Hurdle and the JVGM Store Profit, which would directly impact the specific amount of a JVGM Buyout (a fact which Plaintiffs also understood).  [SOFs 12-21]

9

Panera's "promise" in Section 3 of the Compensation Plan was nothing more than a representation about what *could* (not what *would*) happen in the future. As a matter of Missouri law, such "promises" are insufficient to establish actionable fraud. *See Arnold*, 934 S.W.2d at 627 (finding no fraud based on prediction of future success and profitability). *See also Franklin v. Pinnacle Entertainment, Inc.*, 1 F.Supp.3d 979 (E.D.Mo. 2014) (granting summary judgment on negligent misrepresentation claim where alleged reliance was based on a promise of future employment of an at-will employee). Accordingly, Plaintiffs cannot show any right to rely on the alleged "promises" in the Agreements and summary judgment in Panera's favor is therefore proper.

The undisputed facts show there is *no evidence* that Panera (1) made *any* misrepresentation of *fact* to Plaintiffs, (2) did not, at the time the Parties contracted, intend to comply with the Agreements, and (3) knew any of its "promises" were false. Moreover, Plaintiffs cannot show, as a legal matter, they had any right to rely on the Buyout "promise." Consequently, there is and was no actionable fraud.

Since Plaintiffs cannot show any independent tort by Panera, their claim can only sound in contract. And Missouri law is clear that "[t]he mere breach of a promise or failure to perform [a contract] does not create an action for fraud." *Medicine Shoppe Intern., Inc. v. Anick, Inc.*, No. 4:09-cv-277, 2010 WL 3055094 (E.D. Mo. Aug. 4, 2010) ("To determine the character of an action, that is, whether the action sounds in contract or in tort, it is necessary to ascertain the source of the duty claimed to be violated. Where a duty alleged to have been breached stems from a contract, the breach does not amount to a tort.") "The fact that acts constituting the breach are alleged as being fraudulently done does not change the situation." *Id.* Plaintiffs' fraud claim

therefore fails and the Court should grant summary judgment on Plaintiffs' class-based fraud claim (Count II).[6]

**B.**     **As a Matter of Law, Plaintiffs Cannot Recover Punitive Damages.**

*1.     There is No Independent Tort Justifying a Punitive Damages Award.*

Because Plaintiffs' fraud claim fails as a matter of law, there is no tort with respect to Plaintiffs' class-based claims. Without a tort, Plaintiffs cannot recover punitive damages.

With two exceptions, neither of which apply here, Missouri law is clear that punitive damages are not recoverable in a breach of contract action.  The first exception is when a breach amounts to an "independent, willful tort*." Chariton Vet Supply, Inc. v. Moberly Motor Co.*, 2009 WL 1011500, *5 (E.D.Mo. Apr. 15, 2009) (quoting *Williams v. Kansas City Pub. Serv. Co.*, 294 S.W.2d 36, 40 (Mo. 1956)).  *See also Peterson v. Cont'l Boiler Works, Inc.*, 783 S.W.2d 896, 902-03 (Mo. banc 1990) (punitive damages may not be recovered in breach of contract actions unless plaintiff can show the "breaching party's conduct, apart from an intentional breach of the contract, amounts to a separate, independent tort.").   Since there is no tort claim, the first exception does not apply.  The second exception is when the breach of contract is coupled with an alleged breach of fiduciary duty, which must be specifically pleaded.  *See id*.  Plaintiffs have not alleged, much less pleaded, a breach of fiduciary duty, thus the second exception does not apply.

Accordingly, because Plaintiffs' class-based claims are limited to an alleged breach of contract, punitive damages are not recoverable and the Court should grant summary judgment in Panera's favor regarding Plaintiffs' claim for punitive damages.[7]

---

[6] Notably, Plaintiffs have already argued the damages regarding their fraud and breach of contract claims are identical.  [*See* Doc. 55 at 25 (arguing that "the method of calculating damages is also uniform among the class" – *i.e.*, the Buyout amounts in excess of the cap as ascertained in Panera's records).]

2.    *Plaintiffs and the Class Members Contractually Waived Their Right to Punitive Damages.*

Even if the Court concludes Plaintiffs somehow have a remaining class-based tort claim supporting punitive damages, which they do not, Plaintiffs and the class members contractually waived their right to seek punitive damages.  The Agreements signed by the Plaintiffs and each of the class members all include an express provision waiving any right to recovery of punitive damages in any action directly, or indirectly, related to their employment.  [SOF 24][8]

Courts in Missouri, including this one, have concluded that provisions waiving punitive damages are valid and enforceable.  *See Dunkin' Donuts Franchising LLC v. Sai Food & Hospitality, LLC*, 2013 WL 1092866, *2 n.1 (E.D. Mo. March 15, 2013) (granting motion to strike jury demand and request for punitive damages based on contract controlled by Massachusetts law but noting also that the Court "would reach the same result under Missouri law regarding the enforceability of the waivers of a jury , punitive damages, and lost profits.") (citing *Purcell Tire & Rubber Co. v. Exec. Beechcraft, Inc.,* 59 S.W.3d 505, 510 (Mo. 2001) (enforcing contractual waiver of consequential damages); and *Malan Realty Investors, Inc. v. Harris,* 953 S.W.2d 624, 626–27 (Mo. 1997) (same as to jury waiver)).

Here, the punitive damage waiver in the Agreements is unambiguous and understandable *to the average person*.  The Plaintiffs and class members are management level business people

___

[7] Although Plaintiffs do not allege a separately enumerated claim for punitive damages, Fed. R. Civ. P. 56, on its face, allows a party to seek summary judgment on all, or part of, a claim.  Panera therefore seeks summary judgment regarding Plaintiffs' class-based claims seeking punitive damages.

[8] The fact that the punitive damage waiver is in the Employment Agreements signed by the class members rather than in the Compensation Plans is irrelevant. Missouri law dictates that when multiple documents relating to the same subject matter are executed at the same time, "the documents … [must] be construed together 'even in the absence of explicit incorporation.'" *See Ditto, Inc. v. Davids*, 2014 WL 5840728, at *8 (Mo. Ct. App. 2014) (quoting *Johnson ex rel. Johnson v. JF Enter.*, LLC, 400 S.W.3d, 763, 767 (Mo. banc 2013). *See also N. Am. Sav. Bank v. Resolution Trust Corp.*, 65 F.3d 111, 114-15 (8th Cir. 1995) (citing *Mo. Sav. Ass'n v. Home Sav. Of Am.*, 862 F.2d 1323, 1326 (8th Cir. 1988) (finding integration clause did not preclude separate document from being construed as part of the contract)). Here, the Employment Agreements directly reference the Compensation Plans, which were executed at the same time.  [*See* Docs. 43-1 - 43-3]

who engaged in arms-length transactions with Panera and had an opportunity to review, and obtain legal advice about, the Agreements.  Accordingly, there can be no allegation of duress or unfair bargaining position.  The punitive damage waivers are enforceable, and any claims for punitive damages should be dismissed.[9]

### C.   Plaintiffs' Breach of Contract Claim (Count I) Fails as a Matter of Law Because the Agreements Were Properly Novated.

The Named Plaintiffs' and class members' breach of contract claim entirely hinges on an ineffective integration clause in paragraph 5(d) of their Compensation Plans. [*See* Doc. 55 at 7]. "Missouri law is well-established that 'no oral modification' clauses [like the one in the Compensation Plans] *have no preclusive effect when the parties engage in modification by valid contractual formalities*." *Jennings v. SSM Health Care St. Louis*, 355 S.W.3d 526, 535 (Mo. Ct. App. 2011) (citing *Fritts v. Cloud Oak Flooring,* 478 S.W.2d 8, 14 (Mo. Ct. App. 1972)) (emphasis supplied).  Put differently, "[a]n express provision in a written contract that no rescission or variation shall be valid unless it too is in writing is ineffective to invalidate a subsequent oral agreement to the contrary." *Id.* (quoting 3A Corbin on Contracts § 763). S*ee also Doss v. EPIC Healthcare Mgt. Co.,* 901 S.W.2d 216, 221 (Mo. Ct. App. 1995); *Rufkahr Const. Co. v. Weber,* 658 S.W.2d 489, 498 (Mo. Ct. App. 1983).

Here, the undisputed evidence is that there was a subsequent, valid oral agreement between Panera and the Named Plaintiffs, as well as Panera and the class members, that novated the underlying Agreements.  More particularly, it is undisputed, in the first quarter of 2011,

---

[9] Panera anticipates Plaintiffs will cite to *Stark v. Sandberg, Phoenix & von Gontard, P.C.*, 381 F.3d 793, 800 (8th Cir. 2004), for the proposition that punitive damage waivers are unenforceable under Missouri law. But *Stark* is inapposite, and it relied on a Missouri Supreme Court opinion that pre-dates the decision in *Purcell Tire*, which this Court relied on in *Dunkin' Donuts*.  Specifically, the court's conclusion in *Stark* was based on *Alack v. Vic Tanny Intern. Of Mo., Inc.*, 923 S.W.3d 330, 339 (Mo. banc 1996), a case which only found that a release of *liability* for future intentional torts or gross negligence was unenforceable.  But *Alack* is not instructive because it did not address the enforceability of limits on *remedies* available for such acts.

presentations were given to JVGMs in Panera's various markets about changes to JVGM compensation.  In those presentations, it was communicated that starting in January 2012, JVGM Buyouts were to be capped at $100,000. [SOF 28]  These changes were verbally communicated to JVGMs by JVPs, Regional Vice Presidents, and/or other Panera executives.[10] [SOFs 29-30] Documentation about the changes was also made available to JVGMs on Panera's intranet site, and JVGMs were shown how they were tracking against the cap. [SOFs 29, 32]

Because the prior Compensation Plans used from 2007 to 2010 had five-year terms (unless earlier terminated as allowed in the Agreements), the class members began receiving JVGM Buyouts as early as 2012. [SOFs 17, 25, 33] Yet, Plaintiffs and the class members kept working and receiving compensation, bonuses, and other benefits of employment with Panera. [SOFs 1-4, 28-35]  Moreover, Panera received no complaints from any JVGM about any capped JVGM Buyout until Plaintiff Boswell raised a concern in 2014, shortly before receiving his Buyout. [SOF 34]  Additionally, at least two class members have confirmed they were made aware of the changes and believe they have now been paid everything they are owed by Panera. [SOF 35]  Finally, it is undisputed that all of the Named Plaintiffs and class members accepted the $100,000 Buyout payments without objection. [SOFs 33-34]  The undisputed evidence therefore shows that Panera and the class members, as well as Panera and the Named Plaintiffs, through their words and actions, assented to the changes to the Agreements, and thus effectively novated the Agreements so that the Buyouts were capped at $100,000.

---

[10] It is also undisputed that no such presentation was given in the Charlotte, North Carolina market where the Named Plaintiffs worked.  [SOF 30]  But similar to the other class members, each of them was made aware of the changes implemented to the JVGM compensation program and failed to raise any complaint until shortly before receiving their Buyout payments.  [SOFs 31, 34]  Notably, if the Court finds there is a question of fact about the novation because the Named Plaintiffs contend the imposition of the Buyout cap was not discussed with them, that is a question *only with respect to the Named Plaintiffs*, not the other class members, thus demonstrating dissimilarity sufficient to decertify the class because it is undisputed (1) that verbal presentations regarding the cap were given in all other markets, and (2) there is no evidence other class members were unaware of the change.

Under Missouri law, a novation is the substitution of a new contract or obligation for an old one that is thereby extinguished. *Moley v. Plaza Properties, Inc.,* 549 S.W.2d 633, 635 (Mo. App. 1977). The four elements necessary for a novation are: (1) a previous valid obligation; (2) agreement of all parties to a new contract; (3) extinguishment of an old contract; and (4) validity of a new contract. *Ponze v. Guirl*, 794 S.W.2d 699, 702 (Mo. App. 1990). The controlling element when determining if a novation has been accomplished is the intention of the parties. *W. Crawford Smith, Inc. v. Watkins*, 425 S.W.2d 276, 279 (Mo. App. 1968).  Proof of the parties' intent can be shown by direct evidence "*or by reasonable inference of the intent of the parties drawn from the facts and circumstances.*" *See McHenry v. Claspill,*  545 S.W.2d 690, 692 (Mo. App. 1976) (emphasis added). Notably, "[a]ssent to novation may also be proven circumstantially." *Id.* (citing *W. Crawford Smith,* 425 S.W.2d at 279).

Here, the elements of a novation are all plainly met.  First, Plaintiffs themselves claim, and therefore cannot dispute, the Agreements included valid obligations.  Elements two, three and four overlap, with the critical questions being (1) whether there was an intent by the class members and Panera to enter new contracts that replaced their prior agreements with regard to the maximum amount of the JVGM Buyout, and (2) whether the new agreements were valid.

As noted by the court in *McHenry*, the parties' intent can be shown by reasonable inferences drawn from the relevant facts and circumstances.  Here, the *undisputed* evidence shows that, by their actions (and inactions) – *i.e.* continuing to work and to receive the pay and benefits from their employment with Panera, failing to object, and accepting the capped Buyouts – Plaintiffs and the class members assented to the substitution of the new JVGM compensation plan for the initial Agreements.[11]

---

[11] Two of the class members have acknowledged the novation, confirming *via* signed Declarations, that they were paid everything they were owed by Panera.  [SOF 35]  Additionally, at least one other class member e-mailed Hank Simpson, a Panera Senior Vice President and JV Board member, asking (not

The remaining question then is whether the new compensation plan, including the $100,000 cap on JVGM Buyouts, was valid.  In Missouri, a contract requires: (1) competency of the parties to contract; (2) subject matter; (3) legal consideration; (4) mutuality of agreement; and (5) mutuality of obligation. *Ketcherside v. McLane,* 118 S.W.3d 631, 635 (Mo. Ct. App. 2003). There is no reasonable dispute about the first, second, fourth and fifth elements.  Plaintiffs, however, will no doubt contend (as they did at the class certification stage), there was insufficient consideration to support the novation, claiming their continued employment did not suffice.  But such contention has no merit.

Contrary to Plaintiffs' assertions, under Missouri law, continued employment has *routinely* been found to suffice as consideration. Outside the limited realm of unilaterally imposed arbitration agreements,[12] Missouri courts have routinely concluded continued employment, with its attendant benefits, *is sufficient consideration for a valid agreement.  See, e.g., JumboSack Corp. v. Buyck*, 407 S.W.3d 51, 55-56 (Mo. App. E.D. 2013) (discussing Missouri law on adequate consideration and finding, as a legal matter, that a non-compete agreement signed by an employee six months after starting employment was supported by adequate consideration in the form of continued employment).  *See also Carter v. Firestone*, 2006 WL 1153808, *3 (E.D.Mo. Apr. 28, 2006) ("Under Missouri law, continued employment can constitute consideration to support an agreement."); *Easy Returns Midwest, Inc. v. Schulz*, 964 S.W.2d 450, 454 (Mo. App. 1998) ("employee's continuance in employment with employer, when there is no obligation to remain, and employers' continuance of employment, where

demanding or asserting any entitlement) for more than $100,000.  [*See* Ex. 14 to Defendants' Statement of Uncontroverted Material Facts filed contemporaneously with this memorandum]

[12] Panera respectfully notes that both cases referenced by the Court on page 28 of its October 23, 2015 Memorandum and Order – *Baker v. Bristol Care, Inc. and Morrow v. Hallmark Cards, Inc.* – and the cases relied on therein, for the proposition that continued employment is not sufficient consideration, only addressed the validity of continued employment as consideration with respect to arbitration agreements. [Doc. 104 at 28 and cases cited therein]

continuance is not required, supplies adequate consideration for a noncompetition agreement"); and *Computer Sales Int'l, Inc. v. Collins*, 723 S.W.2d 450 (Mo. App. 1986) (finding that non-compete signed by at-will employee 14 months after the start of his employment was supported by adequate consideration in the form of the employee's continued employment for 2 ½ years thereafter).[13]

Importantly, if the Court agrees with Plaintiffs that continued employment is insufficient consideration for the novation, it necessarily would also have to find the Agreements are invalid due to a lack of consideration. Indeed, a simple review of the Agreements signed by the Plaintiffs reveals not one other promise made by the Plaintiffs for the benefit of Panera. [*See* SOFs 12, 23 and Docs. 43-1 - 43-3]  Instead, the *only* consideration provided by Plaintiffs in support of the Agreements was their continued, at-will employment.  [*Id.*][14]  Plaintiffs cannot "have their cake and eat it too" – *i.e.,* if continued employment is insufficient consideration for the novation, it was also insufficient regarding the underlying Agreements.

Missouri law, however, avoids this result because courts do not look at the *adequacy,* or quantity, of consideration, only whether it exists.  *See Sanger v. Yellow Cab Co.*, 486 S.W.2d 477, 480 (Mo. banc. 1972); *Doss v. EPIC Healthcare Mgmt. Co.*, 901 S.W.2d 216, 220 (Mo. App. 1995) (where the "requirement of consideration [is] present . . . the law does not concern itself with the adequacy of the consideration").  Moreover, a "general principle[] of contract law [is] that consideration must be measured at the time the parties enter into their contract."

---

[13] If the Court finds the *length* of continued employment impacts whether adequate consideration exists, then this injects a highly individualized issue incapable of class-wide resolution because some of the class members undisputedly were presented with the new compensation plan as early as early 2011 and thereafter remained employed for several years before receiving their Buyouts, whereas others, such as the Named Plaintiffs, say they were only informed of the change in their compensation plan much closer in time to the end of their employment.  [SOFs 28-32]

[14] Notably, Plaintiffs affirmatively plead their continued employment as a basis for proving the validity of the Agreements.  [*See* Doc. 43 at ¶¶ 44-47, 89-90]

17

*Weinstein v. KLT Telecom, Inc.*, 225 S.W.3d 413, 415-16 (Mo. banc. 2007).  Thus, if continued employment were sufficient consideration when the Plaintiffs signed the underlying Agreements, it was also sufficient consideration at the time of the novation.[15]

Accordingly, the novation was supported by *legal consideration,* and the new compensation plan, including the $100,000 Buyout cap, was valid.[16]  Because there is no alleged breach of the novated agreements, summary judgment should be granted in favor of Panera regarding Count I.

D.   **Plaintiffs' Breach of Contract Claim (Count I) Fails as a Matter of Law Against Defendant Panera Bread Company Due to Lack of Privity.**

For the reasons articulated above, Plaintiffs' class-based breach of contract claim fails as a matter of law against both Defendants.  As against PBC, however, Plaintiffs' claim also fails because there is no privity of contract between the Named Plaintiffs/class members and PBC.  The undisputed evidence shows the Plaintiffs were employed by, and entered into, agreements with Defendant Panera, LLC, not PBC.  [SOF 5]  Therefore, there is no viable breach of contract

---

[15] Extrapolated further, accepting the Plaintiffs' position the novations were invalid because they received nothing more than they already had – *i.e.* evaluating the adequacy of the consideration – would effectively render Missouri law allowing novation a nullity. Contracts of all types are commonly replaced with new contracts, often to the detriment of one party.  For example, it is not uncommon for banks to provide relief to customers regarding their mortgages when those customers fall on hard times and cannot pay their originally contracted-for obligation, as the bank would prefer to continue receiving some level of repayment on the mortgage than force the customer into a situation where he or she cannot pay at all. Similarly, when business conditions take a turn for the worse, it is not uncommon for employees to accept reductions in pay in exchange for keeping their jobs and avoiding layoffs.  In both such situations, a prior agreement is replaced with a new one, and the new one is to the detriment of one party who previously would have received more. Plaintiffs' position illogically suggests that all such novated agreements constitute actionable breaches of contracts.

[16] Although Plaintiffs do not now like the outcome of their modified deal with Panera, they cannot be heard to complain about it because they accepted the benefits of continued employment with Panera following the novation.  In similar circumstances, Missouri courts have ruled that such breach of contract claims fail.  *See Supermarket Merch. & Supply, Inc. v. Marschuetz*, 196 S.W.3d 581, 587 (Mo. Ct. App. 2006) (noting general rule that an employee cannot repudiate the unfavorable terms of a modified contract when he has claimed the benefit of continued employment under it); *Long v. Huffman*, 557 S.W.2d 911 (Mo. Ct. App. 1977) (party who was aware of alleged breach but made no objection and continued to work and be paid was estopped to contradict his consent).

claim against PBC, and summary judgment on Count I should be granted in PBC's favor. *See Collegiate Enterprises v. Otis Elevator Co.*, 650 F.Supp. 116 (E.D. Mo. 1986) (dismissing breach of contract claim under Missouri law due to lack of privity of contract between plaintiff and defendant).

> **E.** **Plaintiff Boswell and Lutton's *Individual* Fraud Claims Similarly Fail Because No False Representations of Fact Were Made to Them, Nor Was There Any Reliance or Right to Rely.**

Plaintiffs Boswell and Lutton also bring their own individual fraud claim (Count IV of the Amended Complaint) regarding Panera's implementation of Panera 2.0 in their respective bakery-cafes. Like their class-based fraud claim, their individual claim fails as a matter of law because the undisputed facts show there was no false statement of fact by Panera. Furthermore, they cannot show knowledge of falsity and reasonable reliance.

According to Plaintiffs Boswell and Lutton, implementation of Panera 2.0, a new operating system, impacted the profitability of their bakery-cafes; thus, the amounts of their Payouts were negatively impacted, which in turn affected their Buyouts. Plaintiffs allege Panera committed fraud when CEO Ron Shaich supposedly promised them they "would be made whole." [SOF 43]  But, Plaintiffs cannot show the following key elements of their fraud claim: (1) a representation of fact; (2) the falsity of that representation; (3) knowledge by the speaker of that falsity; and (4) reasonable reliance by the listener. *See, e.g., Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112 (Mo. 2010).

First and foremost, Ron Shaich's alleged statement that Plaintiffs "would be made whole" is not sufficiently concrete to support a fraud claim. "A representation which is so vague and abstract that the court would have to guess as to its precise nature will not support a cause of action for fraudulent misrepresentation, and cannot be the basis of a submissible case." *Grosser v. Kandel-Iken Builders, Inc.,* 647 S.W.2d 911, 915 (Mo. App. 1983) (internal citations omitted).

Here, even Boswell and Lutton disagree about the impact of Mr. Shaich's statement. Plaintiff Boswell claims he is owed additional Payouts and an increased Buyout, whereas Plaintiff Lutton only claims he is owed an increased Buyout.  [SOF 45]  Moreover, both Plaintiffs do not know how much they are allegedly owed.  [SOF 46]

Even if the Court were to find that Mr. Shaich's statement was reasonably specific to support their claim, Plaintiffs Boswell and Lutton also have no evidence Mr. Shaich knew his statement was false. To the contrary, the statement was *not* false, because both Plaintiffs admittedly received Panera 2.0 "credits" in their monthly Payouts, thereby increasing their Buyouts.  [SOF 48]  Moreover, at the time Mr. Shaich made the alleged comment, Plaintiffs Boswell and Lutton admit Panera had not yet determined what profit credits might be provided, and there was no "plan in place." [SOF 44]  Both Plaintiffs also admit Panera did not know how implementation of Panera 2.0 would financially impact their bakery-cafes. [*Id.*]  Despite these admissions, Boswell and Lutton now ask this Court to believe Mr. Shaich knew his vague comment was false when it was made. Such a conclusion is belied by the undisputed evidence.

Similarly, Plaintiffs Boswell and Lutton cannot show Panera intended for them to act on Mr. Shaich's statement, or that they reasonably relied on his statement. Indeed, as Panera JVGMs, both Plaintiffs were required to implement Panera 2.0 without regard to any promise to "make them whole." Additionally, Plaintiffs base their breach of contract claim on the notion that the amount of their JVGM Buyouts could not be altered without a signed modification of the Agreement. And yet, they now ask this Court to believe it was reasonable for them to rely on a vague, *verbal* statement that, according to their interpretation, would have increased their Buyouts.

In short, Plaintiffs have no evidence showing Mr. Shaich's vague comment was knowingly false, nor can they show reasonable reliance on the purported comment.  Accordingly,

20

the Court should grant summary judgment in Panera's favor regarding Plaintiffs' individual fraud claim (Count III).

### F. Plaintiffs Boswell and Lutton's Unjust Enrichment Claim Also Fails Because They Cannot Show Panera Was Unjustly Enriched and Their Buyout Amount Is Controlled By Contract.

Finally, Plaintiffs Boswell and Lutton bring claims for unjust enrichment regarding implementation of Panera 2.0 in their bakery-cafés. Those claims also fail as a matter of law.

Plaintiffs essentially argue Panera induced them to implement Panera 2.0 by promising they "would be made whole." Plaintiffs contend (1) they conferred a benefit on Panera by implementing Panera 2.0 and continuing their employment, and (2) it was unjust for Panera to retain this benefit without payment of increased Buyouts.  Importantly, though, Plaintiffs were otherwise obligated to follow Panera's direction, as their employer, by implementing Panera 2.0 (SOF 42), and they were paid salaries, bonuses and other benefits for their work.  There is nothing unjust about Panera's expectation that both Plaintiffs Boswell and Lutton perform their duties as Panera JVGMs.

To establish the elements of an unjust enrichment claim, Plaintiffs must show (1) they conferred a benefit on Panera; (2) Panera appreciated the benefit; and (3) Panera accepted and retained the benefit under inequitable and/or unjust circumstances. *Hertz Corp. v. RAKS Hospitality, Inc.*, 196 S.W.3d 536, 543 (Mo.App. E.D.2006); *Graves v. Berkowitz*, 15 S.W.3d 59, 61 (Mo.App. W.D.2000). Even if a benefit is "conferred" and "appreciated," no cause of action for unjust enrichment will lie when no injustice results from the defendant's retention of the benefit. *White v. Pruiett*, 39 S.W.3d 857, 863 (Mo.App. W.D.2001). Unjust retention of benefits only occurs when the benefits were "conferred (a) in misreliance on a right or duty; or (b) through dutiful intervention in another's affairs; or (c) under constraint." *Graves*, 15 S.W.3d

at 62 (*quoting Rolla Lumber Co. v. Evans*, 482 S.W.2d 519, 520 (Mo.App.1972) (internal quotation marks omitted).

Here, Plaintiffs cannot seriously argue Panera was unjustly enriched by accepting its employees' work. Indeed, when they implemented Panera 2.0 in their bakery-cafes, Plaintiffs were simply performing their required job duties. Accepting Plaintiffs' contentions would effectively require an employer to pay additional compensation any time it required additional work. Moreover, as reflected by Plaintiffs' breach of contract claim, their Buyouts were controlled by their Agreements (and the novated Agreements). "If [a] plaintiff has entered into an express contract for the very subject matter for which he seeks recovery, unjust enrichment does not apply, for the plaintiff's rights are limited to the express terms of the contract." *Howard v. Turnbull*, 316 S.W.3d 431, 436-37 (Mo. Ct. App. W.D. 2010).

Because Panera was not unjustly enriched by accepting the work of its own employees, and the amount of Plaintiffs' Buyouts were controlled by contract, Plaintiffs' unjust enrichment claim fails as a matter of law and summary judgment should be granted in Panera's favor regarding Count IV of the Amended Complaint.

## IV.     Conclusion

The undisputed evidence shows there is no actionable fraud by Defendants and, thus, no tort. Furthermore, because there is no independent tort, and because Plaintiffs and the class members contractually waived them, punitive damages are not recoverable as a matter of law. Additionally, the undisputed facts show the Agreements were properly novated, mandating summary judgment for Defendants regarding Plaintiffs' class-based breach of contract claim. Moreover, because Plaintiffs lack privity with Defendant Panera Bread Company, they have no viable breach of contract claim against it. And finally, the undisputed evidence shows that Plaintiffs Boswell's and Lutton's individual claims for fraud and unjust enrichment both fail as a

matter of law. For all the foregoing reasons, summary judgment should be granted in Defendants' favor on *all claims in this case*.

Respectfully submitted,

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.

/s/Justin M. Dean
Patrick F. Hulla, MO 41745
Justin M. Dean        48647MO
Jennifer K. Oldvader  60649MO
4520 Main Street, Suite 400
Kansas City, MO 64111
Telephone: 816.471.1301
Facsimile: 816.471.1303
patrick.hulla@ogletreedeakins.com
justin.dean@ogletreedeakins.com
jennifer.oldvader@ogletreedeakins.com

**ATTORNEYS FOR DEFENDANTS PANERA BREAD COMPANY AND PANERA, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2015, a copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which sent notification of such to the following:

Dennis E. Egan
Bert S. Braud
712 Broadway, Suite 100
Kansas City, MO 64105
degan@pophamlaw.com
bbraud@pophamlaw.com

**ATTORNEYS FOR PLAINTIFFS**

/s/Justin M. Dean
**ATTORNEY FOR DEFENDANTS**

23107352.1