**THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**ST. LOUIS DIVISION**

| | |
|---|---|
| **MARK BOSWELL, DAVID LUTTON**, **and VICKIE SNYDER,** individually, and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) **Case No. 4:14-CV-01833-AGF** ) |
| **PANERA BREAD COMPANY** and **PANERA, LLC**, | ) ) ) |
| Defendants. | ) |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR**
**SUMMARY JUDGMENT ON THEIR BREACH OF CONTRACT CLAIM**

Patrick F. Hulla        MO 41745
Justin M. Dean          48647MO
Jennifer K. Oldvader  60649MO
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
4520 Main Street, Suite 400
Kansas City, MO 64111
Telephone: 816.471.1301
Facsimile: 816.471.1303
patrick.hulla@ogletreedeakins.com
justin.dean@ogletreedeakins.com
jennifer.oldvader@ogletreedeakins.com

**ATTORNEYS FOR DEFENDANTS**
**PANERA BREAD COMPANY AND**
**PANERA, LLC**

## TABLE OF CONTENTS

Table Of Authorities ...........................................................................................II

I.      INTRODUCTION. .................................................................................1

II.     ARGUMENT. ........................................................................................3

      A.      Class Members Novated Their Contracts with Panera to Include a
              Capped Buyout Payment...................................................................3

            1.      Continued Employment is Sufficient Consideration. .........6

            2.      The Statute of Frauds Does Not Preclude the Oral
                   Novation............................................................................8

      B.      Disputed Fact Issues Regarding Fulfillment of the Contracts'
              Conditions Precedent Preclude Entry of Summary Judgment.......................10

      C.      Panera Has Not Waived and/or Accepted the Performance of Any
              Class Member Who Did Not Fulfill Conditions Precedent to
              Receiving a Buyout Payment.........................................................13

III.    CONCLUSION.....................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allamon v. Acuity Specialty Products, Inc.*,
   877 F. Supp. 2d 498 (E.D. Tex. 2012) ........................................................................13

*Berardi v. Fundamental Brokers, Inc.*,
   89 CIV. 5143 (JSM), 1992 WL 27169 (S.D.N.Y. Feb. 5, 1992) ............................13

*Carter v. Firestone*,
   2006 WL 1153808 (E.D. Mo. Apr. 28, 2006) ..........................................................10

*Computer Sales Int'l, Inc. v. Collins*,
   723 S.W.2d 450 (Mo. App. 1986) ..............................................................................10

*Ditto, Inc. v. Davids*,
   2014 WL 5840728 (Mo. Ct. App. 2014) ....................................................................18

*Doss v. EPIC Healthcare Mgt. Co.*,
   901 S.W.2d 216 (Mo. Ct. App. 1995) ...................................................................7, 11

*Easy Returns Midwest, Inc. v. Schulz*,
   964 S.W.2d 450 (Mo. App. 1998) ..............................................................................10

*Fritts v. Cloud Oak Flooring*,
   478 S.W.2d 8 (Mo. Ct. App. 1972) ..............................................................................7

*Jennings v. SSM Health Care St. Louis*,
   355 S.W.3d 526 (Mo. Ct. App. 2011) ..........................................................................7

*Johnson v. Cook*,
   167 S.W.3d 258 (Mo. App. 2005) ..............................................................................13

*JumboSack Corp. v. Buyck*,
   407 S.W.3d 51 (Mo. App. E.D. 2013) .......................................................................10

*Ketcherside v. McLane*,
   118 S.W.3d 631 (Mo. Ct. App. 2003) ..........................................................................9

*Kroshnyi v. U.S. Pack Courier Servs., Inc.*,
   771 F.3d 93 (2d Cir. 2014) .........................................................................................12

*Long v. Huffman*,
   557 S.W.2d 911 (Mo. Ct. App. 1977) ........................................................................12

ii

*McHenry v. Claspill*,
　　545 S.W.2d 690 (Mo. App. 1976) ..................................................................8, 9

*Mika v. Central Bank of Kansas City*,
　　112 S.W.3d 82 (Mo. App. 2003) ....................................................................13

*Mo. Sav. Ass'n v. Home Sav. Of Am.*,
　　862 F.2d 1323 (8th Cir. 1988) .......................................................................18

*Moley v. Plaza Properties, Inc.*,
　　549 S.W.2d 633 (Mo. App. 1977) ...................................................................8

*N. Am. Sav. Bank v. Resolution Trust Corp.*,
　　65 F.3d 111 (8th Cir. 1995) ...........................................................................18

*Piazza v. Combs*,
　　226 S.W.3d 211 (Mo. App. 2007) .............................................................13, 16

*Ponze v. Guirl*,
　　794 S.W.2d 699 (Mo. App. 1990) ...................................................................8

*Robson v. Utd. Pac. Ins. Co.*,
　　391 S.W.2d 855 (Mo. 1965) .......................................................................18, 19

*Rufkahr Const. Co. v. Weber*,
　　658 S.W.2d 489 (Mo. Ct. App. 1983) ..............................................................7

*Sales Serv., Inc., v. Daewoo Int'l (Am.) Corp.*,
　　770 S.W.2d 453 (Mo. App. 1989) ..................................................................12

*Sanger v. Yellow Cab Co.*,
　　486 S.W.2d 477 (Mo. banc 1972) ..................................................................11

*Shumate v. Dugan*,
　　934 S.W.2d 589 (Mo. App. 1996) ..................................................................13

*Supermarket Merch. & Supply, Inc. v. Marschuetz*,
　　196 S.W.3d 581 (Mo. Ct. App. 2006) ............................................................12

*W. Crawford Smith, Inc. v. Watkins*,
　　425 S.W.2d 276 (Mo. App. 1968) ...................................................................8

*Weinstein v. KLT Telecom, Inc.*,
　　225 S.W.3d 413 (Mo. banc 2007) ..................................................................11

*Woolfolk v. Jack Kennedy Chrevolet Co.*,
　　296 S.W.2d 511 (Mo. Ct. App. 1956) ............................................................18

**Statutes**

Mo. Rev. Stat. § 432.010.1 ......................................................................................................12

**Other Authorities**

3A Corbin on Contracts § 763 ....................................................................................................7

Plaintiffs move for summary judgment on their breach of contract claim on a *class-wide* basis.[1] Doc. 108. But the *class-wide* evidence shows class members agreed to novate those contracts. Indeed, the only *class-wide* evidence related to novation shows class members (1) were informed a cap was being placed on their Buyouts at least one year (and as much as four years) in advance of their Buyout payments; (2) continued to work for Panera until they received their Buyouts; (3) made no complaint; and (4) accepted compensation under their novated agreements, including salary, monthly Payouts, and Buyouts—again without complaint. Although Plaintiffs will surely argue continued employment is not sufficient consideration to support the novation, they seemingly fail to realize *they would have no breach of contract claim at all* if this were true—*i.e.,* as Plaintiffs admit in their Amended Complaint, continued employment serves as the consideration for the very agreements Plaintiffs claim Panera breached. Doc. 43 at ¶¶ 44-47.

Plaintiffs' motion also fails because it is fraught with disputed fact issues, such as whether the Named Plaintiffs (not to mention every other class member) fulfilled all conditions precedent to receiving a Buyout under the contract. Plaintiffs attempt to side-step this significant fact issue by ignoring the relevant contract language and, instead, declaring the contracts imposed "an absolute, unconditioned duty" to deliver a Buyout payment to each class member without any apparent regard for their work performance, job duties, or, even, whether they were still employed. Doc. 109 at 14, 19. But that is not what the contract states.

For all these reasons, Panera respectfully requests the Court deny Plaintiffs' motion for summary judgment on their breach of contract claim.

## I.     Introduction.

Since 2002, Panera has maintained a "Joint Venture" (JV) program meant to incentivize high performance from their bakery-cafe management team. This program combines three aspects

---

[1] Plaintiffs' motion seeks summary judgment on behalf of the class; it does not separately seek summary judgment regarding the individual Named Plaintiffs' breach of contract claims.

1

of compensation: base salary, monthly bonuses (or Payouts), and a Buyout payable at the end of a five-year period. The details of that program frequently changed—often to the employees' benefit.

One of those changes came in 2007 and is reflected in the contracts at issue in this case. *See, e.g.,* Doc. 43-1. Before 2007, JV General Managers, such as the class members, received a Buyout calculated as a straight percentage of store profits. But under this program, Panera determined many JVGMs were not sufficiently compensated. Thus, Panera implemented a Buyout formula meant to ensure its JVGMs would be paid in the top 75th percentile of the industry.

But then Panera's bakery-cafes began to exceed profit expectations—with profits growing 52 percent from 2009 to 2010—due in large part to choices and strategies outside of a JVGM's control, *e.g.,* the introduction of catering. In turn, Buyout payments came to exceed, sometimes as much as triple, Panera's projections; indeed, Panera was paying out 75 to 100% of its incremental profits in bonuses. In fact, in 2009, under the terms of their prior Compensation Plan, Plaintiffs Boswell and Lutton received Buyout checks in excess of $100,000. Consequently, Panera moved to change the JV program once again by capping the annual Payouts and salaries of JVGMs, as well as capping Buyout payments at $100,000, which was in line with Panera's expectations when it introduced the revised program in 2007.

When making this change, Panera was careful to communicate clearly and openly with the JVGMs about the change; and it did so well in advance of their Buyout payments. Although the change was communicated in 2011, no JVGM made any complaint until 2014, when Plaintiff Boswell raised a concern. Indeed, other than the three Named Plaintiffs, not a single JVGM has complained, or quit his or her job, as a result of this change. And not a single JVGM refused his or her capped Buyout payment or any other compensation provided by Panera under the Compensation Plan.

## II.     ARGUMENT.

### A.     Class Members Novated Their Contracts with Panera to Include a Capped Buyout Payment.

In support of their motion, Plaintiffs repeatedly refer this Court to the integration clause in paragraph 5(d) of their Compensation Plans. Yet, "Missouri law is well-established that 'no oral modification' clauses [like the one in the Compensation Plans] have no preclusive effect when the parties engage in modification by valid contractual formalities." *Jennings v. SSM Health Care St. Louis*, 355 S.W.3d 526, 535 (Mo. Ct. App. 2011) (citing *Fritts v. Cloud Oak Flooring,* 478 S.W.2d 8, 14 (Mo. Ct. App. 1972)). Put differently, "[a]n express provision in a written contract that no rescission or variation shall be valid unless it too is in writing is ineffective to invalidate a subsequent oral agreement to the contrary." *Id.* (quoting 3A Corbin on Contracts § 763). S*ee also Doss v. EPIC Healthcare Mgt. Co.,* 901 S.W.2d 216, 221 (Mo. Ct. App. 1995); *Rufkahr Const. Co. v. Weber,* 658 S.W.2d 489, 498 (Mo. Ct. App. 1983).

Here, the undisputed evidence is that there was a subsequent, valid oral agreement between Panera and the class members which resulted in a novation of the Compensation Plans. Specifically, it is undisputed, in the first quarter of 2011, presentations were given to JVGMs in Panera's various markets across the country about changes to JVGM compensation, including that starting in January 2012, JVGM Buyouts would not exceed $100,000. [SOFs 20] These changes were communicated verbally to JVGMs by JVPs and/or Regional Vice President for Panera's various markets and/or other Panera executives.[2] [SOF 21] Documentation about the changes was

---

[2] It is also undisputed that no such presentation was given in the Charlotte, North Carolina market where the named Plaintiffs worked. [SOF 20] Notably, if the Court finds there is a question of fact regarding the novation due to the named Plaintiffs' contention that the imposition of the Buyout cap was not discussed with them (or based on the timing of when they learned about it), that is a question *only with respect to the Named Plaintiffs*, not the other class members. It is undisputed verbal presentations regarding the cap were given in all other markets and there is no evidence other class members were unaware of the change.

also available to JVGMs on Panera's intranet site and on each JVGM's monthly Payout report. [SOF 21]

Because the Compensation Plans used from 2007 to 2010 made Buyouts payable at the end of a five-year period, the class members began receiving JVGM Buyouts as early as 2012. [SOF 11, 24] Yet, Plaintiffs and the class members kept working, receiving compensation, bonuses and other benefits of employment with Panera. [SOFs 20-28] Panera received no complaints from any JVGM about any JVGM Buyout until Plaintiff Boswell raised a concern in 2014, shortly before he received his Buyout. [SOF 25] Moreover, the only evidence from class members other than the Named Plaintiffs, confirms that class members were made aware of the changes and believe they have now been paid everything they are owed by Panera.[3] [SOF 28] The undisputed evidence therefore shows that Panera, and the class members, through their words and actions, assented to the changes and effectively novated their Compensation Plans to include a $100,000 cap on the class members' JVGM Buyouts.

Under Missouri law, a novation is the substitution of a new contract or obligation for an old one that is thereby extinguished. *Moley v. Plaza Properties, Inc.,* 549 S.W.2d 633, 635 (Mo. App. 1977). The four elements necessary for finding a novation are: (1) a previous valid obligation; (2) agreement of all parties to a new contract; (3) extinguishment of an old contract; and (4) validity of a new contract. *Ponze v. Guirl*, 794 S.W.2d 699, 702 (Mo. App. 1990). The controlling element in determining whether a novation has been accomplished is the intention of the parties. *W. Crawford Smith, Inc. v. Watkins*, 425 S.W.2d 276, 279 (Mo. App. 1968). Proof of novation may be shown by direct evidence "*or by reasonable inference of the intent of the parties drawn from the facts and circumstances*." *See McHenry v. Claspill,* 545 S.W.2d 690, 692 (Mo.

---

[3] Although no class-based evidence indicates anything to the contrary, the individualized nature of evidence related to assent and intent (and the difficulty of presenting representative proof on these issues at trial) is highlighted.

4

App. 1976) (emphasis added). Notably, "[a]ssent to novation may also be proven circumstantially." *Id.*

Here, the elements of a novation are all plainly met. First, Plaintiffs themselves claim (and therefore cannot dispute) the signed written Agreements they entered into with Panera include valid obligations. Elements two, three and four overlap, with the critical questions being (1) whether there was an intent of the class members and Panera to enter a new contract that replaced their prior agreements with regard to the maximum amount of the JVGM Buyout, and (2) whether that new agreement was valid. As noted by the court in *McHenry*, the intent of Panera and the class members can be shown by reasonable inferences drawn from the facts and circumstances.

The undisputed evidence reveals, by their actions (and inactions) —*i.e.* continuing to work and to receive the pay and benefits from their employment with Panera, failing to object, and accepting their capped Buyout payments—the class members assented to the substitution of the new JVGM Compensation Plan for the prior Compensation Plans they signed.[4] Panera must be able to rely on its managers' actions (and inactions) to properly conduct its business. Indeed, managers must not be allowed to claim a breach *years* after learning of the cap, continuing to work, and accepting payments from Panera. That is no way to conduct business.

The remaining question is whether the new compensation plan, including the $100,000 cap on JVGM Buyouts, was valid. In Missouri, a contract requires: (1) competency of the parties to contract; (2) subject matter; (3) legal consideration; (4) mutuality of agreement; and (5) mutuality of obligation. *Ketcherside v. McLane*, 118 S.W.3d 631, 635 (Mo. Ct. App. 2003). There is no reasonable dispute regarding the first, second, fourth and fifth elements. Plaintiffs, however, contend (as they did at the class certification stage) there was insufficient consideration to support the novation, claiming their continued employment was not enough. This contention has no merit.

---

[4] Two class members have acknowledged the novation, confirming *via* signed Declarations that they were paid everything they were owed by Panera. [SOF 28]

### 1.      *Continued Employment is Sufficient Consideration.*

Contrary to Plaintiffs' assertions, continued employment has routinely been determined to constitute sufficient consideration. Outside the limited realm of unilaterally imposed arbitration agreements,[5] Missouri courts have routinely found continued employment, with its attendant benefits, *is sufficient consideration for a valid agreement. See, e.g., JumboSack Corp. v. Buyck*, 407 S.W.3d 51, 55-56 (Mo. App. E.D. 2013) (a non-compete agreement signed six months after starting employment was supported by adequate consideration in the form of continued employment). *See also Carter v. Firestone*, 2006 WL 1153808, *3 (E.D. Mo. Apr. 28, 2006) ("Under Missouri law, continued employment can constitute consideration to support an agreement."); *Easy Returns Midwest, Inc. v. Schulz*, 964 S.W.2d 450, 454 (Mo. App. 1998) ("employee's continuance in employment with employer, when there is no obligation to remain, and employers' continuance of employment, where continuance is not required, supplies adequate consideration for a noncompetition agreement"); and *Computer Sales Int'l, Inc. v. Collins*, 723 S.W.2d 450 (Mo. App. 1986) (finding that non-compete signed by at-will employee 14 months after the start of his employment was supported by adequate consideration in the form of the employee's continued employment for 2 ½ years thereafter).[6]

Importantly, if the Court were to agree with Plaintiffs that continued employment was insufficient consideration for the novation, it necessarily would also have to find the

---

[5] Panera respectfully notes that both cases referenced by the Court on page 28 of its October 23, 2015 Memorandum and Order – *Baker v. Bristol Care, Inc. and Morrow v. Hallmark Cards, Inc.* – and the cases they rely on, for the proposition that continued employment is not sufficient consideration, addressed such consideration only with respect to arbitration agreements. [Doc. 104 at 28].

[6] If the Court were to find the length of continued employment impacted whether adequate consideration exists, this injects a highly individualized issue incapable of class-wide resolution since some class members undisputedly were presented with the new compensation plan as early as 2011 and thereafter remained employed for several years before receiving their Buyouts, while others such as the named Plaintiffs say they were only informed of the change in their compensation plan much closer in time to the end of their employment. [SOFs 20-23]

Compensation Plans that serve as the basis for Plaintiffs' breach of contract claim are invalid for lack of consideration. Indeed, a simple review of the Compensation Plans signed by the Plaintiffs reveals not one other promise made by the Plaintiffs for the benefit of Panera. [*See* SOF 10,15 and Docs. 43-1 - 43-3 (Compensation Plans)] Instead, it is undisputed the only consideration provided by Plaintiffs in support of the compensation to be paid to them by Panera under the Compensation Plans was their continued at-will employment with Panera. [SOF 15][7] Plaintiffs cannot "have their cake and eat it too" —*i.e.*, if continued employment is insufficient consideration for the novation, it was also insufficient to create a valid Compensation Plan in the first place, and summary judgment would be required for Panera for lack of a valid contract at issue.

Missouri law, however, avoids this result because courts do not look at the *adequacy* or *quantity* of consideration, only whether it exists. *See Sanger v. Yellow Cab Co.*, 486 S.W.2d 477, 480 (Mo. banc. 1972); *Doss v. EPIC Healthcare Mgmt. Co.*, 901 S.W.2d 216, 220 (Mo. App. 1995) (where the "requirement of consideration [is] present . . . the law does not concern itself with the adequacy of the consideration"). Moreover, a "general principle[] of contract law [is] that consideration must be measured at the time the parties enter into their contract." *Weinstein v. KLT Telecom, Inc.*, 225 S.W.3d 413, 415-16 (Mo. banc. 2007). Thus, if continued employment was sufficient consideration by the Plaintiffs at the time they entered into the Compensation Plans, it was also sufficient consideration by Panera at the time of the novation.[8] Accordingly, the novation

---

[7] Notably, Plaintiffs affirmatively plead their continued employment as a basis for proving the validity of the Agreements. [*See* Doc. 43 at ¶¶ 44-47, 89-90]

[8] Accepting the Plaintiffs' position that the novation is invalid because they received nothing more than they already had – *i.e.* evaluating the adequacy of the consideration – would effectively render Missouri law allowing novation a nullity. Contracts of all types are commonly replaced with new contracts, often to the detriment of one party. For example, it is not uncommon for banks to provide relief to customers on their mortgages when those customers cannot pay their originally contracted-for obligation, as the bank would prefer to continue receiving some level of repayment on the mortgage than force the customer into a situation where he or she cannot pay at all. Similarly, when business conditions take a turn for the worse, it is not uncommon for employees to accept reductions in pay in exchange for keeping their jobs and avoiding layoffs. In both such situations, a prior agreement is replaced with a new one, and the new one is to the

was supported by *legal consideration* and the new compensation plan including the $100,000 Buyout payment cap was valid, replacing the written Agreements upon which the Plaintiffs base their claims.[9]

### 2.    The Statute of Frauds Does Not Preclude the Oral Novation.

Panera anticipates Plaintiffs will argue the contracts could not be modified by subsequent oral agreements because they were subject to the statue of frauds. But the contracts at issue simply do not fall under Missouri's statute of frauds, which applies to contracts that cannot to be performed within one year. Mo. Rev. Stat. § 432.010.1. Here, the Buyouts were part of a broader *at-will* employment agreement, which could be terminated by either party, at any time, without any further contractual liability. Indeed, if a JVGM had resigned his employment one day after he signed the contract, he would have performed under the contract. And as long as Panera paid him what was due under the contract, Panera would have also performed under the contract. *See, e.g., Sales Serv., Inc., v. Daewoo Int'l (Am.) Corp.*, 770 S.W.2d 453, 456 (Mo. App. 1989) ("Without a statement of duration, an employment at will contract is created which is terminable at any time by either party with no liability for breach of contract."); *Kroshnyi v. U.S. Pack Courier Servs., Inc.,* 771 F.3d 93, 110 (2d Cir. 2014) ("Plaintiffs argue [oral commission] agreements were capable of performance within one year, because they were part of an at-will employment agreement, and New York law presumes such agreements may be terminated at any time by either party. We

---

detriment of one party who previously would have received more. Plaintiffs' position in this illogically suggests that all such novated/modified arrangements constitute actionable breaches of contracts.

[9] Although Plaintiffs do not now like the outcome of their modified Agreement with Panera, they cannot be heard to complain about it since they also accepted the benefits of continued employment with, and monthly Payouts from, Panera following the novation. In similar circumstances, Missouri courts have ruled that a breach of contract claim fails. *See Supermarket Merch. & Supply, Inc. v. Marschuetz*, 196 S.W.3d 581, 587 (Mo. Ct. App. 2006) (noting general rule that an employee cannot repudiate the unfavorable terms of a modified contract when he has claimed the benefit of continued employment under it); *Long v. Huffman*, 557 S.W.2d 911 (Mo. Ct. App. 1977) (party who was aware of alleged breach but made no objection and continued to work and be paid was estopped to contradict his consent).

agree."); *Berardi v. Fundamental Brokers, Inc*., 89 CIV. 5143 (JSM), 1992 WL 27169, at *1-2 (S.D.N.Y. Feb. 5, 1992) (oral promise to pay bonuses over next two fiscal years fell outside of New York statute of frauds because it was part of an at-will employment agreement); *Allamon v. Acuity Specialty Products, Inc.,* 877 F. Supp. 2d 498, 518-19 (E.D. Tex. 2012) (finding "employment contract for an indefinite term is considered performable within a year, placing such agreements outside the writing requirement of the [Texas] Statute of Frauds."). That a JVGM would not be eligible for a Buyout payment if he or she did not continue employment for five years does not change this result—the contract could have been performed within one year.

Even if Plaintiffs are correct in their assertion that the contracts were subject to the statute of frauds, Panera's novation of the contracts falls within an equitable exception to the requirement that any modification of a contract subject to the statute of frauds also be in writing—full or partial performance. *See Mika v. Central Bank of Kansas City,* 112 S.W.3d 82, 88-89 (Mo. App. 2003).

Here, Panera has made a full—or at the very least partial—performance of the orally novated contracts. It is undisputed the Named Plaintiffs and the class members each received a capped Buyout payment of $100,000.00, and "[an] oral contract is valid and enforceable, irrespective of the statute of frauds when there is proof of partial performance in furtherance of the agreement." *Shumate v. Dugan,* 934 S.W.2d 589, 592 (Mo. App. 1996); *see also Johnson v. Cook,* 167 S.W.3d 258, 264 (Mo. App. 2005). ("[One] equitable exception to the statute of frauds is where there has been partial performance in furtherance of the agreement."). Importantly, "[a] party may avoid the bar of the statute of frauds if the party has performed acts that, in themselves, are evidence of the existence of a contract to convey." *Piazza v. Combs*, 226 S.W.3d 211, 222-23 (Mo. App. 2007). "The acts must have been done in reliance on the contract, and the positions of the parties must have been so materially changed that it would be grossly unjust to allow the other party to rely on the statute of frauds." *Id.*

Panera's actions in continuing the regular Payouts and Buyouts under the new capped oral agreement were clearly done in reliance on the modified contract. Moreover, Panera continued to operate under the terms of the orally novated agreements, and, based on the class members' three to four years of acquiescence after they were informed their Buyout payments would be capped, it would now be grossly unjust to allow Plaintiffs to rely on the statute of frauds regarding this novation. Had a JVGM objected, either Panera or the JVGM could have ended the employment relationship at that time, or Panera could have simply changed the inputs, such as the Profit Hurdle, used in the formula to calculate the Buyouts so they would not exceed $100,000.

As there is no alleged breach of the novated agreements, Plaintiffs' motion for summary judgment on their contract claim should be denied.

### B.  Disputed Fact Issues Regarding Fulfillment of the Contracts' Conditions Precedent Preclude Entry of Summary Judgment.

In their motion for summary judgment, Plaintiffs declare the "controlling legal question" in this case to be "whether Panera breached the standard compensation agreement … by imposing a cap on the Buyout payments it made to the class members pursuant to the [agreement]." Doc. 109 at 15. But this is not the "controlling legal question," rather it is more accurately described as the final legal question—one that can only be answered by reference to a series of other legal questions that must first be asked and answered. These penultimate questions involve not only whether the contract was novated, but also *whether Panera was contractually obligated to make Buyout payments at all.* In other words, did each class member meet each of the contract's three conditions precedent[10] so as to require Panera to actually make a Buyout payment? Despite

---

[10] Those conditions precedent require each class member, as of the date a Buyout payment was made, to: (1) be an employee of Panera; (2) be performing the duties of the JVGM position; and (3) not be in breach of his/her employment agreement, which requires the JVGM to serve competently and comply with all policies. *See* Compensation Plan, § 3(a) and Employment Agreement, § 4.

Plaintiffs' conclusory arguments to the contrary, significant fact issues prevent this Court from answering this question as a matter of law.

For example, a fact issue exists with respect to Named Plaintiff and Class Representative Vickie Snyder. Plaintiff Snyder admits she violated Panera policy by employing her son in her own bakery-cafe. Plaintiffs assert this policy violation should have no impact on Plaintiff Snyder's Buyout payment because her son left his employment a mere seven days before her Buyout payment was made. But this assertion merely attempts to substitute Plaintiffs' judgment regarding Ms. Snyder's policy violations for Panera's opinion that she did not "faithfully and competently" perform her JVGM duties and that she failed to comply with Panera's policies and procedures, as required by her Employment Agreement. This issue may only be resolved at trial.[11]

Similarly, Panera has presented evidence that Named Plaintiff and Class Representative Mark Boswell did not fulfill the required conditions precedent because he was not performing JVGM duties on the date of his Buyout payment, *i.e.,* May 27, 2014. According to Panera's evidence, Plaintiff Boswell had not been in the JVGM position since May 21, 2014. Indeed, Panera's records show another JVGM took over Plaintiff Boswell's bakery-cafe on May 21, 2014. Plaintiff Boswell, on the other hand, argues he was still performing the JVGM duties on May 27, 2014. Once again, this fact issue can only be reconciled at trial.

Moreover, no fact issue exists with regards to JVGM 42, whom Plaintiffs admit was not employed on the date of his or her Buyout. Consequently, there is no doubt that he or she did not meet the conditions precedent to receiving a Buyout payment. But rather than admit JVGM 42

---

[11] Plaintiffs also incorrectly allege that confirming no other class members violated a Panera policy or procedure is as simple as "checking Panera's files." Doc. 109 at 22. But this statement mischaracterizes the testimony upon which it supposedly relies. Ms. Calaway-Habeck testified Panera does *not* document all policy violations; Panera often addresses policy violations through verbal conversations. Moreover, when policy violations are documented in writing, they are not necessarily stored in employees' personnel files. Depending on the violation and the parties involved, documents may be stored in other locations. [Ex. 1 to Response to Plaintiffs' Statement of Facts, Calaway-Habeck 3/15/15 Dep. at 146:47, and Ex. 9 to Response to Plaintiffs' Statement of Facts, Calaway-Habeck 5/29/15 Dep. at 196:16-198:17]

was not entitled to a Buyout or that a fact issue remains with respect to Plaintiff Boswell, and thus neither can be entitled to summary judgment, Plaintiffs summarily allege these issues are "irrelevant." Doc. 109 at 21. According to Plaintiffs, if Panera prevented a JVGM from meeting any requirements to receive a Buyout, the requirement is deemed satisfied. *Id.* But even if Plaintiffs are correct on the law, they have introduced *no evidence* Panera prevented either Plaintiff Boswell or JVGM 42 from meeting conditions precedent to Buyout payment.

Plaintiffs have pointed to nothing in the record about JVGM 42's departure from employment. Moreover, Plaintiff Boswell readily admitted at his deposition that he willingly accepted the transfer to the 2.0 Market Manager position:

> Q. Correct? Why -- why did you – why did you take on that -- that new role or position rather than stay at the Concord Mills location?
>
> A. Well, it not only had the same skillset, leadership and coaching and training that I was already using as a JV GM, so the same skillset. But, you know, the thought maybe that there might be a potential of expanding into a different position or different area with Panera Bread.
>
> Q. And the decision -- you testified earlier, I believe, that the decision for you to take on that new role was made sometime in May?
>
> A. In May.
>
> Q. Of 2014?
>
> A. To the best of my knowledge, yes.
>
> Q. And how -- how was that decision made? You indicated it was you and J.D. Matthews?
>
> A. Uh-huh.
>
> Q. Could you be a little more specific about the interaction between the two of you that led to that decision?
>
> A. I was -- when J.D. came onboard, which was -- well, at least in the Charlotte market. He was training somewhere else. Greenville, I think. He came on in the summer of 2013. So he picked up -- he didn't pick up the entire half of the market. There were 14 at the time and two under construction. So he was assigned three or four cafes. Mine was his first 2.0 cafe rollout. And basically the conversation came up, due to my execution of the rollout of the 2.0 liability, to basically roll it out without a hitch. And he asked me if I would take on the role of rolling out the rest of the ones in his market, which basically were all the ones that were left.
>
> Q. And you agreed to do that?

A. Yes.

[Ex. 4 to Response to Plaintiffs' Statement of Facts, Boswell Dep. at 240:18 - 241:18]

Thus, Plaintiffs can make no viable argument, least of all an argument supported by undisputed facts, that Panera prevented Plaintiff Boswell or JVGM 42 from fulfilling conditions precedent to Buyout payments. So, instead, Plaintiffs attempt to re-characterize the three conditions precedent as "post-contractual requirements." Doc. 109 at 18. Frankly, Panera is at a loss to understand the legal import of this Plaintiff-constructed phrase. Regardless, any attempt to characterize these requirements as anything other than conditions precedent requires a re-writing of the contract language, which states: "*In order to receive* the JV GM Buyout payment for the Bakery-Café, you must, as of the date on which the payment is made … (i) be an employee of Panera …; (2) be performing the duties of the position currently entitled JV GM…; and (iii) not be in breach of any provision of your Employment Agreement or any other obligation owed to Panera or its affiliates." *See* Compensation Plan, § 3(a) (emphasis added). The clear language of the contract thus conditions Buyout payments on fulfillment of these three conditions. In other words, Panera was not even obligated to make a Buyout payment (and, thus, could not have breached the agreement) *unless all three conditions precedent were met.*[12]

Because Plaintiffs cannot show as a matter of law that all three conditions precedent were fulfilled as to every class members, their motion for summary judgment must be denied.

**C.     Panera Has Not Waived and/or Accepted the Performance of Any Class Member Who Did Not Fulfill Conditions Precedent to Receiving a Buyout Payment.**

Similar to their argument that Panera must have prevented Plaintiff Boswell and JVGM 42 from fulfilling the conditions precedent, Plaintiffs argue Panera's payment of a Buyout to each

---

[12] Plaintiffs argue Panera's duty to make a payment was "absolute." But then any class member could have resigned the day after the contract was signed and been owed a Buyout payment. This absurd result is neither consistent with the contract language nor consistent with the parties' intentions.

class member shows Panera accepted JVGMs' failures to fulfill these conditions. But this argument not only ignores the contract's no-waiver provision, it also contorts the Missouri case law upon which it is based.

> The Employment Agreements at issue in this matter specifically state:
>
> The failure of a party to enforce any term, provision, or condition of this Agreement at any time or times shall not be deemed a waiver of that term, provision, or condition for the future, nor shall any specific waiver of a term, provision, or condition at one time be deemed a waiver of such term, provision, or condition for any future time or times.

Docs. 43-1 -- 43-3 (Employment Agreements) at § 15][13] Consequently, Plaintiffs cannot argue Panera waived its ability to enforce conditions precedent in this litigation. Moreover, Plaintiffs rely heavily on *Woolfolk v. Jack Kennedy Chrevolet Co.*, 296 S.W.2d 511, 514 (Mo. Ct. App. 1956) to support their argument that Panera somehow accepted each class members' performance when it made Buyout payments. But *Woolfolk* is inapposite.

There, the defendant failed to procure insurance for the plaintiff as contemplated in connection with the purchase of a vehicle. The court determined the plaintiff waived his breach of contract claim because he failed to do anything for fifteen months after he received notice that insurance coverage was purchased. *Id.* at 514-15. Accordingly, *Woolfolk* stands for the proposition that JVGMs who were aware of the Buyout cap (as those outside of the Charlotte, North Carolina market were) cannot be heard to complain of a breach. In other words, *Woolfolk* supports Panera.

Plaintiffs also mischaracterize *Robson v. Utd. Pac. Ins. Co.*, 391 S.W.2d 855 (Mo. 1965). In that case, the contract was ambiguous. Thus, the court put great weight on the parties' conduct

---

[13] Although the Compensation Plans do not expressly include a no-waiver provision, the two agreements were executed at the same time and the Compensation Plan expressly incorporates the Employment Agreement. [See, e.g., Doc. 55-7 at p. 1, ¶ 1, p. 2, ¶ 5.2 and p. 5, ¶ 5(d)]. When multiple documents relating to the same subject matter are executed at the same time, "the documents … [must] be construed together even in the absence of explicit incorporation." *Ditto, Inc. v. Davids*, 2014 WL 5840728, at *8 (Mo. Ct. App. 2014) (internal quotes omitted). *See also N. Am. Sav. Bank v. Resolution Trust Corp.*, 65 F.3d 111, 114-15 (8th Cir. 1995) (citing *Mo. Sav. Ass'n v. Home Sav. Of Am.*, 862 F.2d 1323, 1326 (8th Cir. 1988) (integration clause did not preclude separate document from being construed as part of the contract)).

14

to determine what constituted full performance. *Id.* at 862. But here, neither party has argued the contract, including its conditions precedent, is ambiguous. As such, *Robson* is wholly inapplicable.

Moreover, Plaintiffs again mischaracterize the testimony upon which they rely. Although Ms. Calaway-Habeck testified Panera considered the conditions precedent before making a Buyout, she never testified it made determinations each class member had actually met them. In fact, she testified the JV Board was responsible for approving Buyout payments, and it would not necessarily be aware of all policy violations or other circumstances that might indicate a JVGM had not fulfilled these conditions precedent. [Ex. 9 to Response to Plaintiffs' Statement of Facts, Calaway-Habeck 5/29/15 Dep. at 306:3-10][14]

In short, Plaintiffs cannot show Panera waived, and/or agreed to accept, the performance of any JVGM who failed to fulfill the contract's conditions precedent simply by making a Buyout payment. As such, Plaintiffs' motion for summary judgment should be denied.

**III.    Conclusion.**

For all the reasons discussed above, Panera respectfully requests that Plaintiffs' Motion for Summary Judgment on their Breach of Contract claim be denied.

---

[14] There were no class members before October 23, 2015 (*i.e.*, the date the class was certified), which was after discovery closed. So, although there is no evidence other class members did not comply with the conditions precedent, we do not know what discovery about this individualized issue would have revealed had it been permitted.

Respectfully submitted,

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.

/s/ *Jennifer K. Oldvader*
Patrick F. Hulla, MO 41745
Justin M. Dean          48647MO
Jennifer K. Oldvader  60649MO
4520 Main Street, Suite 400
Kansas City, MO 64111
Telephone: 816.471.1301
Facsimile: 816.471.1303
patrick.hulla@ogletreedeakins.com
justin.dean@ogletreedeakins.com
jennifer.oldvader@ogletreedeakins.com

**ATTORNEYS FOR DEFENDANTS
PANERA BREAD COMPANY AND
PANERA, LLC**

**CERTIFICATE OF SERVICE**

I hereby certify that on November 30th, 2015, a copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which sent notification of such to the following:

Dennis E. Egan
Bert S. Braud
712 Broadway, Suite 100
Kansas City, MO 64105
degan@pophamlaw.com
bbraud@pophamlaw.com

**ATTORNEYS FOR PLAINTIFFS**

/s/ *Jennifer K. Oldvader*
**ATTORNEY FOR DEFENDANTS**

23104933.1

16