UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MARK BOSWELL, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 4:14-CV-01833-AGF |
| ) | |
| PANERA BREAD COMPANY, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion (Doc. No. 218) for reconsideration filed by Defendants Panera Bread Company and Panera, LLC. Defendants seek to reconsider part of the Court's March 24, 2016 Memorandum and Order (Doc. No. 216), which denied Defendants' motion for summary judgment on Plaintiffs Mark Boswell and David Lutton's individual unjust enrichment claims. For the reasons set forth below, the Court will deny Defendants' motion.

## BACKGROUND

The facts are set out in the Court's March 24, 2016 Memorandum and Order and will not be recounted here in detail. As relevant to this motion, named Plaintiffs Boswell and Lutton assert unjust enrichment claims arising out of the alleged promise of Defendants' CEO, Ron Shaich, to provide these Plaintiffs with profit credits to offset the significant costs of implementing and testing a new operating system, known as "Panera 2.0," in the cafes for which they served as Joint Venture General Managers ("JV GMs"). Boswell and Lutton assert that they expressed concern about the effect of Panera 2.0's

costs on their cafes' profit and, as a result, on their profit-based "buyout payments," long-term, incentive bonuses first set out in a contractual Compensation Plan between the parties. Upon hearing these concerns, Shaich allegedly promised to offset the Panera 2.0 costs with profit credits applied to the buyout payments of Boswell, Lutton, and other JV GMs who implemented Panera 2.0 in their cafes. Boswell and Lutton assert that they relied on Shaich's promise when they agreed to implement Panera 2.0 in their cafes, but that after they implemented the new system, Defendants did not apply profit credits to their buyout payments. After Boswell and Lutton resigned their employment, Defendants began applying profit credits to the buyout payments of other JV GMs who had implemented Panera 2.0 in their cafes.

The Court held that Boswell and Lutton presented sufficient evidence in support of their unjust enrichment claims to survive summary judgment. The Court rejected Defendants' argument that the express contract between the parties—the Compensation Plan—precluded the unjust enrichment claims here. The Court found that the subject matter for which Boswell and Lutton sought recovery in their unjust enrichment claims was the roll-out of Panera 2.0 in exchange for profit credits applied to their buyout payments, and that neither party asserted that this subject matter was governed by an enforceable contract. The Court held that the mere fact that representations were made with respect to the effect of Panera 2.0 on the already existing Compensation Plan did not bring those representations within the scope of the Compensation Plan so as to displace an unjust enrichment claim. Therefore, the Court found that Boswell and Lutton could proceed on a quasi-contractual, unjust enrichment theory with respect to this subject

matter.

In their motion for reconsideration, Defendants assert that the Court committed a "manifest error of fact" in concluding that neither party asserts that the subject matter for which Boswell and Lutton seek recovery in their unjust enrichment claims was the subject of an enforceable contract. In support of this assertion, Defendants note that Boswell and Lutton testified in depositions that their unjust enrichment claims were "intertwined with" their breach of contract claims. Defendants also assert that the Court committed a "manifest error of law" in finding that the unjust enrichment claims were not displaced by the Compensation Plan. Moreover, Defendants assert that, although "Panera 2.0 was not a specifically-contemplated contingency under the Compensation Plans," there was always a risk of decreased profits (and therefore decreased buyout payments) under the Compensation Plan, and such an anticipated contingency does not give rise to an unjust enrichment claim. Finally, in their reply brief, Defendants assert that because Boswell and Lutton were required to operate their cafes as Defendants instructed, including by implementing Panera 2.0, in order to remain employed and eligible for a buyout payment, Boswell and Lutton did not confer any benefit unjustly retained by Defendants.

## **DISCUSSION**

A "district court has the inherent power to reconsider and modify an interlocutory order any time prior to the entry of judgment." *K.C. 1986 Ltd. P'ship v. Reade Mfg.*, 472 F.3d 1009, 1017 (8th Cir. 2007); *see also* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims . . . may be

revised at any time before the entry of a judgment adjudicating all the claims[.]"). District courts have substantial discretion in ruling on motions for reconsideration. However, in general, "[m]otions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988) (citation omitted).

The Court finds that Defendants have failed to demonstrate that reconsideration is warranted here. The Court gave careful consideration to the legal arguments Defendants presented in support of their motion for summary judgment on the unjust enrichment claims, and again now on reconsideration.

The Court is familiar with the Missouri common law rule that "[i]f the plaintiff has entered into an express contract for the very subject matter for which he seeks recovery, unjust enrichment does not apply, for the plaintiff's rights are limited to the express terms of the contract." *Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010). However, "[j]udicial statements to the effect that 'there can be no unjust enrichment in contract cases' can be misleading if taken casually." Restatement (Third) of Restitution and Unjust Enrichment § 2 cmt. c. In fact, "[r]estitution claims of great practical significance arise in a contractual context, but they occur at the margins, when a valuable performance has been rendered under a contract that is invalid, or subject to avoidance, or otherwise ineffective to regulate the parties' obligations." *Id.* In other words, although contract is superior to unjust enrichment where a valid, enforceable contract governing the subject matter exists, where no such valid contract exists, an unjust enrichment claim may be asserted. *Id.*

4

The Court continues to believe that the mere fact that the representations underlying the unjust enrichment claims here dealt with the effect of Panera 2.0 on the Compensation Plan does not bring those representations within the scope of the Compensation Plan so as to displace an unjust enrichment claim. The Compensation Plan contains no terms related to the roll-out of a new operating system or profit credits provided in exchange therefor. If Boswell and Lutton wished to bring a contract claim for recovery of the Panera 2.0 profit credits, they would have had to assert the existence of a separate contract, outside the scope of the Compensation Plan. For whatever reason—perhaps because they believe that such a contract would be unenforceable for lack of a signed writing—Boswell and Lutton have chosen not to assert the existence of such a contract. Instead, they rely on a quasi-contractual theory, and the Court finds that they are permitted to do so.

Defendants' additional point that "[a] venture voluntarily entered into, with known risks and with the expectation of a profit, cannot be compensated for via a claim for unjust enrichment," *Howard*, 316 S.W.3d at 438, is irrelevant here. Defendants admit that Panera 2.0 was not a known risk under the Compensation Plan. Rather, Boswell and Lutton assert that they undertook this new venture, years after entering the Compensation Plan, precisely because they were promised profit credits to offset the costs of the new venture. Unjust enrichment claims of this sort are recognized in Missouri. *See Jennings v. SSM Health Care St. Louis*, 355 S.W.3d 526, 536 (Mo. Ct. App. 2011).

Finally, the Court is not persuaded by Defendants' assertion in their reply brief that Boswell and Lutton were required to implement Panera 2.0 and therefore did not

confer any benefit unjustly retained by Defendants. As at-will employees, Boswell and Lutton were not required to implement Panera 2.0. They could have quit. Although by accepting the new responsibility of implementing Panera 2.0, Boswell and Lutton retained a benefit of remaining employed and eligible for a buyout payment, there is also sufficient evidence to demonstrate that their implementation of Panera 2.0 conferred a benefit upon Defendants. *See id.* (allowing an unjust enrichment claim to go forward on the theory that an employer "accepted and unjustly retained the benefit of keeping [its at-will employee] in his position, [and] nonetheless avoided compensating [the employee] his promised severance"). Retention of this benefit by Defendants is unjust if it was conferred "in misreliance on a right." *Hunt v. Estate of Hunt*, 348 S.W.3d 103, 111 (Mo. Ct. App. 2011). Whether Shaich in fact represented that profit credits would be applied to Boswell and Lutton's buyout payments, and whether Boswell and Lutton in fact relied on a right to such profit credits in undertaking the Panera 2.0 venture, are questions that may be resolved at trial.

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that that Defendants' motion for reconsideration is **DENIED**. (Doc. No. 218.)

_____  
AUDREY G. FLEISSIG  
UNITED STATES DISTRICT JUDGE

Dated this 8th day of April, 2016.

6